



Stephenson, Elston <elston_stephenson@nps.gov>

## Restructure GRCA Safety as Direct Report to Superintendent - Avoid Unsafe Conditions, Retaliation, Obstruction

**Stephenson, Elston** <elston_stephenson@nps.gov>   Mon, May 20, 2019 at 8:08 AM
To: "Creachbaum, Sarah" <sarah_creachbaum@nps.gov>
Cc: Brian Drapeaux <brian_drapeaux@nps.gov>

Sarah,

Good Morning.

You asked me (at our first meeting) to pass along the one thing that I would ask You to do in your time here if You were "Queen for a Day". That thing is to place Safety back under direct reporting to the Superintendent---as it was when I first got here.

As a safety exigent and to avoid further retaliation against me hunkering down and doing my job.

Sarah, let's move Safety back under 'direct report' to the GRCA Superintendent where it belongs as a matter of Safety leadership emphasis and efficacy, and to stop retaliation and obstruction of legitimate IG and other investigations into GRCA Dep Superintendent Brian Drapeaux.

Although this can be handle locally, I will include the Secretary of the Interior, and DOI Inspector General so that they will be up to speed when this appears in other forums.

The safety danger posed to GRCA workers and visitors by Brian's interference and obstruction as I've tried desperately to implement basic OSHA, DOI, and NPS safety program elements is reason enough to make this change. Recent bizarre acts by Drapeaux has the GRCA staff resorting to secretly conduct required safety training---hiding it from Drapeaux to avoid his insertion of himself, obstruction, and interference.

More personally, Drapeaux is misusing his Deputy Superintendent, direct supervisor authority to deny pay for work done, obstruct ongoing IG and other investigations, and find and correct dangerous, potentially life threatening safety hazards.

The most relatable example which touches You personally, as You know, is implementing an OSHA and DOI/NPS required Park Safety Plan. It is inexplicable that a park such as Grand Canyon National Park has never had a plan in the first place. But as You know, I submitted a plan several months ago. It was stalled by Brian. As You know, I've re-submitted one since You have been here. Again, Brian has stalled it. Just as a reminder; these were 'canned' 'cookie cutter' ready to use plans that I obtained from WASO Safety Office. The only thing that I did was insert Grand Canyon National Park or GRCA where needed. There is no reason for these to not be in place and guiding us.

As I shared with You as we first met; my first year was very deliberately dedicated to "finding the things that would either kill us or severely injure us".

With respect to retaliation and obstruction, much of Drapeaux" efforts have been animated by my discovery of prior failures---safety hazards and shortcomings which either resulted in fatality (such as the AEDs), near fatality (the JHAs and 'saw to the face' incident), or massive potentially life threatening exposure (uranium), or wrong doing by Drapeaux himself or others.

Please recall that Brian urged me (several times) to intentionally fail the third- party 2017 Safety Audit. It was so bizarre that I contemporaneously reported it to several PSET members. When I attempted to attend training to better improve our performance, he cancelled the training after first approving it. When none of this worked, he then ordered me to not attend the Audit (assuring certain failure) and attending the PSET meetings for several days 90 miles away in Flagstaff instead. Only relenting after I ignored his ridiculous order---resulting in my finding the three 5 gallon buckets of uranium (text attached).

Recently, Drapeaux rejected my submission for extra hours required for the Monday morning production of documents for the investigation which included Drapeaux for Whistleblower Violations and false statements.

Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727



Stephenson, Elston <elston_stephenson@nps.gov>

## Command General Staff???

Stephenson, Elston <elston_stephenson@nps.gov>  
To: Woody Smeck <woody_smeck@nps.gov>  
Cc: Rick Frost <rick_frost@nps.gov>

Mon, Jan 28, 2019 at 7:47 AM

Woody,

Good Morning.

On December 26, 2018---prior to the 7:30 Ops Brief I forwarded updated diagrams and safety products. During the Ops Brief I learned that the person chosen to be the 'Safety Officer' had called in sick. Later in the morning 10:00ish---during the Command & General Staff meeting I provided an analysis of the 2018 OSHA 300 Log, and going through this year's SMIS injuries, as safety briefing along with the importance of determining and anticipating a solution to OWCP problems because OWCP monitors would not be working. During the call it was mentioned that there would be a IMR Regional conference call. I asked for the number. I was told by the 'Incident Commander' that he would call me to give me the number.

The 'Incident Commander' told me that he didn't need me, that "..I have Safety Covered...", that he wasn't going to provide me with the telephone number to the IMR Regional teleconference...then he ordered me to "Stand Down" several times. Then ended by telling me that I was given a vacation and should enjoy it and spend time with my daughter.

Woody, Grand Canyon National Park didn't have a Safety Officer. During the Ops Brief when is was discussed that the designated 'Safety Officer' was sick and not present, the Ops Officer called out to the room, "Ok, who wants to do Safety?!" and someone was picked.

