MICHAEL BAILEY
United States Attorney
District of Arizona
LAURENCE G. TINSLEY, JR.
Assistant U.S. Attorney
Arizona State Bar No. 012581
Two Renaissance Square
40 North Central Ave., Suite 1800
Phoenix, Arizona  85004-4408
Telephone:  602-514-7500
Facsimile:  602-514-7760
Email:  Laurence.Tinsley@usdoj.gov

*Attorneys for United States of America and Defendant Drapeaux*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elston Stephenson,<br><br>            Plaintiff,<br><br>      vs.<br><br>Brian Drapeaux<br><br>            Defendant. | **CV-19-08268-PCT-DLR**<br><br>**UNITED STATES OF AMERICA'S<br>MOTION TO INTERVENE** |

The United States of America moves to intervene to protect its separate interests, including its right to conduct government business unfettered by an injunction that would interfere with the National Park Service's and its management's ability to run Grand Canyon National Park.  These duties include park maintenance, protection of public safety, conservation of the Canyon, maintenance of wildlife and surrounding lands, educating the public, management of personnel, protection of the Park's infrastructure, lodging for its employees and the public, and other administrative activities.

This case is currently scheduled for a Rule 16 Management Conference on November 22, 2019 at 10:30 a.m.

## I.     Factual background.

The National Park Service (NPS) is a Federal agency under the United States Department of the Interior.  It is mandated to preserve natural and cultural resources, such as National Parks and Monuments for the enjoyment and education of the general public. The NPS has more than 20,000 employees, including management personnel and subordinate employees. The NPS carries out its responsibilities under the authority of Federal laws, regulations, and Executive Orders, in accordance with detailed written policies and manuals established by the Director of the NPS and Secretary of the Interior. *See* Generally Title 36, Code of Federal Regulations.   *See* generally www.nps.gov.

Prior to the uncontested Removal of this action, Plaintiff filed a Petition for an Injunction against Harassment in a Flagstaff Justice Court against his supervisor, Brian Drapeaux, Deputy Superintendent, Business Operations.  In connection with these claims, Plaintiff also filed an internal complaint with the U.S. Department of Interior, pursuant to Personnel Bulletin 18-01 (attached as Exhibit A)[1]. Both filings occurred after Plaintiff learned that Drapeaux had allegedly driven onto Plaintiff's street where Plaintiff lived, in a neighborhood in a Grand Canyon National Park village to check on whether or not Plaintiff was misusing a government owned vehicle (GOV).  Drapeaux had been directed by his own Supervisor to confirm that Plaintiff was not using the GOV during the time Plaintiff had been suspended and thus was off duty.

Plaintiff also had a history of often using the GOV without checking it out under proper protocols, and taking unapproved leaves of absences, setting his own work hours and schedule outside his mandated work hours without pre-authorization, and often using the GOV during these time frames.

Plaintiff would frequently take the GOV off Park land without permission, to run errands to cities miles away.  Drapeaux also learned that Plaintiff treated the GOV as if it

---

[1] Internal complaints pursuant to the Bulletin in Exhibit A are often filed prior to a formal EEOC complaint, and are filed when an employee claims to be subjected to harassment. The Department found no merit to his Personnel Bulletin complaint.

1    were his own personal car, in violation of NPS policy.  He personally saw the GOV at a

2    coffee shop parking lot an hour away from the Grand Canyon and contacted Plaintiff inside

3    the shop.  Plaintiff claimed to be working, though Drapeaux had granted him leave that

4    day.  Drapeaux determined there was no valid business reason for the GOV to be there.

5        The NPS determined that Plaintiff was not accountable for his time and would take

6    unapproved leave and drive the GOV to various points both inside and outside the Park

7    without alerting anyone of the trips he was taking or their purposes.  For instance, Plaintiff

8    often used the GOV when he had no legitimate business reasons, including taking it home

9    overnight and driving to California when he was not on authorized travel.

