# EXHIBIT A

# EXHIBIT A



U.S. Department of the Interior

## Equal Opportunity and Workplace Conduct

**Share**

# Personnel Bulletin 18-01

**PERSONNEL BULLETIN NO: 18-01**

(PDF version available)

**SUBJECT:** Prevention and Elimination of Harassing Conduct

**1. Purpose.** This Personnel Bulletin updates and amends the Department's policy on providing a work environment free from harassment by (1) defining unacceptable conduct that violates this policy; (2) outlining the rights and responsibilities of employees, supervisors, and managers; and (3) establishing reporting procedures and accountability measures. These procedures ensure that appropriate officials are notified of, and have the opportunity to promptly correct, harassing conduct that is, or has the potential to become, so severe or pervasive as to constitute a legal claim of harassment.

This policy is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees, or any other person.

**2. Effective Date.** This policy is effective April 23, 2018.

**3. Authorities.**

    A. Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended

    B. Title 42 of the United States Code, Section 2000e through 16

C. Title 29 of the United States Code, Section 633a and 791(f)

D. Title 29 of the Code of Federal Regulations, Section 1604.11 and 1614

E. Title 5 of the United States Code, Section 2302(b)(1) and (10)

F. Title 5 of the United States Code, Chapter 75 and substantially similar authorities covering employees in alternate personnel systems

G. Executive Order 11478, as amended

H. 370 DM 752

I. Secretary of the Interior Harassment Policy Statement, issued April, 12, 2017

**4. Coverage.** This policy applies to all employees within all Bureaus and Offices of the Department and supersedes any other Departmental or Bureau/Office policies or procedures that conflict with this policy. Bureaus/Offices may issue implementing procedures consistent with this policy. Prior to implementation, all Bureau/Office implementing procedures must be reviewed and approved by the Director of the Department's Office of Human Resources.

**5. Policy.**

The Department is committed to providing a work environment free of discrimination and harassment based on race, color, religion, sex (including pregnancy and gender identity), sexual orientation, national origin, age, disability, genetic information (including family medical history), status as a parent, marital status, or political affiliation, and free from illegal retaliation. The Department will not tolerate offensive sexual or non-sexual harassing behavior against any Department employee, intern, volunteer, contractor or other non-Federal employee, visitor, or other member of the public. The Department also will not tolerate adverse treatment of employees because they report harassing conduct or provide information related to such complaints. The purpose of this policy is to ensure that the Department takes immediate and appropriate corrective action, including appropriate disciplinary action, to eliminate harassing conduct regardless of whether the conduct rises to the level of a violation of law. Therefore, the goal of this policy is to address harassing conduct at the earliest possible stage, before it becomes "severe or pervasive," i.e., harassment within the meaning of anti-discrimination law.

**A. Prohibited Harassing Conduct.** The conduct prohibited by this policy includes, but is broader than, the legal definitions of harassment and sexual harassment. Harassing conduct prohibited by this policy is defined as unwelcome conduct, verbal or physical, including intimidation, ridicule, insult, comments, or physical conduct, that is based on an individual's protected status or protected activities under this policy, when:

1. the behavior can reasonably be considered to adversely affect the work environment; or
2. an employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct.

Protected status is defined as an individual's race, color, religion, sex (including pregnancy and gender identity), sexual orientation, national origin, age, disability, family medical history (including genetic information), status as a parent, marital status, or political affiliation.Protected activities under this policy are defined in Section 5.B.

Although not every instance of inappropriate behavior may meet the legal definition of harassment, such behavior undermines morale and the Department's mission.Accordingly, the misconduct prohibited by this policy is broader than the definition of illegal harassment under Title VII of the Civil Rights Act to ensure that appropriate officials are notified of, and can promptly correct, harassing conduct.Harassment becomes illegal when enduring the offensive conduct becomes a condition of continued employment or the conduct is sufficiently severe or pervasive as to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. All harassing conduct, as defined above, is a violation of this policy.

