FILED _____ LODGED _____
RECEIVED _____ COPY _____

DEC 0 2 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

ELSTON L STEPHENSON
P.O. Box 129
Grand Canyon, AZ 86023
Case 3:19-cv-08268-DLR
November 27, 2019

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE   LRC  7.1(a)(3)
(Rule Number/Section)

U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this request for EXTENSION/POSTPONEMENT.

Thank You

Sincerely,

Elston L Stephenson

11

MICHAEL BAILEY
United States Attorney
District of Arizona
LAURENCE G. TINSLEY, JR.
Assistant U.S. Attorney
Arizona State Bar No. 012581
Two Renaissance Square
40 North Central Ave., Suite 1800
Phoenix, Arizona  85004-4408
Telephone:  602-514-7500
Facsimile:  602-514-7760
Email:  Laurence.Tinsley@usdoj.gov

*Attorneys for United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elston Stephenson,<br><br>Plaintiff,<br><br>vs.<br><br>Brian Drapeaux,<br><br>Defendant. | CV-19-08268-PCT-DLR<br><br>**INTERVENOR UNITED STATES'<br>MOTION TO DISMISS<br>PURSUANT TO RULES 12(b)(1) and<br>12(b)(6)** |

The United States moves to dismiss Plaintiff's complaint.[1]  Plaintiff has filed a claim for injunction against harassment, in which he appears to allege Title VII claims of a hostile work environment arising from "stalking" by Drapeaux, his supervisor, and/or tortious conduct by Drapeaux under the Federal Tort Claims Act (FTCA).   Plaintiff's own pleadings admit that his work dispute allegations are related to claims he has pending before the Equal Employment Opportunity Commission (EEOC).

---

[1] Counsel for the United States has requested authority to continue to represent Defendant Drapeaux but has not yet received it; however, the arguments asserted in the United States' motion apply equally to Drapeaux's interests and positions.

1      The Court should dismiss for lack of subject matter jurisdiction and failure to state

2      a claim because the Federal statutes prohibiting discrimination in Federal employment

3      provide the exclusive remedy for claims of discrimination brought by Federal employees.

4      Under the Title VII statutes, Federal employees are required to either exhaust their

5      administrative remedies or provide timely notice to the EEOC prior to filing suit. Here,

6      Plaintiff has not alleged either that he properly exhausted his claims or provided notice to

7      the EEOC of his employment discrimination claims.

8              Further, to the extent Plaintiff's allegations can be construed as a tort claim, the

9      Court should dismiss for lack of subject matter jurisdiction. The FTCA, 28 U.S.C. §

10     1346(b), provides a cause of action against the Federal government for persons injured by

11     the tortious activity of a Federal employee acting within the scope of his office or

12     employment. Plaintiff has not satisfied the jurisdictional prerequisite to a civil lawsuit

13     under the FTCA since he never submitted an administrative tort claim with the National

14     Park Service.

15     **I.      Introduction.**

16             Plaintiff filed a Petition for an Injunction against Harassment in a Flagstaff Justice

17     Court against his supervisor, Brian Drapeaux, Deputy Superintendent, Business

18     Operations. *See* Drapeaux Declaration, attached as Exhibit C, at ¶ 1. Plaintiff alleges that

19     his Supervisor "stalked him." Plaintiff brought this action after he learned that Drapeaux

20     had allegedly driven onto Plaintiff's street in a neighborhood in a Grand Canyon National

21     Park village to check on whether or not Plaintiff was misusing a government owned vehicle

22     (GOV). Plaintiff alleges that he has an EEOC claim, alleging "Plaintiff has open formal

23     EEOC complaint against Defendant which is likely to find [sic] in Plaintiff's favor." Dkt.

24     1, at 8.[2]

25     _____

       [2] In connection with these claims, Plaintiff filed an internal complaint with the U.S.
26     Department of Interior, pursuant to Personnel Bulletin 18-01 (Exhibit A). Internal
       complaints pursuant to the Bulletin in Exhibit A can be filed when an employee claims to
27     be subjected to harassment based on certain protected classification. These often precede
28     EEOC complaints. The Department found no merit to his Personnel Bulletin complaint.

- 2

1    Defendant Drapeaux investigated Plaintiff because he had been directed by his own

2   Supervisor to confirm that Plaintiff was not using the GOV during the time Plaintiff had

3   been suspended and off duty.  Exhibit C, at ¶ 2.  Plaintiff had a history of often using the

4   GOV without checking it out under proper protocols, and taking unapproved leaves of

5   absences, setting his own work hours and schedule outside his mandated work hours

6   without pre-authorization, and often using the GOV during these time frames.  *Id.*  Plaintiff

7   would frequently take the GOV off Park land without permission, to run errands to cities

8   miles away.  *Id.*

9    Drapeaux also learned that Plaintiff treated the GOV as if it were his own personal

10   car, in violation of NPS policy.  *Id.* at ¶ 3.  He personally saw the GOV at a coffee shop

11   parking lot an hour away from the Grand Canyon and contacted Plaintiff inside the shop.

12   *Id.*  Plaintiff claimed to be working, though his duties had ended that day.  *Id.*  Drapeaux

13   determined there was no valid business reason for the GOV to be there.  *Id.*

14    The NPS determined that Plaintiff was not accountable for his time and would take

15   unapproved leave and drive the GOV to various destinations both inside and outside the

16   Park without alerting anyone of the trips he was taking or their purposes.  *Id.* at ¶ 4.  For

17   instance, Plaintiff often used the GOV when he had no legitimate business reasons,

18   including taking it home overnight and driving to destinations outside the Park when he

19   was not on authorized travel.  *Id.*

20    Investigation of his failure to follow NPS leave procedures and being absent without

21   leave (AWOL) led to the Park issuing Plaintiff discipline in the form of a three day

22   suspension.  *See* Exhibit B, Approval of Proposed Suspension, dated July 10, 2019.

