# EXHIBIT K



Stephenson, Elston <elston_stephenson@nps.gov>

---

## AED re-check from Friday

**Vandzura, Matt** <matt_vandzura@nps.gov>                    Mon, Mar 25, 2019 at 10:33 AM
To: Lisa Carrico <lisa_carrico@nps.gov>, Brian Drapeaux <brian_drapeaux@nps.gov>, Michael May <michael_may@nps.gov>, "Sawyer, Kate" <kate_sawyer@ios.doi.gov>, Aaron Roth <aaron_roth@nps.gov>, Andrew Hower <andrew_hower@nps.gov>, "Stephenson, Elston" <elston_stephenson@nps.gov>

Howdy,

Attached is the re-check of AEDs from Friday.

The North Rim is closed, no Rangers on duty so we weren't able to re-check those units.  That will be accomplished prior to opening 5/2019.

Matt


Matthew D. Vandzura
Chief Ranger
Grand Canyon National Park
928 638 7800 office
928 522 3073 cell


Promise me you will not spend so much time treading water and trying to keep your head above the waves that you forget, truly forget, how much you have always loved to swim.  Tyler Knott Gregson



📄 **AED Inventory_as_of_3.22.29.xlsx**
21K



Stephenson, Elston <elston_stephenson@nps.gov>

## AED re-check from Friday

**Stephenson, Elston** <elston_stephenson@nps.gov>                    Thu, Apr 11, 2019 at 5:55 AM
To: Kate Sawyer <kate_sawyer@ios.doi.gov>, Michael May <michael_may@nps.gov>
Cc: David Bernhardt <dwbernhardt@ios.doi.gov>, Mary Kendall <mary_kendall@doioig.gov>

Dr. Sawyer, Michael,

Good Morning.

Please receive this follow-up to my "Afterthoughts" email sent this morning.

Thank You again for taking this on.

Please know that I think that You and your investigation are being duped, played, defrauded with deliberately false statements, and even fraudulent documents meant to buttress this sham.

As I alluded to the earlier email, I had to check back with OSC.

The reason that I had to check back with OSC is, unfortunately, unpleasant and nefarious---perhaps even criminal conduct.

It occurred to me that I was using a 'guesstimate' when describing the distance that the Desertview Ranger had to run to get the AED at the Tower the day the man died. And that I was using 'guesstimates' from the Rangers that I spoke with to figure out how much time it took---guesstimates likely clouded and distorted by panic, fear, not really paying attention explicitly to the runner, etc.

So the days after our teleconference---Saturday and Sunday I decided to go measure the distance and run it a couple of times---even carrying an AED.

Of course, as a Safety Officer, I wouldn't be worth my business cards if I would not have checked the AED at the Tower while I was there.

The AED in that inventory "Attached is the re-check of AEDs from Friday." that Matt provided the Teleconference participants clearly states that the Tower AED is a LifePak CR Plus, serial number 46276433.

Clearly the one in my Saturday March 23, 2019 pic is a LifePak 500. The other pics, one of our Rangers swearing in a pair of Junior Rangers was around that time and verifies the location. I soon after ran the distance to the top of the venue (measuring wheel in hand) and a visitor snapped the pic attached.

Sunday March 24, 2019, my intent was to run the route a few times again. But I was so impressed that they had a pouch with gloves, shavers, and even a mouth-to-mouth prophylactic that I pulled it outside to take a pic as an example to be copied by.

It wasn't until Sunday night that I took a look at Matt's inventory and realized that he had falsified (at least) that Deserview Tower AED entry on the inventory.

Also questionable; if You will recall in my "Afterthought" email, the Rangers in the Desertview office had cannibalized an AED from a nearby campground closed for the winter and put it in their office. I did not check, but I do not believe that they had been provided (and the campground replaced) with a permanent AED. Those entries in the spreadsheet are questionable.

Matt went on a month's long vacation immediately after that weekend (pic). So he had no intention of correcting it for at least a month; if ever.

When I realized that we still had a 500 at the very place that the man had died with a LifePak 500 AED involved, I contacted Matt's Deputy Chief (pic) had lunch with her and got her to replace the 500 with a CR Plus (pic).

Doctor, Mike; Matt knows the difference (particularly in this very contentious discussion) between a LifePak 500 and a LifePak CR Plus. I believe that Matt deliberately falsified that spreadsheet to trick You and the other on the email into believing that our program was 'healthier' than it was.