Woody, 2017 year we had a near 10 OSHA Recordable rate (and like will be around that for 2018).

Respectfully, this is the OSHA Rate of an organization and culture of "Ok, who wants to do Safety". There should have been some sort of Superintendent leadership to fix that.

I believe the 'safety brief' that day was 'hey I think it's supposed to snow. let's not slip out there."

Sir, as You know and already expressed privately; there is great risk to not doing the right, deliberate, safety things, not having legitimate safety leadership, or by having unqualified, untrained personnel such as the GS-5 Fees specialist who superseded me---or worse "Ok, who wants to do Safety", or worse still; nobody at all as the Safety Officer.  For instance, we still had helicopter operations ongoing. It is unlikely that any of the persons 'chosen'---all good people---know what to do, know the site security or NTSB arrival prep requirements in case of a crash. Or know what to do or who to contact (and how) if there is a eColi outbreak or dog bite. It is likely that none has Review authority for SMIS or how to get ahold of OWCP monitors or even formally trained in JHAs.

Please let's discuss this further in PSET.

This was precisely the situation a repeat of the situation from the 2018 ShutDown that I sought to avoid by including Clause 19 of the EEO Settlement Agreement. And, in fact, respectfully the reason that I provided You the Agreement..

All of this is a direct consequence of Brian failing to "...designate as an essential position the Safety Health & Wellness Manager in the Continuity of Operations Plan.no later than September 30, 2018." as stated in Clause 19 of the EEO Settlement Agreement signed back on September 13, 2018.

Please, and respectfully; I do not agree to abdicate, out source, concede my role as Grand Canyon National Park Safety Manager to anyone.

This latest episode, and repeat of last year---including being ordered to "stand down", denying me information, and being prevented from doing my job as a 0018 GS-13 by a GS-12 raises legal questions as to our use of ICS.

There was no National Emergency Act Presidential declaration, say, which superseded 5 USC laws or OPM regulations or Position Descriptions...





**MATTHIESEN, WICKERT & LEHRER, S.C.**
Hartford ❖ New Orleans ❖ Los Angeles ❖ Austin
Phone: (800) 637-9176
gwickert@mwl-law.com
www.mwl-law.com

## LAWS ON RECORDING CONVERSATIONS IN ALL 50 STATES

Individuals, businesses, and the government often have a need to record telephone conversations that relate to their business, customers, or business dealings. The U.S. Congress and most states' legislatures have passed telephone call recording statutes and regulations that may require the person wanting to record the conversation to provide notice and obtain consent before doing so. Most states require one-party consent, which can come from the person recording if present on the call. However, some states require that all parties to a call consent to recording.

Laws governing telephone call recording are typically found within state criminal statutes and codes because most states frame call recording as *eavesdropping*, *wiretapping*, or as a type of *intercepted communication*. State laws may not explicitly mention telephone call recording because of these technical definitions. Accordingly, counsel may need to infer when and under what circumstances a state permits telephone call recording by reviewing prohibited actions.

The big issue when it comes to recording someone is whether the jurisdiction you are in requires that you get the consent of the person or persons being recorded. This begs the question of which jurisdiction governs when you are talking to a person in another state. Some states require the consent of all parties to the conversation, while others require only the consent of one party. It is not always clear whether federal or state law applies, and if state law applies which of the two (or more) relevant state laws controls. A good rule of thumb is that the law of the



persons being recorded. This begs the question of which jurisdiction governs when you are talking to a person in another state. Some states require the consent of all parties to the conversation, while others require only the consent of one party. It is not always clear whether federal or state law applies, and if state law applies which of the two (or more) relevant state laws controls. A good rule of thumb is that the law of the jurisdiction in which the recording device is located will apply. Some jurisdictions, however, take a different approach when addressing this issue and apply the law of the state in which the person being recorded is located. Therefore, when recording a call with parties in multiple states, it is best to comply with the strictest laws that may apply or get the consent of all parties. It is generally legal to record a conversation where all the parties to it consent.

### One-Party Consent

If the consent of one party is required, you can record a conversation if you're a party to the conversation. If you're not a party to the conversation, you can record a conversation or phone call provided one party consents to it after having full knowledge and notice that the conversation will be recorded. Under Federal law, 18 U.S.C. § 2511(2)(d) requires only that one party give consent. In addition to this Federal statute, **thirty-eight (38) states and the District of Columbia** have adopted a "one-party" consent requirement. **Nevada** has a one-party consent law, but Nevada's Supreme Court has interpreted it as an all-party consent law.