10       Investigation of his failure to follow NPS leave procedures and being AWOL led to

11   the Park issuing discipline in the form of a three day suspension.  *See* Exhibit B, Approval

12   of Proposed Suspension, dated July 10, 2019.

13       Drapeaux thus exercised legitimate managerial oversight over Plaintiff when

14   Drapeaux checked the whereabouts of the GOV, both during and after the discipline that

15   Plaintiff received.  Plaintiff now characterizes that oversight as "stalking."

16       Plaintiff also alleged in his Petition that NPS management interfered with First Aid

17   classes he taught, when his supervisor limited his use of equipment for the classes and

18   when managers attended the classes as part of routine oversight of its employees' work

19   related activities, such as Plaintiff's.  Plaintiff has also alleged in his Petition that he has

20   filed an EEOC complaint which appears to contain allegations of events contemporaneous

21   to these events.

22       Plaintiff's proposed injunction would prohibit Supervisor Drapeaux from (1) having

23   contact with Plaintiff, (2) going near his residence, and (3) being in the same work area as

24   Plaintiff.

25       *A. Legitimate government business would be impinged by the proposed injunction.*

26       Though no evidence exists to support Plaintiff's allegations of "stalking" or any

27   basis for the stalking charge, the proposed injunction would pose significant logistical

28   problems for the NPS.  Supervisor Drapeaux and Plaintiff both work and reside at the

Grand Canyon National Park.   Under the proposed injunction, the NPS would have to make special arrangements including juggling shifts and rescheduling routine work related duties, and granting paid leave to Drapeaux, Plaintiff, and others to prevent contact between Drapeaux and his subordinate, Plaintiff.  The injunction would likely result in additional expense to the NPS, draining funds and resources for other park service priorities, and creating additional burden and difficulty in NPS management due to the unavailability of Drapeaux during normal and special operations on a day to day basis, including when urgent matters arise.

For instance, NPS management and subordinates often have face to face encounters during normal Park operations as a routine part of their job duties.  This includes attending meetings together, and conducting and running and/or attending conferences.   The communication is often face to face, or via email or texting.  There are also times when Drapeaux must go to the building in which Plaintiff works as part of both his management and routine duties.

Further, due to the close proximity in which Plaintiff and Drapeaux work and live at the Park, there would a constant risk under an injunction that Drapeaux would be in violation of the proposed order merely by performing his regular job duties.  This in turn would put NPS business and the Grand Canyon at risk of further disruption. The proposed injunction would be a daily obstacle to the NPS's operations at the Park.[2]

## II.     Intervention as a matter of right is appropriate.

Plaintiff's proposed injunction would place the United States' interests in the operation of the Grand Canyon, outlined above, at issue.  These facts demonstrate that intervention as a matter of right is proper.

Intervention by the United States is appropriate under Fed.R.Civ P. 24(a)(2), which provides for intervention as a matter of right to any party who "claims an interest relating

---

[2] Further, Drapauex lives about 200 yards from Plaintiff and often socializes with other park staff who live in Plaintiff's cul de sac, and walks his dogs near the area.

- 4

to the property or transaction that is the subject of the action, and is so situated that disposing of the action may…impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  *United States v. Alisal Water Corp*., 370 F.3d 915, 919 (9th Cir.2004), *quoting United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir.2002)*; Cf., Dowling v. Stapley,* 221 Ariz. 251, 270, 211 P.3d 1235, 1254 (App.2009) ("Rule 24 is remedial and should be construed liberally in order to assist parties seeking to obtain justice in protecting their rights") (citation omitted).