Employees are subject to disciplinary action, up to and including removal, for engaging in harassing conduct while in the workplace or in any work-related situation, including while on official travel. Off-duty misconduct may subject the employee to potential discipline if the misconduct is likely to have an adverse effect on the Department (e.g., harassing a co-worker, visitor, contractor, or volunteer during off-duty hours). Harassing conduct can occur in person, through phone calls or in writing, or through the use of social media, or other forms of technology.

**B. Prohibited Retaliatory Conduct.** It is a violation of this policy to retaliate against employees who engage in protected activity under this policy. Protected activity includes reporting harassing conduct, discrimination or retaliation; filing a claim of harassment; providing evidence in any investigation; or intervening to protect others who may have suffered harassing conduct, discrimination or retaliation. A manager may not fire, demote, harass, or otherwise take any personnel action against an individual for reporting an allegation of misconduct under this policy.

It is important that supervisors and managers protect employees who report alleged misconduct, and do not take any retaliatory personnel action against these individuals in order to deter reporting harassing conduct or filing a complaint. A supervisor/manager found to have engaged in retaliation is subject to disciplinary action.

The following examples are a non-exhaustive list of actions that would be prohibited retaliation if they were taken because of, or were motivated by, an employee's protected activity: transferring the complainant or witness against his or her will, ignoring or not communicating with the complainant or witness, engaging in verbal or physical abuse, or non-selection for an employment opportunity.

Engaging in protected activity under this policy does not shield an employee from all personnel actions. Supervisors/managers can take personnel actions, including discipline and removal, if they are motivated by *non-retaliatory and non-discriminatory* reasons that would otherwise result in such consequences (e.g., transferring an employee for legitimate business reasons or closely monitoring the performance of an employee on a Performance Improvement Plan).

**C. Employee Reporting Expectations.** The Department cannot correct harassing conduct if a supervisor, manager, or other Department official is not aware of it. Any employee who has been subjected to harassing conduct is encouraged to inform the person(s) responsible for the conduct that it is unwelcome and offensive, and request that it cease. If the conduct continues, is severe, or if the employee is uncomfortable addressing the responsible person(s) about the conduct, the employee ***is encouraged to*** report the matter to:

- the supervisor of the employee engaging in the misconduct;
- another supervisor or other management official;
- the servicing Human Resources office; or
- the Office of the Inspector General (OIG).

Employees who know of or witness possible harassing conduct directed at others ***are expected to*** report the matter to any of the officials or offices listed above.

Reports made pursuant to this policy do ***not*** replace, substitute, or otherwise satisfy the separate obligations of an Equal Employment Opportunity (EEO) complaint, negotiated or administrative grievance, or other complaint process.  Unlike this policy, other complaint procedures typically provide for remedial relief to the victims.  See Section 9 for more information about how an employee may pursue rights under one of these separate processes, in addition to reporting the misconduct under this policy.

Engaging in additional processes and services available to support employees who have experienced harassing conduct, such as consulting with a union representative to get advice, engaging in alternative dispute resolution procedures, consulting an ombuds/CORE PLUS neutral[1], or contacting the employee assistance program, do ***not*** constitute a report under this policy.  See Section 10 for additional information.

**D. Management Duty to Act.**  Supervisors/managers who observe or are informed of allegations of harassing conduct must comply with the following requirements:

a. report the conduct/allegations to the appropriate officials, even if the employee raising the allegation requests confidentiality (see Section 8.A. for additional details);
b. ensure that a prompt, objective, and thorough investigation is conducted; and
c. take steps to ensure that the harassing conduct is appropriately addressed to deter further misconduct, including taking disciplinary action, if appropriate.

The fact that a potential victim of harassing conduct will or has filed an EEO complaint or grievance alleging harassment ***does not*** relieve a supervisor/manager of his or her duty to act pursuant to this policy.Therefore, it is possible that multiple inquiries into a given complaint may proceed in parallel.

Appropriate corrective action, disciplinary or otherwise, up to and including removal, will be taken against any supervisor or other management official who fails to perform her or his obligations as set forth in this policy, including any failure to report known violations of this policy.