23    Drapeaux thus exercised legitimate managerial oversight over Plaintiff when

24   Drapeaux checked the whereabouts of the GOV, both during and after the discipline that

25   Plaintiff received. Plaintiff now characterizes that oversight as "stalking."

26    Plaintiff also alleged in his Petition that NPS management interfered with First Aid

27   classes he taught, when his supervisor limited his use of equipment for the classes and

28

1  when managers attended the classes as part of routine oversight of its employees' work

2  related activities, such as Plaintiff's.

3     **II.    Standard of review.**

4       A motion to dismiss under 12(b)(1), F.R.C.P., tests the subject matter jurisdiction

5  of the Court. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir.2003).

6  A Rule 12(b)(1) motion can either attack the sufficiency of the pleadings to establish

7  federal jurisdiction, or challenge the substance of the jurisdictional allegations despite the

8  formal sufficiency of the complaint. *Thornhill Publ'g Co., Inc. v. Gen'l Tel. & Elecs.*

9  *Corp.*, 594 F.2d 730, 733 (9th Cir.1979). "A court lacks subject matter jurisdiction over a

10  claim against the United States if it has not consented to be sued on that claim." *Consejo*

11  *de Desarrollo Economico de Mexicali, A.C. v. U.S.,* 482 F.3d 1157, 1173 (9th Cir.2007).

12  "Federal courts are courts of limited jurisdiction…It is to be presumed that a cause lies

13  outside this limited jurisdiction and the burden of establishing the contrary rests upon the

14  party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375,

15  377 (1994) (citations omitted).

16       Further, under Rule 12(b)(6), a district court must dismiss the complaint if it fails to

17  state a claim upon which relief can be granted. A court should grant dismissal pursuant to

18  Rule 12(b)(6) where there is either a "lack of cognizable legal theory" or "the absence of

19  sufficient facts under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

20  F.2d 696, 699 (9th Cir.1990).  That standard "requires more than labels and conclusions,

21  and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*

22  *v. Twombly,* 550 U.S. 544, 555 (2007).  Further, Rule 8 "requires a 'showing,' rather than

23  a blanket assertion, of entitlement to relief. Without some factual allegation in the

24  complaint, it is hard to see how a claimant could satisfy the requirement of providing not

25  only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

26  *Id*. at 556, n. 3.  Further, a complaint does not suffice if it tenders "naked assertion[s]"

27  devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

28  *quoting Twombly*, 550 U.S. at 557.

**III.    Plaintiff's claim of work-related harassment should be dismissed.**

Plaintiff appears to seek relief for a claim of hostile work environment.  He alleges that he has suffered workplace harassment by Defendant Drapeaux by alleging that Drapeaux came into his neighborhood and was stalking him.    Plaintiff alleges this harassment is related to his pending EEOC claims.  Dkt 1 at 8.  However, to establish a *prima facie* claim of hostile work environment, a plaintiff must show that (1) he was subjected to verbal or physical conduct of a racial, national origin, sexual, disability, or age-based nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir.2004); *see also Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995). A hostile work environment exists only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (quotations and citations omitted). The courts consistently apply this demanding hostile work environment standard "to ensure that Title VII does not become a general civility code," and to "filter out complaints attacking the ordinary tribulations of the workplace." *Forager v. City of Boca Raton*, 524 U.S. 775, 788 (1998). *See also* https://www.eeoc.gov/eeoc/index.cfm (EEOC only enforces federal laws that make it illegal to discriminate against an employee because of the person's race, color, religion, sex, national origin, age, disability, genetic information, prior participation in an employment discrimination investigation or lawsuit, or prior complaint of discrimination).

Plaintiff's complaints about what occurred at work after he was disciplined and suspended do not rise to the level of a hostile work environment as a matter of law.

1    Plaintiff's claims merely involve Drapeaux's legitimate oversight in checking on Plaintiff's

2    use of the GOV.  Plaintiff had misused the vehicle and received discipline for the misuse,

3    and Drapeaux was following up to ensure that Plaintiff was not violating the terms of his

4    discipline.

5          Though he attempts to relate this to his EEOC claims, Plaintiff's harassment claims

6    appear to have no legitimate relationship to discrimination.  His request for a restraining

7    order does not allege that any of defendant's actions were based on any protected trait.  His

8    vague allegations are thus insufficient to state an actionable hostile work environment

9    claim.  *Kortan v. California Youth Authority*, 217 F.3d 1104, 1107, 1111 (9th Cir.2000);

10   *Vasquez*, 349 F.3d at 642 (finding no race-based hostile work environment where plaintiff

11   alleged supervisory coworker told plaintiff two racial comments, yelled at plaintiff, made

12   negative remarks about him to others, and made false complaints about plaintiff); *Capristo*

13   *v. Brennan*, No. C-15-1071 EMC, 2015 WL 4396268, at *5 (N.D. Cal. July 17, 2015)

14   (dismissing a hostile work environment claim in which the alleged misconduct was one

15   incident of yelling by a supervisor and plaintiff made no allegations that the verbal

16   harassment was based on plaintiff's race or national origin).