Clearly when he angrily shouted into the phone (at Dr. Sawyer) that "It was only at most 2 or 3 max AEDs that were found with problems!", this was also wrong. He knew it. I had put out at various times and contemporaneously updated PSET; 8, 9, 10 AEDs reported bad....I even documented it in update PowerPoints to PSET. I'm sorry that I deleted the pics of 3 other AEDs, but it was 13 bad AEDs in less than a year.

Worse; both Brian and Lisa (on the call) also knew that Matt was knowingly spewing out gravely incorrect numbers and said nothing on the call.

Further, my 'antenna' tells me that You and the Team were probably lied to about the 'health' of our AED program--- probably told that we had some sort of working system to track and detect AEDs for maintenance and upcoming expirations; and likely told that we had removed all LifePak 500s. Both are/were demonstrably not true. If they told You this; they lied to You---to the investigation.

Michael, You mentioned that Brian swore that he knew nothing of the man's death. Please receive the text pics that I found during a FOIA search attached. Clearly Brian is engaged in a dialog where I clearly express my concerns about not only the man's death but the lack of trauma counseling for the Desertview Rangers in the aftermath. You don't 'misplace' a memory of someone notifying You about a fatality. He lied to You---to the investigation.

Lastly, I watched (during the teleconference) in shock as Brian and Lisa not only did not correct the angry "only 2 or 3 max" proclamations of Matt. But I was also shocked that they did not stop and address his open hostility and bullying tactic with You. Particularly because I had just called it out at the PSET meeting days earlier (Tuesday), and very pointedly called out Brian and Lisa for not stopping it. It is a regular feature in our PSET culture. You both saw it on display at the very first 'In-Brief' meeting as your team arrived here. Mike, You remarked to me about it.

During that Tuesday's (March 19, 2019) PSET meeting I notified the room of the expired AED that I found at Back Country. Matt defended it as being 'not a big deal' by describing how he had revived a man with an AED with expired batteries. He told the room that it was overblown.

Please be reminded that it was Matt who pronounced to PSET the philosophy that "If you need, an AED; you're already dead". And that no one in the entire PSET other than me challenged that.

Days later, Friday March 22, 2019 in an 'All Employee' email "Automatic External Defibrillators (AED)" he doubles down on this claims and de facto made this part GRCA's SOP by proclaiming that AEDs with 'Low Battery' indications are "...SAFE TO USE" and that " they still have enough battery capacity in reserve to function normally and safely for the duration of a cardiac arrest."

This is dangerously not true---particularly in the case of the LifePak 500s.

I knew this to be not true, but called the manufacturer as a matter of due diligence. He expressed that this was the craziest thing he had ever heard of. He emphatically urged me to correct this.

I will forward Matt's email, the PhysioControl (they've changed their name to Stryker), and you will find the pic of my outgoing call to PhysioControl attached..

No one on PSET said anything about "If you need an AED; you're already dead."

No one on PSET said anything about "I revived a guy with an AED with bad batteries; it's not a big deal."

I've waited; no one on PSET said anything about the email (although Jeanne mentioned it to me).

The reason is that PSET is bullied by Matt. You've both seen this tactic (resorting to hostility and bullying when he is losing the issue on merit) of resorting to hostility and bullying.

The AED program is just a symptom. Granted, it is a dangerous symptom with deadly consequences.

My data is true. There were 13 of 60 AEDs---22% found to be bad in less than a year at Grand Canyon National Park. That's terrifying.

And a combo of bad maintenance, and poor placement were undeniably present, and likely contributing to our inability to revive a stricken visitor who died on our watch.

Respectfully, as far as a serious root cause analysis; the failed state of maintenance of the GRCA AED program is directly caused by the Chief Ranger's demonstrated ignorance and cavalier attitude regarding AEDs. However, the true root cause is the hostility and bullying which captivates the PSET whose responsibility it is to develop GRCA Park policy. The root root cause is the lack of leadership demonstrated and exemplified by the Deputy Superintendents to confront and end the hostility and bullying tactic which is a undeniable fixture of this culture.

Respectfully, this dangerous, reckless, promiscuous flirtation with dead AEDs runs the direct risk of ending in a fatality and must be forcefully ended by DOI and NPS.