Work Product of Matthiesen, Wickert & Lehrer, S.C.     1     LAST UPDATED 6/18/19

### All-Party Consent

**Eleven (11) states** require the consent of everybody involved in a conversation or phone call before the conversation can be recorded. Those states are: California, Delaware, Florida, Illinois, Maryland, Massachusetts, Montana, Nevada, New Hampshire, Pennsylvania and Washington. These laws are sometimes referred to as "two-party" consent laws but, technically, require that all parties to a conversation must give consent before the conversation can be recorded.



| STATE | CONSENT | AUTHORITY | EXPLANATION/ADDITIONAL INFORMATION |
|---|---|---|---|
| Federal | One Party | 18 USC § 2511(2)(d) | "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted to commit any criminal or tortious act in violation of the Constitution or laws of the U.S. or of any State." |
| Alabama | One Party | Ala. Code § 13A-11-30(1) and § 13A-11-31 | Alabama statute defines eavesdropping as to "overhear, record, amplify or transmit any part of the private communication of others without the consent of at least one of the persons engaged in the communication." |
| Alaska | One Party | Alaska Stat. Ann. § 42.20.300(a); Alaska Stat. Ann. § 42.20.310(a)(1); Palmer v. Alaska, 604 P.2d 1106 (Alaska 1979). | Alaska law prohibits the use of an electronic device to hear or records private conversations without the consent of at least one party to the conversation. Alaska's highest court has held that the eavesdropping statute was intended to prohibit third-party inception of communications only; does not apply to participants in a conversation. |
| Arizona | One Party | Ariz. Rev. Stat. Ann. § 13-3012(9); § 13-3012(5)(c) | An individual not involved in or present during a communication must have the consent of at least one party to record an electronic or oral communication. Arizona also permits a telephone "subscriber" (the person who orders the phone service and whose name is on the bill) to tape (intercept) calls without being a party to the conversation and without requiring any notification to any parties to the call. |
| Arkansas | One Party | Ark. Code Ann. § 5-60-120 | An individual must have the consent of at least one party to a conversation, whether it is in person or electronic. |
| California | All Parties | Cal. Penal Code § 632(a)-(d); Kearney v. Salomon Smith Barney Inc., 39 Cal.4th 95 (Cal. 2006); Kight v. CashCall, Inc., 200 Cal. App. 4th 1377 (2011); Cal. Pub. Util. Code Gen. Order 107-B(II)(A); Air Transp. Ass'n of Am. v. Pub. Utilities Comm'n of State of Cal., 833 F.2d 200 (9th Cir. 1987). | California has very specific laws regulating the recording of oral and electronic communications. All parties must give their consent to be recorded. However, The California Supreme Court has ruled that if a caller in a one-party state records a conversation with someone in California, that one-party state caller is subject to the stricter of the laws and must have consent from all callers. Although California is a two-party state, it is also legal to record a conversation if an audible beep is included on the recorder and for the parties to hear. |

dmcantor.com/assault-violent-crimes-homicides/stalking

doi inspector general - Google Search

Apps Homeport: Inciden... Instructor Certificati... Defensive Driving S... The Asbestos Instit... Classroom – The As... Serious Event Repo... Home - Grand Can... Winter Hiking - Gra...

Home / Arizona DUI / Family Law / Driving Directions / Scholarship / Blog

CLICK HERE FOR FREE CONSULTATION

# Stalking ARS 13-2923

You are here: Home » Criminal Defense Attorney for Assault, Homicide, and Violent Crimes » Stalking ARS 13-2923

Whether in the Phoenix area, or anywhere in Arizona, **per A.R.S. §13-2923 "Stalking"** occurs when a person "knowingly" or "intentionally" engages in a course of conduct that is directed towards another person which would cause a reasonable person to fear for their, or their immediate family's, safety.

In addition, the person being stalked has to actually testify that they were in such fear. A "course of conduct" means maintaining visual or physical proximity to a specific person or directing verbal, written or other threats (whether expressed or implied) to that person on two (2) or more occasions over a period of time. It does not matter how short that period of time is. In addition "immediate family member" includes a spouse, parent, child, or sibling, or any other person who regularly resided within the "victim's" household in the past six (6) months. This has been construed to include a current or former roommate who is not related by blood or marriage to the person receiving the threat.

Need a Phoenix Lawyer for Stalking? Contact DM Cantor if you have been charged with Stalking. **Call 24/7 602-307-0808** for a **Free Consultation.**

**Free Consultation with a Criminal Defense Lawyer – Click Here to Schedule –**

REAL CLIENT TESTIMONIALS

Annonymous
Apr 08, 2019

5.0 ★★★★★

5 stars are not enough. I am the poster picture of ignorance when it comes to legal issues involving courts and the need for at... more

Read All Our Reviews

SCHEDULE YOUR FREE ONE-ON-ONE CONSULTATION TODAY

Your Name:(*)

First & Last

IMG_3265.jpg IMG_3264.jpg IMG_3263.jpg IMG_3267.jpg IMG_3268.jpg Show all

11:32 AM