The proposed injunction also implicates legal issues pertaining to the United States which it wishes to assert so the Court will have the benefit of a complete record.  For instance, Plaintiff's proposed injunction, which would interfere with Drapeaux's supervisory duties, essentially constitutes an injunction against the United States, which cannot be sued without its consent.  The Court lacks jurisdiction to grant the relief requested for which no waiver of sovereign immunity has occurred.  *See e.g. FDIC v. Meyer,* 510 U.S. 471, 475 (1994) (court lacks jurisdiction absent express waiver of sovereign immunity); *Gilbert v. DaGrossa,* 756 F.2d 1455, 1458 (9th Cir.1985) (suit against IRS agents barred by sovereign immunity); *FBI v. Superior Court of the State of California,* 507 F.Supp.2d 1082, 1094 (N.D.Calif.2007) (state court lacked jurisdiction to enforce subpoena, and suit against agent barred by sovereign immunity).  Cases similar to Plaintiff's petition for an injunction against harassment when brought against Federal officials acting under color of office are routinely dismissed for lack of jurisdiction and no waiver of sovereign immunity.  *See e.g. Andrejko v. Sanders,* 638 F.Supp. 449 (M.D.Penn.1986) (harassment suit by federal employee against supervisor dismissed); *Bagwell v. Brannum,* 533 F.Supp. 362 (N.D.Ga.1982) (suit by federal employee against supervisor for assault dismissed); *Lau v. Wong,* No. C-13-000763-LB, 2013 WL 2181655, *4 (N.D.Calif. May 20, 2013) (discussing the same and dismissing petition for injunction against harassment); *Chan v. Salas,* No. C-10-04348-MEJ, 2011 WL 2493730, at *4 (N.D.Cal. June 23, 2011) (similar).

1    Because United States must be allowed to assert these legal defenses to the proposed

2    injunction, it should be permitted to intervene as a matter of right.

3    **III.      Permissive intervention is also appropriate.**

4         Intervention is also appropriate under Rule 24(b), calling for permissive

5    intervention.  Permissive intervention is appropriate where the applicant demonstrates "(1)

6    independent grounds for jurisdiction, (2) the motion is timely, and (3) the applicant's claim

7    or defense, and the main action, have a question of law or a question of fact in common."

8    *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir.1996).  Where an

9    intervenor has met these requirements, the court may also consider other factors in the

10   exercise of its discretion, including "the nature and extent of the intervenor's interest" and

11   "whether the intervenor's interests are adequately represented by other parties."  *Spangler*

12   *v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir.1977).  As shown, the United

13   States has certain legal defenses that it alone can best assert.

14        Rule 24(b) provides for permissive intervention if the nonparty's claim or defense

15   and the action have a question of law or fact in common.  If so, the Court may consider

16   such factors as the extent of the nonparty's interest, the nonparty's standing, the legal

17   position sought to be advanced and its relation to the merits of the case, whether

18   intervention would prolong or delay the matter, whether the nonparty will contribute to

19   development of the case, and the just and equitable adjudication of the questions presented.

20   *Cf. Bechtel v. Rose,* 150 Ariz. 68, 72, 722 P.2d 236, 240 (1986).  Since the Rule 16

21   Conference has not yet occurred, intervention by the United States will not delay or prolong

22   this matter.

23        The issues the United States raises stem from Plaintiff's request for an unworkable

24   injunction.  The United States has direct and compelling interests in this matter, including

25   the effect of the injunction on the operations of the NPS.  The facts and issues stated above

26   go directly to the propriety and scope of the injunction. The United States is the proper

27   party to raise that interest, since the proposed injunction would create more expansive

28   issues than just a putative dispute between two co-workers.  Thus, permissive intervention

is also proper.

## Conclusion

For the foregoing reasons, the United States requests that the Court permit the United States to intervene to allow it to develop the factual record the Court will need to reach a fair determination of this matter, and to protect its legal defenses.

RESPECTFULLY SUBMITTED this 8th day of October 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/Laurence G. Tinsley, Jr.*

Laurence G. Tinsley, Jr.
Assistant U.S. Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2019, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing. Further, I have mailed a copy of the attached documents, by first class U.S. mail, to the following:

Elston LeMans Stephenson
1616 Barry Hance Circle
Grand Canyon, AZ 86023
*Plaintiff*

*s/Irene Millsaps*
U.S. Attorney's Office