**E. Distinction from EEO and Other Remedial Procedures.** This policy and its reporting procedures are separate and distinct from the EEO process, which focuses on making employees whole after they have experienced discrimination (including harassment) by issuing remedial relief, such as compensatory damages. This policy does not replace an employee's EEO or other rights. Corrective action taken under this policy does not provide the remedies available in the EEO process, administrative or negotiated grievance procedures, or any other processes. Reporting allegations of misconduct under this policy ***does not*** satisfy the requirements for filing an EEO complaint, administrative or negotiated grievance, or other procedure, ***nor does it delay the time limits for initiating those procedures***. See Section 9 for additional information on remedial processes.

## 6. Responsibilities.

As noted in Section 4, Bureaus may issue implementing procedures to add additional responsibilities to each of the below roles and/or identify additional roles within their organizational structures in order to implement this policy.

### A. Deputy Assistant Secretary for Human Capital & Diversity

The Deputy Assistant Secretary for Human Capital & Diversity, as the Department's Chief Human Capital Officer (CHCO), is responsible for:

1. Disseminating this policy to all employees on an annual basis and periodically reminding employees of their responsibilities under this policy.
2. Ensuring that performance plans of all supervisors/managers include a critical element that would rate their performance on taking appropriate action against employees for misconduct.
3. Fulfilling the role of Bureau Human Capital Officer, as defined in Section 6.C., for the Office of the Secretary.

4. Providing periodic reports to the Deputy Secretary of the Interior or his/her designee on information received from the Bureau Human Capital Officers pursuant to Section 6.C.5 of this policy on allegations of misconduct under this policy and the necessary corrective action taken, if any.

### B. **Bureau Directors and Equivalent Office Heads**

Bureau/Office Heads are responsible for:

1. Ensuring that supervisors/managers are appropriately rated on the critical element described in Section 6.A.2.
2. Ensuring that their organizations are in full compliance with requirements of this policy.
3. Monitoring the work environment following a report alleging a violation of this policy to ensure that there are no further violations or incidents of retaliation against any individual who has reported harassment or participated in the investigation.

### C. **Bureau and Equivalent Office Human Capital Officers (Bureau HCOs)**

Bureau HCOs are responsible for:

1. Developing and providing periodic communications to all Bureau/Office employees on this policy and any Bureau/Office-specific requirements, and incorporating this policy into the Bureau/Office's supervisory training curriculum.
2. Resolving any disagreements involving investigations between management officials and consulting staff from servicing Human Resources Offices or the Office of the Solicitor regarding whether and what type of investigation is necessary.
3. Providing oversight, technical assistance, and support to Bureau/Office staff to ensure compliance with this policy.
4. Ensuring that the procedures in this policy are properly executed by monitoring inquiries and investigations of reported or otherwise discovered harassing conduct; providing guidance concerning the information to be gathered and methods to be used during inquiries and investigations; and otherwise ensuring that the investigations are swift, thorough, impartial, and appropriate to the allegation.

5. Reviewing on a monthly basis the information contained in the system used by servicing Human Resources Offices to track harassing conduct allegations, as described in Section 8.B., and providing information to the Bureau/Office Director and the CHCO as requested.

6. Providing the record of actions taken under this policy to any office handling a parallel statutory or grievance claim, as referenced in Section 7.F.

### D. **Servicing Human Resources Offices (HROs)**

Servicing HROs (normally the Employee Relations function in particular) are responsible for:

1. Receiving reports alleging violations of this policy and, as described in Section 7 of this policy, notifying and assisting the relevant management officials in handling allegations of harassing conduct and taking corrective action, as appropriate and necessary.

2. Tracking all reports made and actions taken pursuant to this policy in line with the Department's Office of Human Resources case tracking procedures, and reporting on them to the Bureau HCO.

### E. **Office of the Solicitor (SOL)**

The Office of the Solicitor is responsible for advising and assisting the relevant management officials and servicing HROs in handling allegations of harassing conduct and taking corrective action, as appropriate and necessary. Within SOL, the Employment and Labor Law Unit (ELLU) is the initial point of contact for issues related to harassing conduct, and is responsible for providing Harassment Duty Attorney coverage on weekdays, 8:00 am – 7:00 pm Eastern time.

### F. **Supervisors and Management Officials**

Supervisors and management officials must:

1. Make every effort to provide a work environment free of illegal harassment.

2. Ensure that their subordinates are aware of this policy and its requirements.

3. Act promptly and effectively to stop harassing conduct of which they are aware, and hold employees who have engaged in harassing conduct accountable.