17         Rather, Plaintiff improperly seeks injunctive relief for allegedly irritating or

18   harassing acts such as Drapeaux coming near his home while he was suspended.  Even if

19   Plaintiff could properly allege a Title VII violation involving a hostile work environment

20   tantamount to discrimination, no applicable waiver of sovereign immunity permits him to

21   obtain a restraining order against his supervisor for alleged employment discrimination

22   through state court civil procedural rules as Plaintiff has attempted with his filing for

23   injunctive relief.  *See Lau v. Wong,* 2013 WL 2181655 at *1, *6 (plaintiff's FTCA and

24   Title VII claims were barred, dismissing the plaintiff's request for a restraining order

25   against her supervisor based on allegations that supervisor ordered her into his office for

26   unclear reasons, berated her, acted in a belligerent and abusive manner, followed her

27   around the office, and threw a "reprimand letter" in the direction of her "vaginal area").

28

- 6 -

1  Plaintiff's claims are thus precluded by Title VII, and should be dismissed for lack of

2  subject matter jurisdiction.

3       Title VII is the exclusive judicial remedy for claims of race, national origin, religion,

4  or sex discrimination in federal employment and expressly limits a plaintiff's remedies to

5  those enumerated in the statute. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976);

6  42 U.S.C. § 2000e-16, 42 U.S.C. § 2000e-5(f)-(k); *Boyd v. USPS*, 752 F.2d 410, 413-14

7  (9th Cir.1985); 42 U.S.C. § 2000e-16, 42 U.S.C. § 2000e-5(f)-(k). Where a federal

8  employee asserts a claim under Title VII, that statute is exclusive of any other remedy

9  against both the federal government and the individual Federal employee alleged to have

10  participated in the discrimination. *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916-17 (9th

11  Cir.1981). Accordingly, Plaintiff's action should be dismissed.

12  A.    *Plaintiff's employment discrimination claim is also subject to dismissal for
13         failure to exhaust administrative remedies.*

14       Even if Plaintiff's allegations were legally viable as a Title VII claim, his

15  harassment action must be dismissed because Title VII requires that the federal employee

16  either exhaust her administrative remedies, or provide notice to the EEOC, as a statutory

17  precondition to filing suit. Where a plaintiff has not substantially complied with

18  administrative exhaustion requirements, the federal district court does not have subject

19  matter jurisdiction to hear a Title VII claim. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th

20  Cir.2003); *see also Brown, supra*, 425 U.S. at 832-33 (Title VII); *Lyons v. England*, 307

21  F.3d 1092, 1103 (9th Cir.2002). In this matter, Plaintiff both alleged that he has a

22  contemporaneous and related EEOC claim against Drapeaux, and also brought a potential

23  precursor action to this claim. *See* n.1, *supra*.

24       A federal employee seeking to pursue an individual complaint of discrimination

25  under Title VII must initiate contact with an EEO counselor within 45 days of the allegedly

26  discriminatory matter. 29 C.F.R. § 1614.105(a). If the matter is not resolved through

27  counseling, the EEO counselor must inform the complainant of the right to file a formal

28  complaint. 29 C.F.R. §§ 1614.105(b)(1), (c), (d), 1614.106(b). Once a formal EEO

- 7

complaint has been filed, the Agency has 180 days from the filing date to investigate the issues raised in the complaint. Only after 180 days have lapsed or the Agency has issued a final agency decision, whichever is earlier, may the employee pursue a claim in federal district court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.107(b). Given that he has failed to follow this enumerated process, Plaintiff thus cannot obtain a restraining order against his supervisor for alleged employment discrimination through state civil procedural rules.[3]

Since Plaintiff has failed to exhaust these administrative remedies, the Court has no subject matter jurisdiction.

## IV.   Plaintiff's tort claim should be dismissed for lack of subject matter jurisdiction.

To the extent Plaintiff's request for a restraining order arises from alleged tortious conduct, Drapeaux enjoys absolute immunity from suit for common law torts committed within the scope of his Federal employment and should be dismissed. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). A waiver of sovereign immunity must be "unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Under the FTCA, the United States has waived its immunity from suit for certain torts and in expressly prescribed circumstances. 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA provides a cause of action against the federal government for "persons injured by the tortious activity of an employee of the United States where the employee was 'acting within the scope of his

---

[3] Finally, under Title VII, the only proper defendant to any claims brought by a Federal employee is the head of the agency or department. 42 U.S.C. § 2000e-16(c). *See e.g. Johnston v. Home*, 875 F.2d 1415, 1419-20 (9th Cir.1989); *White, supra*, 652 F.2d at 916, n.4 (Title VII); The Ninth Circuit has "consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees." *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1179 (9th Cir.2003); *Hodge v. Dalton,* 107 F.3d 705, 707 (9th Cir.1997) ("The doctrine of sovereign immunity applies to federal agencies and federal officials acting within their official capacities."). Thus the only proper defendant in the Title VII claim would be the Secretary of the Interior, David Bernhardt. Defendant Drapeaux should be dismissed.

1    office or employment…'" *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) (quoting

2    28 U.S.C.§ 1346(b)).

3         The FTCA provides a limited waiver of sovereign immunity. 28 U.S.C § 2675(a).

4    A district court has no subject matter jurisdiction over an FTCA claim unless the plaintiff

5    has first presented a claim to the appropriate agency, and either (1) the claim was "finally

6    denied" in writing, or (2) six months have passed since the claim was submitted. 28 U.S.C.

7    § 2675(a). The claim requirement is jurisdictional in nature and cannot be waived. *McNeil*

8    *v. U.S.,* 508 U.S. 106, 11-12 (1993); *Burns v. U.S.*, 764 F.2d 722, 723 (9th Cir.1985). The

9    plaintiff in an action seeking relief under the FTCA has the burden of pleading and proving

10   that she complied with the FTCA's administrative claim presentment requirement. *See*

11   *Bruce v. U.S.,* 621 F.2d 914, 918 (8th Cir.1980). Because plaintiff cannot show that he

12   exhausted administrative remedies for his potential tort claim, the Court lacks subject

13   matter jurisdiction.