Doctor, Michael; I'm sorry, but I think that You are being played; lied to.  And because this is an OSC directed investigation; these would be material deliberate false statements, fraud, and even falsified, fraudulent documents intended to mislead You in how safe this program is, but to defeat the OSC investigation. Criminal conduct.

Moreover, and respectfully, this unethical culture and sense of impunity and being able to get away with it is to blame for not only the AED malaise, but the hiding of the uranium data from me and the workers that has brought GRCA front-and-center in the first place.

I hope that You have not been fooled by these efforts.

A man died in this AED business.  At the very least we owe him (and the workers still traumatized) a thorough, serious, investigation of unquestionable integrity.

I'm sorry that I did not say something in the moment during the teleconference about the hostility. We keep talking about this culturally at all levels of DOI and NPS. I just figured, that as the lowest ranking person on the call, that someone else would step up.  I'm sorry.

I've already briefed the OSC, and somewhat briefed Secretary Bernhardt and IG Kendall.

This is regrettable.

Please, this flirtation with dead or dying AEDs has to be slammed hard.

We owe these people---both the workers and the visitors the very best in safety.

Safety shouldn't be this hard.

Thank You.


Regrettably,

Elston

Elston "Swede" Stephenson, OHST
Safety Health & Wellness Manager
Grand Canyon National Park
928-255-8727



---------- Forwarded message ---------
From: **Vandzura, Matt** <matt_vandzura@nps.gov>
Date: Mon, Mar 25, 2019 at 10:33 AM
Subject: AED re-check from Friday
To: Lisa Carrico <lisa_carrico@nps.gov>, Brian Drapeaux <brian_drapeaux@nps.gov>, Michael May <michael_may@nps.gov>, Sawyer, Kate <kate_sawyer@ios.doi.gov>, Aaron Roth <aaron_roth@nps.gov>, Andrew Hower <andrew_hower@nps.gov>, Stephenson, Elston <elston_stephenson@nps.gov>

[Quoted text hidden]

**14 attachments**



**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 1.png**
749K





**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 2.png**
671K

**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 3.png**
976K



**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 4.png**
987K



**Stephenson GRCA AED Fraud Desertview 1.png**
975K



**Stephenson GRCA AED Fraud Desertview 2.png**
660K





**Stephenson GRCA AED Fraud Desertview 3.png**
915K



**Stephenson GRCA AED Fraud Desertview 4.png**
951K





**Stephenson GRCA AED Fraud Desertview 5.png**
559K



**Stephenson GRCA AED Fraud Desertview 6.png**
957K

**Stephenson GRCA AED Fraud Desertview 7.png**
922K

DEPARTMENT OF THE INTERIOR Mail - AED Received from Paige





**Stephenson GRCA AED Fraud Desertview 8.png**
912K



**Stephenson GRCA AED Fraud Desertview 9.png**
944K



**AED Inventory_as_of_3.22.29.xlsx**
21K

# EXHIBIT L

# UNITED STATES DEPARTMENT OF

# THE INTERIOR

# NATIONAL PARK SERVICE

# REPORT OF INVESTIGATION

**Investigation conducted by:**
**The Law Offices of Stuart L. Plotnick**
**Neil Jacobs - Investigator**
**51 Monroe Street, Suite 701**
**Rockville, Maryland 20850**
**301.251.1286  (phone)**
**301.762.8539 (fax)**

**COMPLAINANT'S NAME: Elston L. Stephenson**
**COMPLAINT NUMBER: NPS-18-0460**

This document is for **OFFICIAL USE ONLY**.  Neither it nor its contents are to be  distributed outside of your Agency, nor duplicated, without proper authorization.  You  should be advised that any unauthorized use of this document **might** subject you to  penalties provided by law.

more favorably than the Complainant under similar circumstances?

Rebuttal:
Once the Complainant has established a *prima facie* case of discrimination then management has the burden to articulate a legitimate non-discriminatory reason for its action.

Pretext:
Once management has articulated a legitimate non-discriminatory reason its action, then the burden shifts back to the claimant to establish that the agency's articulated reason is a pretext for unlawful discrimination.

Defense:
Whether the Agency official(s) responsible for the employment action at issue articulate a legitimate, non-discriminatory reason (s) for the action at issue.

Pretext:
Whether the articulated reason(s) is pretext for prohibited discrimination.