4. Receive reports alleging violations of this policy and, as described in Section 7 of this policy, make or direct further inquiries into such reports and take corrective action, as appropriate and necessary.

5. Follow any additional procedures, handbooks, or guidelines issued by the Department or the Bureau/Office as related to this policy.

6. Notify appropriate officials in their chain of command of reported or observed conduct under this policy and of their efforts to correct the conduct.

7. Appropriately evaluate and hold accountable subordinate supervisors/managers of their performance under this policy.

8. Protect employees who report misconduct from retaliation.

### G. **All Employees**

All Department employees ***must***:

1. Refrain from engaging in harassing conduct.
2. Participate in any training required under this policy.
3. Cooperate fully in any inquiry or investigation.

All Department employees ***are expected to***:

1. Understand their rights and responsibilities under this policy.
2. Report harassing conduct of which they are aware or witness in the work environment, as described in Section 5.C. of this policy.

All Department employees who are victims of harassing conduct ***are encouraged to*** report the harassing conduct.

### 7. Management Response to Reports of Harassing Conduct.

**A. Documenting Report of Harassing Conduct.** A supervisor, manager, or HR official who receives a report of, or otherwise becomes aware of, harassing conduct, must ***within one business day***:

1. Document the allegation in writing (see Appendix A, Sample Intake Form).

2. Acknowledge receipt of the report to the reporting party.

## B. Supervisor/Manager Immediate Actions

1. Determinations to be made

   The supervisor/manager who receives a report of, or otherwise becomes aware of, harassing conduct involving subordinates must promptly contact the servicing HRO.  In consultation with the servicing HRO, the supervisor/manager must determine:

a. What conduct is at issue, whether it arguably could be considered harassing conduct, and whether it is potentially criminal in nature;

b. Who may be involved; and

c. Whether the reported activity poses a security risk and whether it is necessary to alert law enforcement (e.g., in instances where there is a threat of immediate physical harm).

   If the report is made outside of the regular business hours of the servicing HRO, supervisors/managers should take action based on their best judgment to minimize any perceived risk of immediate harm and contact the servicing HRO as soon as normal business hours resume.

2. Conflicts of interest of senior-level officials

   If an Assistant Secretary, Deputy Assistant Secretary, Bureau or equivalent Office Head, or similar high ranking official is implicated in the potentially harassing conduct, the CHCO will designate an appropriate management official to be responsible for making the preliminary determinations and directing any further investigation that is warranted.

3. Interim measures to ensure harassing conduct does not continue

   Before directing a thorough investigation into the allegations of misconduct, a supervisor/manager must take any necessary interim steps to ensure that the

potentially harassing conduct does not continue.  The interim measures taken will depend on the severity of the conduct alleged.  The two interim measures listed below are required in cases of serious misconduct, including, but not limited to, harassing conduct of a sexual nature, depending on the circumstances.

Before implementing either of the measures below, the supervisor/manager must consult with the servicing HRO and the Harassment Duty Attorney of SOL/ELLU for advice and guidance.  If the report is made outside of the regular business hours of the servicing HRO, supervisors/managers should take action based on their best judgment to minimize any perceived risk of immediate harm and contact the servicing HRO as soon as normal business hours resume.

a.  Separation of the Allegedly Harassing Employee from the Alleged Victim

If the conduct is severe or pervasive, including, but not limited to, threatening behavior, touching, punching, or other egregious harassing behavior, the supervisor/manager should separate the employee alleged with harassing conduct from the alleged victim, at least until the matter otherwise can be resolved.  Management should **_not_** move the employee who reported or otherwise was the alleged victim of harassing conduct.  If the alleged victim, without having been asked or prompted, specifically requests such a move or transfer, management should inform the employee that she or he need not leave, and that instead the employee alleged to be responsible for the harassing conduct may be moved. Nonetheless, to the extent possible, management should honor the alleged victim's request. Appropriate steps to separate the alleged victim from the alleged harasser include, but are not limited to:

- assigning the alleged harasser to a telework status or a temporary detail;
- moving him or her to another office space, desk or floor; or
- requesting approval to place him or her on administrative or investigative leave.

b.  Issuing No Contact Instructions

Another interim measure that a supervisor/manager may take to help ensure that harassing conduct stops is to instruct the allegedly harassing employee to have no further contact or communications with the alleged victim.