14        Further, the Federal Employees Liability Reform and Tort Compensation Act of

15   1988 provides that the FTCA is the exclusive remedy for tortious acts and omissions

16   committed by Federal employees acting within the scope of their employment, and

17   precludes other civil actions that arise out of such acts or omissions. *See* 28 U.S.C. §

18   2679(b)(1).

19                              **Conclusion**

20        As discussed above, no applicable waiver of sovereign immunity permits a

21   restraining order against Plaintiff's supervisor.  As the court stated in *Andrejko. v. Sanders*,

22   638 F.Supp. 449, 452 (M.D.1986):

23        Clearly there is a federal interest here.  One can easily imagine the disruption that
          might occur in federal work places if federal employees were allowed to lodge and
24        maintain state tort claims against any superior with whom they had an axe to grind.
          The resultant wave of litigation might well impair the ability of the various federal
25        agencies to function efficiently.

26   *See also Lau, supra*, at *6 ("to allow [plaintiff's] claims to proceed now would be to allow

27   her to 'circumvent the EEOC's investigatory and conciliatory role, as well as deprive the

28

                                    - 9 -

1   charged party of notice of the charge.")  Plaintiff should not be allowed to violate this

2   public policy, or be allowed to avoid exhausting his claims, whether under Title VII or the

3   FTCA.

4         Accordingly, the entire action should be dismissed.

5         RESPECTFULLY SUBMITTED this 14th day of November 2019.

6                            MICHAEL BAILEY
7                            United States Attorney
                            District of Arizona

8                            *s/Laurence G. Tinsley, Jr.*
9                            Laurence G. Tinsley, Jr.
                            Assistant U.S. Attorney

- 10

1

2                      **CERTIFICATE OF SERVICE**

3

4          I hereby certify that on November 14, 2019, I electronically transmitted the attached

5   document to the Clerk's Office using the CM/ECF System for filing and served a copy, via

6   first-class mail, postage prepaid, of the document to the following recipient who is not a

7   CM/ECF registrant:

8
    Elston LeMans Stephenson
9   P.O. Box 129
    Grand Canyon, AZ 86023
10  *Plaintiff*

11  *s/Irene Millsaps*
    U.S. Attorney's Office

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      - 11

Elston L Stephenson
P.O. Box 129
Grand Canyon, AZ 86023
Case 3:19-cv-08268-DLR
November 27, 2019

U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this request for Extension/Postponement.

Thank You


Sincerely,

Elston L Stephenson



# REQUEST FOR EXTENSION

Your Honor, respectfully, I seek a 30-day Extension in this case in order to secure professional legal counsel.

Your Honor, this case meets elements (1)(A)(i)(ii) and (2)(A)(B) of 18USC §2261A and is ripe for a fair hearing before a Finder of Fact.

There is a *prima facie*. In the Motion-to-Dismiss and 'other instances' Defendant and others admit to at least (2)(B) "place under surveillance". Plaintiff is a (1)(A)(i)/(1)(A)(ii) "person and family [placed] in reasonable fear"...(1)(B) "caused [by]" Defendant's (2) "surveillance". Plaintiff asserts at least that Defendant's actions (1)(B) "caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to a person in clauses (i) and (ii) of subparagraph (A) *and* (2) "with [at least] the intent to harass, intimidate, *and* place under surveillance with intent to [at least] harass or intimidate another person *used* [at least] computer service or electronic communication service or electronic communication system...to engage in a course of conduct that [at least] (B) "causes , attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clauses (i) and (ii) of paragraph (1)(A).

This is a question and controversy for Finder of Fact.

The Court will also discover that there are compelling interests that this case should see its day in court.

While the decision before the Court at this stage is the Motion-to-Dismiss it is hoped that the Court considers the information below a measure of the merit to seeing this case through to verdict.

1

Evidence such as the key witness statement regarding not only the stalking incident but also the hostility and attacks on Plaintiff by Defendant and others in retaliation for Whistleblowing and reporting potentially deadly safety hazards demonstrates the risk of harm to Plaintiff by the Defendant.

This case—this Court is the only jurisdiction for immediately stopping the stalking and protect Plaintiff.

Whistleblower complaints sent directly to two Secretaries of Interior, two DOI Inspectors General, and two Directors of the National Park Service include 18+ years of uranium exposure of workers and the public at Grand Canyon National Park (GRCA), attempts to cover it up (secret pacts), other life-threatening health hazards, worker intimidation, specific instances of fraud, and peddling in false statements and falsified official documents by senior-most GRCA Park officials. This includes the most recent submitting of knowingly falsified official statements and creating and submitting knowingly falsified official documents to OSHA on June 19, 2019 in an attempt to fraudulently defeat OSHA citations issued in the uranium case.

The Court will notice that as a non-lawyer 'pro se' I am greatly out matched by facing off against not only the Department of Justice U.S. Attorney's Office, but the Department of the Interior Solicitor's Office as well. This is an overwhelmingly one-sided legal fight.

In the interest of justice and fairness, I respectfully ask that the Court postpones the Plaintiff response/opposition deadline to the U.S. Attorney's Office's Motion-to-Dismiss for 30 days so that I may secure professional legal counsel.


## POINT OF LAW/CONTROVERSY

Government's "*appears* to allege Title VII claims of a hostile work environment arising from "stalking" by [Defendant]" reflects a belated third-party entry and is contradicted by not only facts but DOI and NPS' immediate and contemporaneous actions upon notification of Defendant's stalking actions.

"*Appears*" is not a legal standard. The facts of DOI and NPS' immediate response are dispositive and not in dispute.

Plaintiff did not file and EEO action in this instance, DOI did not file an EEO response. Government's EEO inference is Government's alone, conflicts with evidence, conflicts with the response of other Divisions in the Attorney General's Office (Exhibit E-1), and is without a client.