## III.   DESCRIPTION OF THE INVESTIGATION

Places of Investigation:            Grand Canyon, AZ
Dates of Investigation:             June 14, 2019
Date ROI Submitted:                 August 5, 2019
Investigative Method Used:          Telephone interviews

## IV.   BACKGROUND AND SUMMARY OF EVIDENCE

### Background

**Elston Stephenson** (African American) hereafter Complainant, is a Safety Health and Wellness Manager, grade GS-0018-13, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since June 26, 2017, the same period he has worked for the Agency. His first level supervisor is Brian Drapeaux, Deputy Superintendent. He has worked for Mr. Drapeaux since January 2018. Former Superintendent Christine Lehnertz is Complainant's second level supervisor. Complainant worked for Ms. Lehnertz until she left the Agency in 2019.[1]

**Brian Drapeaux** (American Indian) responsible management official, is Deputy Superintendent, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position

---

[1] Numerous efforts were made requesting that Complainant provide testimony including an interview, a completed and signed affidavit and a rebuttal. To date, no response has been received from Complainant. Additionally, former Superintendent Christine Lehnertz declined to provide testimony. See Exhibit G-9.

since June 2014. Mr. Drapeaux is familiar with Complainant as his first level supervisor. He is aware from visual observation that Complainant is an African American.

**Matthew Vandzura** (White) responsible management official, is Chief Ranger, grade GS-14, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since March 2016, and has worked for the Agency since 1989. Mr. Vandzura is familiar with Complainant as the Safety Officer at Grand Canyon National Park. He is aware that Complainant is African American from visual observation of him.

**Charles Erikson** (Caucasian) witness, is a Visitor Use Assistant; grade GS-5, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since April 2016 and has worked for the Agency since 2011. Mr. Erikson is aware that Complainant is African American from visual observation of him.

**David Kane** (Caucasian) witness, is Chief of Safety, Health and Wellness; grade GS-14, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since August, 2016, and has worked for the Agency since 2008. Mr. Kane is aware of Complainant being African American from visual observation of him.

<u>Summary</u>

**Whether the complainant was subjected to harassment and discriminated against on the basis of race (African American) when:**

1. **He was not given a performance appraisal during his entire tenure at GRCA (Grand Canyon National Park).**

<u>Management Testimony</u>

**Mr. Drapeaux** states that Complainant was not provided with a performance work plan prior to the period November 9, 2019 to December 19, 2019. According to Mr. Drapeaux, former Superintendent Lehnertz wanted to fire Complainant during his probationary period. He states that she utilized words in describing Complainant that led him to believe that she was basing her feelings toward him on his race rather than performance. Mr. Drapeaux states that he did not want to prepare a performance work plan for Complainant because he believed that Ms. Lehnertz would want material placed in it that could be used to justify his termination. He states that he himself had filed several complaints against Ms. Lehnertz. Mr. Drapeaux states that Ms. Lehnertz was subsequently suspended, and voluntarily resigned from her position last Spring.

Mr. Drapeaux states that Complainant has since requested a performance work plan and/or appraisal from him both in writing and verbally. He states that he has attempted to meet with Complainant on multiple occasions to design his performance

5

# EXHIBIT M



Stephenson, Elston <elston_stephenson@nps.gov>

## Elston: IG Follow-Up - Clearance to Take Gov Vehicle Home

**Stephenson, Elston** <elston_stephenson@nps.gov>          Fri, Aug 2, 2019 at 2:58 PM
To: Woody Smeck <woody_smeck@nps.gov>

Woody,

Good Afternoon.

Can You please clear me to take my GOV home at night pending a written memorandum?

Wednesday I was interviewed by the IG for 'misuse of a government vehicle' allegation.

One of the allegations was that I was taking home my vehicle without written authorization.

The understanding that I have operated under has been that due to the nature and responsibility of the Safety Manager, I must be poised to immediately respond to chemical/HAZMAT spills, fatalities, amputations, crashes, etc at all times.

The IG folks said that I had to have a memorandum and that I am in violation of 'policy' unless I have a memorandum.

I cannot find a memorandum template. No one in the building has ever done one.

Can You please voice-clear me to take home my vehicle until I find the memorandum and get it to You?


Thank You.