**C. Notifying Appropriate Officials of Report.**  In implementing this policy, Bureaus may identify additional roles or change which of the below roles accomplish the notifications required in this section.

Management officials must notify the following parties ***within one business day***:

1. Supervisors/managers who become aware of harassing conduct involving their subordinates must notify their own first-line supervisor or, if the conduct implicates the first-line supervisor, notify the second-line supervisor.
2. Supervisors/managers who become aware of harassing conduct involving employees outside of their chain of command must:
    a. Notify the allegedly harassing employee's supervisor; and
    b. Notify the alleged victim's supervisor, or, if the conduct implicates the supervisor or another manager, the Bureau HCO.
3. When a supervisor/manager has consulted with the servicing HRO regarding a report of alleged harassing conduct, the HR officer or assigned Employee Relations supervisor/specialist will:

a. Notify the Harassment Duty Attorney of the SOL/ELLU at SOL-Antiharass@sol.doi.gov; and
b. If applicable, notify the servicing HRO of the allegedly harassing employee.

4. When a report of alleged harassing conduct is made directly to the servicing HRO, the HR officer or assigned Employee Relations supervisor/specialist will:

a. Notify the SOL/ELLU Harassment Duty Attorney at SOL-Antiharass@sol.doi.gov; and
b. Notify and assist the next appropriate level of management above the allegedly harassing employee implicated in the report with immediately making the determinations described in Section 7.B. and taking any other necessary and appropriate action.

## D. Conducting Further Investigation

1. Deciding whether further investigation is necessary

   Within **_three business days_** of the receipt of the allegation, the supervisor/manager of the allegedly harassing employee, or other designated management official, must consult with SOL and the servicing HRO to determine whether and what type of further investigation is required (as described in Section 7.D.2), or if the preliminary inquiry is sufficient to determine whether corrective action is necessary.  These decisions are fact-specific, and must be made on a case-by-case basis.  Any disagreement between the responsible management official and the consulting offices will be directed to the Bureau HCO.

   If it is determined that an investigation is necessary, the servicing HRO specialist will ensure that the investigative process is initiated within **_two business days_** of the decision being made regarding the appropriate investigative entity (e.g., refer the case to the OIG, initiate the funding process and prepare a statement of work for a third-party investigator).  The servicing HRO specialist will serve as the primary point of contact for logistics related to getting an internal or third-party investigator in place, as well as when the allegations have been referred for criminal investigation or to the OIG.

2. Deciding who will conduct the investigation

   If it is determined that further investigation is necessary, the following general guidelines will apply for choosing the type of investigation:

a. OIG: Allegations of criminal activity, allegations implicating a member of the Senior Executive Service, or other senior or prominent management official, senior law enforcement official, or any OIG employee, and allegations tied to waste, fraud, or abuse of Department funds/programs or violations of Federal ethics regulations must be referred to OIG, which has the right of first refusal in conducting the investigation;[2]

b. Bureau law enforcement internal affairs unit: Allegations involving law enforcement personnel of a Bureau's law enforcement entity must be referred to the entity's Office of Professional Responsibility or equivalent internal affairs unit;

c. Third-party investigator[3]: Allegations of harassing conduct of a sexual nature.

   All other allegations under this policy may be handled by a third-party investigator, employee relations specialist(s), supervisor/manager, or another employee trained to conduct investigations.The supervisor/manager of the allegedly harassing employee, or other designated management official, in consultation with the servicing HRO and SOL, will make the final decision about the investigation method based on the complexity and scope of the allegation(s) and the availability of qualified investigators.

3. Conducting the investigation

   All investigations must be conducted swiftly, impartially, and in a manner appropriate to the allegation.All investigations handled by a Department supervisor/manager, servicing HRO, or third-party investigator must be conducted in accordance with the Department's Investigator Guide to Conducting Administrative Investigations.