Exhibit C demonstrates that in addition to the 18USC §2261A prima facie case, question, and controversy being ripe for Finder of Fact listed above; my July 25, 2019 notification to NPS and DOI Headquarters was entitled "URGENT : Need Help Getting Safe Space Away from [Defendant]". I mention safety concerns throughout (in writing and in person). I never mentioned race. Nor does the responding GRCA Superintendent. This is a stalking case.

Exhibit E-1 the Court will find is an Assistant U.S. Attorney detailing my outreach to U.S. Attorney's Office to report the 'secret pact' and the hiding of the uranium readings, the refusal to notify workers and the public (violation of 'Right to Know'). Clearly, the AUSA notes my complaint of retaliation for coming forward about the uranium and other safety issues—not Title VII.

While it is true that I have an ongoing EEOC case; these are separate and distinct. I would insist on stopping stalking and other harassing, retaliatory attacks regardless of the adjudication of the EEOC case.

2

Further, evidence will also show that Plaintiff and Defendant have met 1-on-1 only once for 30 minutes in the last 1 ½ years. Other than the reported stalking, witnesses will confirm that Defendant has only been seen once in at least 2 years on Plaintiff's residential street. Defendant has been removed as Plaintiff's supervisor as a result of this escalation in harassment on August 27, 2019. These have resulted in no impairment to Park function or its administration. Government's professed concerns otherwise in its Motion are unfounded.

What's more; Government's *Thornbill* assertion is predicated on Defendant acting in a legitimate government capacity. Plaintiff asserts that stalking is not a legitimate government capacity. Stalking under the 'color of authority' is not legitimate capacity. And Defendant may have perjured himself when he stated in the Motion that "he had been directed by his own supervisor". This is based on the Supervisor's own contemporaneously filing the 16E Complaint against Defendant upon notification of his stalking.

With professional counsel I will demonstrate to the Court that contrary to Government's assertion; this is a stalking case. Similar to *Saldana, Schaeffer*, and *Letterman*, Defendant's time and energy spent on planning, targeting me, and executing—over two years demonstrates what can only be describe as a dangerous fixation and obsession fitting a tragic pattern. This is precisely the type of case (similar to *Saldana, Schaeffer*, and *Letterman*) for which 2261A was written and whose only remedy begins with a Court ordered Injunction Against Harassment.

Likewise, U.S. Attorney's recent expression that 'It can't be a safety issue because time has passed and he hasn't done anything else, has he?' holds no merit as Defendant has been very publicly chastened and all eyes are on him. Like any violator he will repeat when he believes he has 'gotten away with it'.

Luckily, Defendant was caught by an NPS employee (witness) working in the area (Exhibit A). No one can assure the Court that this was the only time or whether Defendant (who has access to keys) entered Plaintiff's home, or whether he confined himself to only peering through windows in the day or the night. Indeed, Defendant lists coming to work in the dark of 5:30 am as a reason for suspending Plaintiff. Admitting that he was either watching, tracking, or surveilling Plaintiff in the forest at these dark morning hours.

Subpoenaing and deposing DOI and NPS witnesses (current and former) at all levels before this Court will firmly demonstrate the predicate, motivation, and pattern of attempts to harm Plaintiff culminating in Defendant stalking Plaintiff's home. Once caught Defendant—with no formal training as a detective or law enforcement claimed to be staking out Plaintiff's home approved by the Superintendent even though the Superintendent immediately filed a DOI/NPS 16E complaint and investigation once notified of the stalking. Again these can all be sussed out by subpoenaing and deposing DOI and NPS witnesses.

Subpoenaing and deposing is something that this non-lawyer, pro-se, Plaintiff does not know how to do.

In the end, Title VII is a years-long process which does not provide for the immediate safety for the stalked. This Court is the only venue to impose the immediate legally enforceable safety provided by Injunction/ restraining order.

The EEOC is inarguably not equipped to answer the 18USC §2261A question.

With respect to Extension/Postponement; it is abundantly clear that this non-lawyer, pro-se, Plaintiff is the *David* versus the DOJ U.S. Attorney's Office plus DOI Solicitor's Office *Goliath*. The Courts are "The Great Levelers".

## PERJURY BEFORE THIS COURT

Your Honor, having professional legal counsel will help me best demonstrate Defendant is guilty of multiple instances of perjury before this Court.

The Court will find that the U.S. Attorney has unwittingly filed a Motion which is founded upon materially knowingly falsified statements by Defendant which may well constitute perjury. Upon discovery, Plaintiff duly notified the U.S. Attorney's Office on November 19, 2019.

Plaintiff warned the U.S. Attorney of Defendant's long, demonstrated fragile, fluid, and transactional relationship with the truth in advance.

Perjury alone should be call into question the entire Motion and should be reason to 'Deny'.

If Defendant had a case, he would not have attempted to defraud the Court by repeatedly lying.

Exhibit F will demonstrate to the Court a few easily provable instances where Defendant submitted materially knowingly falsified statements to the Court in order to defraud the Court.

Plaintiff respectfully asks that the Court rigorously examine Government's (Defendant's) claims. Principally Defendant states that he was stalking Plaintiff's home (Plaintiff was not home) to see if Plaintiff was using his government vehicle on his off hours. In Defendant's recently contrived IG complaint he complained that Plaintiff misused his government vehicle by taking it home. If this were true why didn't Defendant (a GRCA Superintendent) simply order that the vehicle be not kept at the home? Exhibit M shows that when Plaintiff—brand new to the NPS and viewing several government vehicles in his neighborhood made the assumption based on the 'at all hours' response nature of his job; it made sense to bring his vehicle home. And when Plaintiff (brand new to NPS) asked Superintendent 2 (28 years in NPS) for a memo clearing Plaintiff to take vehicle home, Superintendent 2 did not know what the rules were. It took the 28-year Superintendent nearly 2 weeks to research and find the answer.