Sincerely,

Elston
928-255-8727



Stephenson, Elston <elston_stephenson@nps.gov>

## Elston: IG Follow-Up - Clearance to Take Gov Vehicle Home

**Smeck, Woody** <woody_smeck@nps.gov>                                                      Fri, Aug 2, 2019 at 3:58 PM
To: "Stephenson, Elston" <elston_stephenson@nps.gov>

Elston,

Let me review national policy on this subject.  I will respond shortly.


Woody Smeck
Acting Superintendent
Grand Canyon National Park
P.O. Box 129
Grand Canyon, AZ 86023
---
(928) 638-7945 office
(559) 788-9247 mobile


[Quoted text hidden]



Stephenson, Elston <elston_stephenson@nps.gov>

## Your request for Home-to-Work use of a government vehicle

**Woody Smeck** <woody_smeck@nps.gov>          Tue, Aug 13, 2019 at 7:00 AM
To: elston_stephenson@nps.gov

Hello Elston,

In the email below dated August 2, 2019 you requested authorization to take a government passenger carrier home in order to immediately response to safety incidents.

In reviewing authority and guidance provided under 31 USC §1344, 41 CFR §102, and RM44, the Secretary must authorize all home-to-work transportation involving government passenger carriers. RM44 states, "The Secretary of the Interior is the only official authorized to approve the use of Government motor vehicles between an employee's residence and place of employment." See https://www.nps.gov/policy/DOrders/RM44.pdf for more information.

The Secretary has approved a narrow group of positions for home-to-work vehicle use, but safety officer is not among the approved positions. Use of your government vehicle is for official government purposes only.

Please let me know if you'd like to discuss further.

---

**2 attachments**

 **noname.html**
6K

 **Updated Home-to-Work Authorization SIGNED 10302018.pdf**
118K

# EXHIBIT N



Stephenson, Elston <elston_stephenson@nps.gov>

## Fwd: Steidle Tort Claim

**Stephenson, Elston** <elston_stephenson@nps.gov>     Fri, May 31, 2019 at 6:00 AM
To: Brian Drapeaux <brian_drapeaux@nps.gov>, "Vandzura, Matt" <matt_vandzura@nps.gov>

Brian, Matt,

Good Morning.

I don't know what You mean by "taking so long".

I spent 5 hours researching and responded at length to this claim on May 22, 2019. In it I expressed:  How it was denied before I arrived at GRCA. How based on information from Nicole, he simply re-submitted the denied claim paperwork and attached 'estimates'. How I advised the claimant (and later, You) that he only had 'estimates' instead of actual receipts and that it would be better for his claim if he had actual receipts. How he responded that he refused to have the work done because "NPS has a good record of denying these claims with no continued course of action by the claimer and as a result I didn't want to spend thousands out of my pocket if I wasn't going to get reimburse". How I advised both You and Matt of the hazards of settling claims based on estimates and, how it is likely against any prudent policy. And how it would likely be again Denied.

That was everyone's opportunity to fix this package before resubmitting.

Brian concurred by stating "I'm sure by policy, that there must be an actual expenditure.  With out that, I would find it impossible for there to be a claim." in the May 22, 2019 email (pasted below).

That was the Superintendent's Office's 'non-endorsement.'

Any Fiduciary (to include the Solicitor's Office) would also 'non-endorse' this claim.

On Memorial Day weekend,  May 26, 2019 Matt located the complainant's contact information. He lives in Virginia.

Never mind that there was going to be no progress at all on his case over the Memorial Day weekend; that he now lives in Virginia creates problems that You and Matt should have spotted and addressed.

Filing a claim which suggests (based on the estimates attached) that he will be spending X amount of dollars renting a car in Flagstaff, and spending X amount of dollars for repairs done at a shop in Flagstaff, and spending X amount of dollars on mileage from Grand Canyon to Flagstaff---when he (and presumably his car) are in Virginia (where any future work would likely be done) is a virtual sure-fire denial and submitting such a claim will likely open him up to allegations of fraud.

Neither the claimant or his supervisory chain have done any work here.  They have simply taken the bad (already denied) paperwork, added Grand Canyon to Flagstaff Arizona estimates, and re-submitted it.

You and Matt are pushing a bad claim which may permanently close the door to any opportunity to help Our Worker.

He should have gotten the work done, or at the very least updated the paperwork to reflect Virginia estimates---or wherever he would actually get the work done.

In order to meet your "provide an update by COB Friday May 31, 2019" " to show responsiveness", I will forward this deeply flawed package to the Solicitor's Office.