**E. Taking Corrective Action.** If it is determined that misconduct occurred, corrective action is necessary.

1. To determine whether corrective action is necessary, the supervisor/manager of the employee alleged to have engaged in harassing conduct must consult with the servicing HRO and SOL to determine whether any disciplinary or other corrective action would be appropriate or if the allegation should be closed with no finding of misconduct.

2. If the decision is made that the allegation should be closed with no finding of misconduct, the supervisor/manager must write a memorandum detailing why no corrective action was warranted.  This memorandum must be approved by the next higher level manager and be included in the case file maintained by the servicing HRO.

3. If facts uncovered during the investigation or inquiry demonstrate that misconduct occurred, the supervisor/manager ***must*** propose disciplinary or corrective action.  If there is disagreement between the supervisor/manager and the consulting offices on whether corrective action is appropriate, the next higher level of management will make the decision.

4. The appropriate corrective action will depend on the severity and/or pervasiveness of the offense, the action that would be required to end such conduct, the offender's disciplinary/conduct history, and other surrounding circumstances.  Corrective action may include counseling or any disciplinary action applicable to instances of misconduct, such as reprimand, suspension, demotion, or termination, in accordance with 370 DM 752, Discipline and Adverse Actions.  Where evidence indicates that employees are not sure about what conduct is appropriate and permissible, appropriate training should be provided.

5. A supervisor/manager's failure to take appropriate disciplinary and/or corrective action will generally support a charge of negligent supervision and be an actionable charge.  Appropriate corrective action, disciplinary or otherwise, up to and including removal will be taken against any supervisor or other management official who fails to perform her/his obligations as set forth in this policy, including any unreasonable failure to report known violations of this policy.  In addition, managers will appropriately evaluate and hold accountable subordinate supervisors/managers for their performance under this policy using the required supervisory critical element.

## F. Responding to Reports of Harassing Conduct Raised in a Statutory, Administrative, or Negotiated Grievance Process

If an employee pursues a claim of harassment through the EEO process, an MSPB appeal, or a negotiated/administrative grievance, the Department official who receives notice of such claim will promptly notify the appropriate responsible management official.  The management official has a duty to act promptly upon learning that harassing conduct has been alleged, must treat the notice as a report under this policy, and must follow the steps outlined in this section, unless inconsistent with applicable regulatory or statutory requirements.  It is possible that multiple inquiries into a given complaint may proceed in parallel.

Personnel Bulletin 18-01 | U.S. Department of the Interior
Case 3:19-cv-08268-DLR Document 13-2 Filed 11/14/19 Page 17 of 28
Page 16 of 27

### 8. Maintaining Confidentiality and Keeping Records.

**A. Maintaining Confidentiality.** Supervisors/managers must take action to investigate all allegations of harassing conduct, even if the employee raising the allegation requests confidentiality. All reports of harassing conduct and related information will be maintained on a confidential basis to the greatest extent possible. The identity of the employee alleging violations of this policy will be kept confidential, except as necessary to conduct an appropriate investigation into the alleged violations, to take appropriate disciplinary or corrective action, to comply with the reporting requirements of this policy, or when otherwise required by law.

Upon inquiry from the alleged victim, the supervisor/manager must notify the alleged victim of the harassing conduct about the completion of the process to the extent permitted under the Privacy Act. The alleged victim may not be provided the outcome of any disciplinary action against the allegedly harassing employee and may not be provided a copy of the fact-finding report. The supervisor/manager must consult with servicing HRO specialist and SOL about this notification.

**B. Tracking Allegations of Harassing Conduct.** The servicing HRO will be responsible for tracking the information related to the allegations of harassing conduct in separate case files, in accordance with established records management policies. The servicing HRO must monitor and record the status of allegations, including final resolution, in the appropriate tracking system approved by the Department's Office of Human Resources. This information will help the Department monitor compliance with this policy, understand trends related to harassing conduct, and ensure swift resolution of complaints.