Defendant knew—everyone knew that Plaintiff brought his vehicle home—from the very moment he took possession of the vehicle more than 2 years earlier. If Defendant was truly concerned about these rules, he would have counseled Plaintiff, and documented it. Respectfully, Court should insist on that documentation. It does not exist because Defendant was 'saving it up' to use later.

Defendant testifies (in Motion) that he stopped at a coffee shop 1 hour away from Grand Canyon and confronted Plaintiff about the vehicle. The Court will find that there is nothing but mountains 1 hour outside Grand Canyon. Respectfully, Court should insist on the name of the coffee shop and the date along with the documentation.

Defendant testifies (in Motion) that Plaintiff set his own hours and was difficult to find. If true, this sounds like a classic the verbal, written, disciplinary action case. Court should insist on the documentation.

Defendant testifies that he was stalking Plaintiff's home with Superintendent's approval. Court may examine Superintendent's actions—immediately filing a 16E upon notification of Defendant's stalking. He would not have done this if he had approved of Defendant's stalking at Plaintiff's home. Court may insist on documentation. Superintendent 2 should be subpoenaed, diposed, and examined as a witness.

4

Defendant did not correct/address the vehicle situation after more than 2 years because he was 'saving it up' for the IG complaint. The other instances did not happen or Defendant would have documentation. These are knowingly falsified testimony. Perjury.

Defendant was stalking Plaintiff's home because he meant harm (digging up dirt, spying on, perhaps entering the home) to Plaintiff.

Again, these are just a few instances in the very brief Motion packed with so much knowingly falsified testimony that the Motion should be thrown out.


## PERJURY-FRAUD HABIT/PERJURY-FRAUD CULTURE

Plaintiff (a retired senior military officer) arrived to NPS to find and resist a relentless culture of falsifying statements, documents, and fraud. This included pressure by Defendant to knowingly process fraudulent tort claims. (Exhibit N). Defendant even lied about the death of a Park visitor (Exhibit K).

Exhibits C, D, D-2, F, G,H, I, J, K, and N will demonstrate that peddling in falsified statements and creating knowingly falsified documents—fraud is a pattern and near-ethos of Defendant, and a GRCA, IMR, NPS/DOI culture where Superintendents are given deferential, impunity and whose actions are unquestioned.

Exhibit C demonstrates that the once the GRCA Superintendent and NPS Intermountain Region Headquarters realized that a thorough 16E investigation would have cataloged evidence and extent of Defendant's stalking; no witnesses were interviewed a more than a month later. No attempts were made to follow-up even though Plaintiff 'pushed' documents and evidence their way. The GRCA Superintendent and IMR essentially 'faked' the 16E in order to avoid documenting Defendant's guilt. DOI/NPS' failures and fraud necessitated going to court and filing for an Injunction Against Harassment.

Exhibit K documents falsified statements and documents to the DOI Chief Medical Officer regarding poorly maintained and discontinued AEDs. The DOI Chief Medical Officer was so concerned by the danger to health and liability of visitors and workers that she recommended pulling all public AEDs from the walls of Grand Canyon National Park. The fraud was intended to change her mind.

Exhibit J demonstrates how the same GRCA Superintendent submitted falsified official statements and even went through the effort of creating falsified worksheets to fool—defraud OSHA into believing it had accomplished training in order to fraudulently defeat an OSHA citation on June 19, 2019. Because the documents were sent via mail or email, it invokes felony mail and wire fraud. If there are others; conspiracy.

Respectfully, the Court may order U.S. Attorney to pursue this latest, warm Agency to Agency felony fraud.

A check of the Exhibits will show that Plaintiff reported all instances of fraud directly to the Secretary(s) of the Interior and DOI Inspectors General.

The integrity of the Court may demand some sanction such as summarily denying the Motion-to-Dismiss as the Motion is rife with deliberately falsified statements by Defendant. This should offend the Court.

## RETALIATION/INTIMIDATION

Evidence—DOI IG's Report 18-1188 (Exhibits G and H) will show that Defendant began targeting Plaintiff from the moment he became Plaintiff's supervisor in September 2017.

Evidence will also show that workers were intimidated in to silence regarding the uranium.

In Exhibit D-1 Plaintiff clearly expresses his fear of retaliation to the Secretary of the Interior and invokes that this was a Whistleblower Law complaint with all its protections.

Evidence will also show that rather than legitimately and contemporaneously addressing issues such as taking the work vehicle home (something Plaintiff noted others doing upon his arrival at GRCA and began doing 2 years ago) Defendant 'saved them up' to be used as fodder for bogus IG complaints. This fits the *modus operandi* he used against the previous GRCA Superintendent 1—often recruiting others to participate as 'witnesses'. As a demonstration of the lengths Defendant would go through; Plaintiff has been targeted in this way 4 or 5 times since reporting the uranium and other potentially deadly hazards. Defendant is suspected of recruiting witnesses just as he did in his contrived IG complaint (DOI IG 18-1188) against the former GRCA Superintendent and several times before that (Exhibit L). Evidence will show that I spoke with her attorney after reading about the reasons (Defendant targeting her with bogus IG complaints) in an *Outside Magazine Online* article (Reference 3). I was forewarned that Defendant would do the same with me. *Modus operandi*.