Submitting such a flawed package will most likely result in a second Denial and prejudice him in the Office with respect to any future filing.

Also, I don't know who advised him to use an SF-95.  My research finds that he should have filed a DI-570.

Respectfully, and again, the claimant is Our Teammate. And we should do what we can to justly repair his POV damaged by our GOV. He legitimately has the basis of a claim which meets the Four Elements of a Tort. He is not served well by this package and your insistence on pushing it.

Brian (the Superintendent's Office) has clearly already stated as much. (below).

Please expect that the Solicitor's Office will Deny this claim.

Please consider this your COB Friday May 31, 2019 update.

Thank You.


Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727



---------- Forwarded message ---------
From: **Drapeaux, Brian** <brian_drapeaux@nps.gov>
Date: Wed, May 22, 2019 at 9:02 AM
Subject: Re: SF 95
To: Stephenson, Elston <elston_stephenson@nps.gov>
Cc: Vandzura, Matt <matt_vandzura@nps.gov>


Hi Elston,
I'm sure by policy, that there must be an actual expenditure.  With out that, I would find it impossible for there to be a claim.

thanks,
Brian



Brian Drapeaux
Deputy Superintendent, Business Operations
Grand Canyon National Park
P.O. Box 129
Grand Canyon AZ 86023
[Quoted text hidden]

### 5 attachments



**Steidle Rental Car.PNG**
35K


**Steidle Mileage to Flagstaff.PNG**
35K



**Attachments**

  **Steidle Claim For Damage Form SF-95.pdf**
      1103K

  **STEIDLE MVA Statement.docx**
      13K

  **Steidle Vehicle Damage Estimate - Campus Collision Flagstaff.pdf**
      53K



Stephenson, Elston <elston_stephenson@nps.gov>

## Fwd: Steidle Tort Claim

**Drapeaux, Brian** <brian_drapeaux@nps.gov>                    Wed, May 29, 2019 at 2:07 PM
To: Elston Stephenson <elston_stephenson@nps.gov>

Hi Elston,

I'm not sure why the TORT related issues are taking so long to respond to but people are waiting and deserve some sort of update in regard to their claim.  Provide an update by COB Friday May 31, 2019 to Matt and his staff member so show responsiveness.  Please cc me on the exchange.

thanks,
Brian


Brian Drapeaux
Deputy Superintendent, Business Operations
Grand Canyon National Park
P.O. Box 129
Grand Canyon AZ 86023
928-638-7945  Phone
928-638-7815  Fax
Brian_Drapeaux@nps.gov


[Quoted text hidden]

# EXHIBIT O

United States Department of the Interior

NATIONAL PARK SERVICE
GRAND CANYON NATIONAL PARK
20 South Entrance Road
PO Box 129
Grand Canyon, Arizona 86023



Date:          February 26, 2019

To:            Elston Stephenson, Safety Manager, Grand Canyon National Park

From:          Brian Drapeaux, Deputy Superintendent, Grand Canyon National Park

Subject:       Instruction Regarding Communications Related to Radiation Exposure and Uranium Ore

With the departure of Acting Superintendent, Woody Smeck, I would like to reiterate instructions in the 02/07/2019 memorandum that Mr. Smeck issued to you regarding your responsibilities as to radiation exposure and uranium ore. The Park remains appreciative of your efforts regarding this issue, and as indicated in Mr. Smeck's memorandum, the Park's response and communications regarding same will be handled by OSHA and the federal risk management team. As indicated in Mr. Smeck's memorandum, all communications with NPS employees and dealings with other agencies regarding this matter will be handled by the federal risk management team, and as such, you were specifically instructed not to communicate with park staff on this matter.

I understand that you sent two emails to a number of Park employees on 2/17/2019 and 2/25/2019 regarding this issue. Again, to be clear, you are not to communicate with any staff regarding this issue. This matter is being investigated by the appropriate authorities, and any communications regarding this issue should come from the agency, so that there is no confusion regarding the agency's official position on this issue.

If you receive any emails regarding this issue from any employees or other state and federal agencies, you are instructed to forward them to Brian Drapeaux, and the agency will respond accordingly.  We again emphasize that failure to comply with these instructions may result in disciplinary action.