### 9. Distinction from Statutory and Grievance Claims.

The purpose of this policy is to stop harassing conduct that has occurred and deter its occurrence in the future. However, corrective action under this policy does not provide the remedies available in the EEO, grievance, or other processes, such as compensatory damages. Filing a report under this policy does *not* satisfy the requirements for filing an EEO complaint, negotiated grievance, or other procedure and obtaining remedies

pursuant to them, nor does it delay the time limits for initiating those procedures.  Thus, an employee who chooses to pursue statutory, administrative, or collective bargaining remedies for unlawful harassment must select one of the available forums as follows:

**A.  For an EEO complaint pursuant to 29 C.F.R. §1614**  (available for all claims of illegal harassment other than those based on status as a parent, marital status and political affiliation), contact an EEO counselor in the Bureau's or Office's Equal Employment Opportunity/Civil Rights Office within 45 calendar days from the most recent incident of alleged harassment (or personnel action, if one is involved), as required in 29 C.F.R. §1614.105(a)(1); or

**B.  For a negotiated grievance claim,** file a grievance in accordance with the provisions of the applicable Collective Bargaining Agreement; or

**C.  For an administrative grievance claim,** file a written grievance in accordance with the provisions of 370 DM 771, Administrative Grievance Procedures; or

**D.  For an appeal to the Office of Special Counsel (OSC)** regarding claims of harassment related to marital status and political affiliation, pursuant to 5 U.S.C. §2302 (b)(1) and (b)(10), file a written appeal with the OSC as described in 5 C.F.R. §1800.1 and on osc.gov; or

**E.  For an appeal to the MSPB** pursuant to 5 C.F.R. § 1201.22, file a written appeal with the Board within 30 days of the effective date of an appealable adverse action as defined in 5 C.F.R. §1201.3, or within 30 days of the date of receipt of the agency's decision, whichever is later.

**10.  Additional Resources.**

**A. Consultation Options.**  Employees who have experienced harassing conduct have multiple resources available that can provide assistance and advice.  Engaging with the following resources ***does not*** constitute a report under this policy, as these entities do not have an obligation to inform management of allegations of harassing conduct:

- **Ombuds/CORE PLUS neutrals.**  Office of Collaborative Action and Dispute Resolution (CADR) ombuds work independently from management's chain of

command and are impartial.  CORE PLUS neutrals are qualified, certified providers of conflict management and alternative dispute resolution services.  Conversations with ombuds and other CORE PLUS neutrals are confidential and informal and provide managers and employees a safe place to explore options for addressing individual or organizational concerns.  Ombuds and CORE PLUS neutrals are not obliged to report discussions (outside of imminent risk of harm). Information about CADR programs is available at ;

- **Employee Assistance Program (EAP).**  The DOI EAP is an employee benefit program that helps employees with personal and/or work-related problems that may impact their job performance, health, and mental and emotional well-being.  Information about EAP ;**Victim Assistance Program.**  The DOI Office of Law Enforcement and Security or Bureau law enforcement office's Victim Assistance Program provides general information about rights and services available for victims of crime; and

- **Union Representative.**  Employees who are covered by a bargaining unit can consult with a union representative.

**B. Additional Information.**To learn more about the Department's anti-harassment resources and Bureau-specific policies.

## 11.  Inquiries.

Any Department employee or employee representative seeking further information concerning this policy may contact the appropriate Bureau HCO. Servicing HROs may contact the Department's Office of Human Resources, Workforce Relations Division concerning questions related to this policy.

## 12.  Distribution.

This policy will be distributed to all employees upon issuance, and annually thereafter.  It will also be distributed to all employees new to the Department as part of their orientation materials. This policy also will be made available to employees on the Equal Employment and Workplace Conduct website accessible at , which also provides additional anti-harassment resources.

_____

Edward T. Keable

Acting Deputy Assistant Secretary

Human Capital and Diversity

Chief Human Capital Officer

## **Appendix A: Sample Harassing Conduct Allegation Intake Form**

This sample intake form can be used by any management official to record a report of harassing conduct. It can be used as a prompt during a conversation with an employee reporting harassing conduct, or as a way to document the conversation after the fact. Gathering as much information as possible immediately from the individual reporting the alleged harassing conduct will aid management in swiftly determining the best course of action. Bureaus/Offices may wish to develop and issue their own versions of this form.