Evidence (Exhibit B) lists 'prior acts' which include Defendant inspiring others to stalk Plaintiff and others such that they caused an American Heart Association contract First Aid CPR instructor to be so fearful for her safety that she brought along a former U.S. Army Ranger, a gun, and a Taser to protect herself as she provided Grand Canyon life-saving training.  All of this is in an environment where Plaintiff's office building was recently placed under lock-down because of workplace violence, and a discharge of a firearm at GRCA's Flagstaff office.

Evidence will show that Defendant intensified his actions of stalking, reconnaissance, and tracking only intensified when Plaintiff notified him that he was going to Phoenix to meet with OSHA and the U.S. Attorney's Office to report the lawbreaking. Along with attempting to force Plaintiff to reveal 'Protected Communications'. Workers were intimidated into silence with OSHA and other Agencies. (Exhibit O)


## WEAPONIZING IG and OTHER INVESTIGATIONS

The Court will find Exhibit G and H instructive as the DOI Inspector General herself documented Defendant's *modus operandi* of outright lying, weaponizing IG (and other) investigations when the heat was on, then say 'aw my mistake' when he is finally caught. Exhibit H demonstrates Defendant's falsified sworn statement to EEO investigators about the same subject. Exhibit G-2 shows how Plaintiff kept his head down and worked so missed the Report's release. Plaintiff did not read the report until July 4, 2019. A contemporaneous text to a colleague traces this.

In Exhibit G-1 Defendant admits to filing multiple IG complaints against the former GRCA Superintendent.

When Plaintiff was informed of Defendant's stalking, he went door-to-door to neighbors to ask them to be on the lookout as he would be away for extended time. The neighbor across the street (a maintenance worker) informed Plaintiff that Defendant out of nowhere contacted him and repeatedly attempted to get him to provide negative information about the Superintendent regarding a housing project which was the subject of one of Defendant's IG complaints against the Superintendent in DOI IG Complaint 18-1188. This active recruiting of witnesses and pressing for information to help his cause is another *modus operandi* that Defendant would repeat.

In the vehicle IG complaint and investigation investigators presented the names of 'witnesses' for events that had allegedly taken place nearly 2 years earlier. The witnesses named had long since either moved or were working at other parks. It was clear that they did not spontaneously call the IG 2 years later.  Examination will likely determine that Defendant dropped their names in order to make his 'complaint' seem more legitimate.

It is highly unusual and suspicious for a supervisor—let alone a Deputy Superintendent to file an IG complaint against their subordinate rather than take supervisor or Superintendent action.

Evidence will show that Plaintiff contacted targeted Superintendent's lawyer after reading the *Outside Magazine Online* article (Reference 3) to discuss Defendant's *modus operandi* and was convinced that the same was happening to him. Plaintiff re-examined the instances that he was hauled before IG investigators and the pattern was proved.

Examination of the 4 or 5 other complaints/investigation will likely find that Defendant either recruited others or provided the list of 'witnesses' to the IG, or recruited them to file IG complaints.

In the 'uranium investigation', Plaintiff was the only witness voice recorded by the DOI/NPS investigation team. The team seemed tasked with finding negative information about Plaintiff. This was a conspicuous part of their 'Report'. This so-called scientific report appeared designed more to repudiate Plaintiff than provide scientifically sound information.  Examination will likely find that Defendant provided them the witness list for the targeting phase of this 'investigation'.

Exhibit G-3 shows the current 'investigation' targeting Plaintiff apparently manipulated by Defendant.

These multiple instances of *weaponizing* the Inspector General complaint and investigation process went undetected by the Department of the Interior Inspector General. Defendant's manipulation and *weaponization* of the IG complaint system was the primary reason cited by the former Grand Canyon National Park Superintendent 1 in the *Outside Magazine* article (Reference 3).

While Plaintiff was investigated by the IG for parking in a fire zone, no IG investigation or report has been issued regarding the uranium incident. This alone is worthy of Congressional Hearings.

These are among the reasons that Plaintiff seeks an Injunction Against Harassment against Defendant.


## WHISTLEBLOWING

Each time that Plaintiff discovered potential loss of life situations he immediately brought them to the GRCA Superintendent. When the Superintendent failed or refused to take action Plaintiff alerted the Secretary of the Interior and DOI Inspector General directly. These were all Whistleblower Complaints.

The uranium (Exhibit D, D-1) and the falsified AEDs (Exhibit K) documents were the most notable.

In Exhibit D-1 Plaintiff—clearly worried about retaliation explicitly wrote his concerns and clearly and explicitly insisted to the Secretary of the Interior that he was invoking Whistleblower Complaint protections.

Yet Plaintiff was never contacted by the IG for follow-up about the 'secret pact', refusal to notify workers in violation of the Right-to-Know Law, attempts to hide the uranium readings, or the doctored report by IMR Regional Headquarters.

No statement addressing the dangerously high radiation in the IMR report and the dangers those levels posed is ever mentioned in the 'Report'.

No answer was ever given to the falsified AED inspection reports even though the DOI Chief Medical officer was so alarmed that had recommended the dangerous program be ripped off the walls and boxed up (Exhibit K). This appears nowhere in the 'Report'. Plaintiff documented 13 dead AEDs. Report mentions only five.

Plaintiff was concerned that the 'Report' issued by DOI/NPS in the wake of the uranium episode was a PR document timed (delayed) to run out the statute of limitations for civil litigation rather than a scientifically rigorous review to assure the safety and health of exposed GRCA workers and public.

Allowing Plaintiff to retain professional legal counsel will allow Plaintiff to demonstrate that retaliation for Plaintiff's thoroughness and persistence is the reason Plaintiff has been 'investigated' so many times since first reporting the uranium and AEDs. It is the reason Defendant was stalking Plaintiff's home.

Along with the manipulation and weaponization of the IG complaint system, this campaign of Whistleblower retaliation is also ripe for Congressional Hearings.