As mentioned in the press release of 2/21/2019, NPS will update a recorded phone line (928-638-7688) and the park's website (https://www.nps.gov/grca/learn/historyculture/muscol.htm) as new information becomes available regarding this issue. The public may also email grca_incident_team@nps.gov with questions or concerns.


Brian Drapeaux

Cc:    Acting Regional Director, Intermountain Regional Office


**Employee Receipt of Acknowledgement**

Please sign and date this letter as evidence that you have received it.  Your signature does not mean that you agree or disagree with the contents of this letter. Your failure to sign will not void the contents of this letter.


Receipt Acknowledged: _____     Date: __27 Feb 2019__

# EXHIBIT P



Stephenson, Elston <elston_stephenson@nps.gov>

## Official Time and Leave Procedures

Risser, Mary <mary_risser@nps.gov>                                          Thu, Nov 21, 2019 at 8:47 AM
To: Elston Stephenson <elston_stephenson@nps.gov>

Good morning, Elston.

I wanted to get back to you about your email from Tuesday that informed me that you needed to spend an "inordinate" amount of time working with the U.S. Attorney's Office, DOI Solicitor's Office, EEOC lawyers, and private attorneys. Yes, you are entitled to a "reasonable" amount of official time - not an inordinate amount of time - to prepare and present this complaint. This is usually measured in hours, not days, weeks or months.

This is an area that I haven't dealt with often. So you will find that if I don't know the exact answer, I will contact the experts to get that information so I can give you the best possible information that I can.

I have been informed that the AUSA and the DOI Solicitor were prepared to talk to you, instead you sent them a very long email in which you tried to respond to some assertions made in a pending motion to dismiss as well as some statements. While we do not know how long you actually spent working on that email, you claim to have spent a lot of time. The recommendation that I received from the Solicitor would be to allow up to 8 hours with regard to preparation of that particular email.

We don't have any other calls or meetings planned in the near future, so there really should be no meeting for which you need to prepare, let alone for an "inordinate" amount of time.

You will see I've attached two documents for your review. The first provides information about the use of official time. The second comes from the Natchez Trace Parkway standard operating procedures. While the information does come from another park the source of the information provides the direction for all NPS units. Below are the citations, so there should be no questions about if they apply to the Grand Canyon and its personnel.

5 U.S.C § 63 Leave; 5 C.F.R. § 630.209; 5 U.S.C § 6302(d);
5 C.F.R. § 630.402; 5 C.F.R. § 630.501; 5 C.F.R. 630.502(a);
37 Comp. Gen 439
Personnel Bulletin NO:15-05 dated July 20, 2015 -  Family
Medical Leave Act

Elston, I believe that we will be able to work together well over the next few months as long as we are operating from the same set of expectations. This basic understanding about leave and official time will be the foundation from which all else will stem. Moving forward, my expectations are for you to follow the leave requesting procedures outlined and to contact me in advance concerning the amount of official time you anticipate  you may need so that I can review and make the appropriate determination

Please let me know if you have any questions.

Mary

--
Mary Risser, Acting Superintendent
Grand Canyon National Park
P.O. Box 129
Grand Canyon, AZ 86023

928.638.7945 (office)
662.308.8829 (iPhone)

"Quotes found on the internet are not always accurate." Abraham Lincoln





**2 attachments**

📄 **2011- Use of Official Time.1.pdf**
60K

📄 **AD08.1 - Leave 5.25.2018.pdf**
471K



Stephenson, Elston <elston_stephenson@nps.gov>

---

## Official Time and Leave Procedures

**Stephenson, Elston** <elston_stephenson@nps.gov>                    Thu, Nov 21, 2019 at 10:14 AM
To: "Risser, Mary" <mary_risser@nps.gov>

Mary,

Good Morning.

Thank You...lots to read in the references. I haven't cracked them open yet.

There was the time of the calls and preparation. I've been doing the homework through the nights and getting with people during the day.

That is what I meant by inordinate.

Respectfully, as I have a better sense of what is happening---court submissions, counseling, deadlines. I am in a better position to determine what my needs are, what my deadlines and requirements are.

This is a weeks long (at least) process.

I did not mean that I was going to be solely doing this for a week. But that there would be times when I would have to attend events or step away for a phone call for privacy purposes.

Mary, this is new to me too. And frankly, didn't think I'd end up 'here' in a million years.   : (

I have and will endeavor to keep You informed.

Thank You


Sincerely,

Elston
928-255-8727
[Quoted text hidden]