**Management Official Taking the Report**

Name: _____          Title:

_____

Organization:

_____

Date Information Reported: _____          Time:

_____

Case 3:19-cv-08268-DLR   Document 13-2   Filed 11/14/19   Page 21 of 28

**Individual Reporting Harassing Conduct**

Name: _____          Title:

_____

Organization:

_____

Phone: _____          Job location:

_____


**Individuals Allegedly Engaging in Harassing Conduct (if known)**


1. Name: _____          Title:

_____

Organization:

_____

Phone: _____          Job location:

_____

Personnel Bulletin 18-01 | U.S. Department of the Interior
Case 3:19-cv-08268-DLR   Document 13-2   Filed 11/14/19   Page 22 of 28
Page 21 of 27

2. Name: _____   Title:

_____

Organization:

_____

Phone: _____   Job location:

_____

3. Name: _____   Title:

_____

Organization:

_____

Phone: _____   Job location:

_____

**Questions to Ask the Individual Reporting the Harassing Conduct**

1. Date(s) of alleged incident(s)/action(s):

2. Please describe specifically the alleged harassing conduct, including the protected status on which you believe it was based [i.e., race, color, religion, sex (including pregnancy and gender identity), sexual orientation, national origin, age, disability, family medical history (including genetic information), status as a parent, marital status, or political affiliation]:

3. Was this an isolated event or a pattern of similar events or behaviors?

4. Was the harassing conduct directed at you or someone else?  If someone else, to whom was it directed?

5. What was your reaction?

6. How did this conduct or behavior affect you? How did it make you feel?

7. Did you speak to the person who engaged in harassing conduct to ask them to cease? If so, what was their response?

8. Can you identify other individuals with knowledge of the alleged conduct at issue or other actions/behaviors by the charged individual(s) in the past? (Include observations, what people heard, and who you told about the events in question.)

9. Are there any documents or physical evidence that may support the claim of alleged occurrences? If so, please identify them.

10. Do you feel that the alleged harasser(s) is a threat to your safety and well-being or that of others? If so, how?

11. Have you previously complained about this or related acts of harassing conduct by the same individual(s) to a supervisor or manager? If so, please identify the individual(s) to whom you complained, the date(s) of the complaint(s), and the resolution(s), if any.

12. Is there is any other information related to the incident(s)/action(s) or any other information related to the inquiry that you would like to provide?

---

[1] Ombuds and other CORE PLUS neutrals are available to discuss any workplace-related concern, including those related to harassing or inappropriate conduct.  Ombuds,

in particular, work independently from management's chain of command, are impartial, and help with both individual and systemic issues.

[2] OIG may also undertake any criminal, civil or administrative investigations regarding allegations of any grade employee involved in a serious or notorious allegation or incident that may negatively impact the operations and efficiency of the Department.

[3] A third-party investigator can be a contract investigator, a DOI HR official from outside the servicing HRO, or a management official outside the Bureau/Office/Region chain of command.

Back to top



U.S. Department of the Interior

Protecting America's Great Outdoors and Powering Our Future

AGENCY                     BUDGET &              BUSINESSUSA | COBELL / LANDDEEPWATERFOIA | HURRICANE
FINANCIAL REPORT | PERFORMANCE |                          BUY-BACK |   HORIZON |            SANDY |
INSPECTOR GENERAL | INTEGRITY OF SCIENTIFIC & SCHOLARLYNO         OPEN GOVERNMENT
                           ACTIVITIES |                          FEAR ACT | INITIATIVE |
POLICY                                                                   STRATEGIC
LIBRARY: DEPARTMENTAL MANUAL, HR, SECRETARY'S ORDERS, WILDLAND FIREPLAN |
MANAGEMENT |                                                             TRIBAL
                                                                        LEADERS DIRECTORY |

USA.GOV | WHITE
               HOUSE

DOI.gov   |   Accessibility   |   Accommodations   |   Contact Us   |   Copyright   |   Digital Media Guide   |   Disclaimer   |

https://www.doi.gov/employees/anti-harassment/personnel-bulletin-18-01                           10/8/2019

InformationNotices   |   Privacy Policy   |   Site
Quality   |                                                     Map

U.S. Department of the Interior, 1849 C Street NW, Washington, DC 20240. feedback@ios.doi.gov