Respectfully, however, the matter most important to Plaintiff is his and his family's safety and stopping the stalking—the matter before this Court.


## CLOSE

Your Honor, it is my hope that the Court will see that as a former U.S. Army field-grade officer, attack helicopter pilot, and leader; matters of integrity and duty are almost second nature. But I am ill-equipped to self-represent against a team of U.S. Attorney's Office and DOI Solicitor's Office lawyers and their staffs.

With proper counsel I will be able, for instance, to professionally make the case that Defendant's perjury should result in summary Denial of the Motion-to-Dismiss as well as result in sanctions and diminished credibility in all matters before this or any other Court.

Most importantly, subpoenaing and deposing DOI and NPS witnesses is both vital to justice and beyond my non-lawyer, pro-se ability.

This case has compelling interests with widespread implications such as the rights of workers in co-located work/living arrangements (such as National Parks), and the division between legitimate duties of employees and illegitimate law breaking (18USC §2261A) under the color of 'legitimate duties'.

It is hoped that the material above has demonstrated to the Court that Defendant has targeted Plaintiff from the very first instance that Defendant was designated Plaintiff's supervisor. And that Plaintiff repeatedly resisted Defendant's attempts to implicate and draw him in to Defendant's frauds. Most importantly, Defendant has expended an extraordinary amount of time and energy plotting, collaborating, and executing

plots to harm me as I went about doing my job of finding, reporting, and fixing potentially life threatening dangers in the Park. But a bold line of danger was crossed when Defendant took his desire to harm me to my home.

This sense of impunity to harm me is only matched by the impunity with which Defendant felt when he peddled materially knowingly falsified evidence (testimony) to the U.S. Attorney and to this Court.

It is my hope that the Court agrees that although this question before the Court is the narrow Injunction Against Harassment, this case is to be followed by litigation of the other issues such as fraud. The uranium 'secret pact', the violations of 'Right to Know' were fraud, faking the 16E, the falsified OSHA submissions were fraud—all of them likely felony fraud/conspiracy. I would not go along. This is why Defendant was stalking me. He was up to no good. He meant me harm. Once I obtain counsel, examination will prove these assertions. Respectfully, the most pressing concern is our safety—the matter before this court at this time, your Honor.

Changes to my life such as closing the blinds to my windows when I'm in a room, turning out the lights before entering a room so as to not silhouetting myself, varying my driving route, my young daughter never coming here are all a result of Defendant's stalking and harassing.

DOI/NPS' most recent (November 21, 2019) attempts to dictate and impose what it thinks my case preparation rations should be (Exhibit P), remoteness of Grand Canyon National Park requiring 1 ½ hours drive to the nearest reliable Post Office, and GRCA P.O. Box mail sorting (taking 12 days to receive court documents) compared to near co-location of Government to the Court its e-filing privileges all also beg for professional legal representation in the name of leveling the playing field and basic fairness.

A 30-day Extension/Postponement will allow an opportunity to adequately present the Finder of Fact the facts in a manner consistent with justice based on the law and fairness.

Thank You, Your Honor.


Respectfully Submitted,

*Elston Lucus Stephen*

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

9

# REFERENCES

1. Cornell Law Library (2019). Legal Information Institute. 18 U.S. Code §2261A. *Stalking*. Retrieved from https://www.law.cornell.edu/uscode/text/18/2261A

2. *Thornbill Pub. v. General Telephone Electrical*, 594 F.2d 730 (9th Cir. 1979). Retrieved from https://casetext.com/case/thornhill-pub-v-general-telephone-elec

3. McGivney, A. (2019). Outside Magazine. *Grand canyon superintendent announces resignation*. Retrieved from https://www.outsideonline.com/2391433/grand-canyon-superintendent-christine-lehnertz-oig-report

# EXHIBIT LIST

Exhibit A – Stalking Witness Audio Recording (MP4 audio file thumb drive)
Exhibit B – PowerPoint Briefer, Injunction Against Harassment
Exhibit C – DOI/NPS 16E Filing and Correspondence
Exhibit D – Original Uranium Whistleblower Letter (Secretary Zinke, Bernhardt, IG Kendall)
Exhibit D-1 Follow-Up Whistleblower Letter (Secretary Zinke, Bernhardt, IG Kendall)
Exhibit D-2 Doctored Uranium Report
Exhibit D-3 Un-Doctored Uranium Report
Exhibit E – U.S. Attorney Referral of Emails to 'Criminal Division'
Exhibit E-1 U.S. Attorney Documentation of Investigation
Exhibit F – Notification of Defendant Perjury to U.S. Attorney
Exhibit G – DOI IG Report 18-1188
Exhibit G-1 Defendant Admitting to Multiple IG Complaints v. Superintendent
Exhibit G-2 Text of Plaintiff First Reading of IG Complaint 18-1188 and Realizing He is "Senior Official's
          Subordinate"
Exhibit G-3 HR Request for 'Interview' and Reaction to 'Witness' List Disclosure
Exhibit H – DOI IG Report 18-1188 Excerpt Defendant False Statements to EEO Investigator
Exhibit I – EEO Agreement Violation Decision Defendant False Statements, Falsified Documents
Exhibit J – GRCA Falsified OSHA Citation Response
Exhibit K – Falsified Statement GRCA to DOI AEDs
Exhibit L – Defendant Admitting to Weaponizing Multiple IG Complaints Against GRCA Superintendent
Exhibit M – Request to Superintendent for GOV to Home Use
Exhibit N – Fraudulent Tort Claim
Exhibit O – Defendant Forcing Plaintiff to Reveal Protected Communications/Intimidating Workers into
          Silence
Exhibit P – DOI/NPS Dictating Plaintiff's Preparation