# EXHIBIT J



Stephenson, Elston <elston_stephenson@nps.gov>

## Follow-Up Grand Canyon Nat Park Citation 1363108

**Stephenson, Elston <elston_stephenson@nps.gov>**                                   Thu, Jul 11, 2019 at 8:17 AM
To: "Barnett, Zachary - OSHA" <barnett.zachary@dol.gov>

Zach,

Good Morning & Belated Happy 4th!

Would it be possible to forward the Employer Grand Canyon National Park 'response' to Citation 1363108.

Although I made recommendations; I was not included in 'the GRCA/IMR/NPS huddle' for the final 1903.19 response (Abatement Certification, Documentation, or Plans).

As both the Complainant and the GRCA Safety Officer, would it be possible to forward GRCA's response to Citation 1363108.

Thank You.


Sincerely,

Swede
Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727



Stephenson, Elston <elston_stephenson@nps.gov>

## [EXTERNAL] Employer response to Grand Canyon

**Barnett, Zachary - OSHA <Barnett.Zachary@dol.gov>**                     Mon, Jul 15, 2019 at 1:36 PM
To: "Stephenson, Elston (elston_stephenson@nps.gov)" <elston_stephenson@nps.gov>

Hi Swede,


This is the only response information I have from the Grand Canyon regarding the Notices issued.


Z



🗐 **Grand Canyon employer response.pdf**
   707K



United States Department of the Interior

NATIONAL PARK SERVICE
GRAND CANYON NATIONAL PARK
P.O. BOX 129
GRAND CANYON, AZ 86023



IN REPLY REFER TO
10.C (8211)

**JUN 1 9 2019**

T. Zachary Barnett, Area Director
U.S. Department of Labor
Occupational Safety and Health Administration
230 N 1ˢᵗ Avenue
Suite 202
Phoenix AZ 85003

Re:  Inspection Number 1363108

Dear Mr. Barnett,

During an inspection on November 28, 2018, your staff identified three corrective actions that required Grand Canyon National Park (GRCA) to address. This letter also notifies you that the Park posted the Notice in prominent places throughout our buildings, including the park museum collection building.

This letter serves as our abatement certification that Notice 1 Items 2 & 3. On Friday June 14, 2019 GRCA provided training to 39 staff members who have roles associated with preservation of museum collections and exhibits but also included park leadership, supervisors, and emergency first responders. This training included HAZCOM, HAZMAT, Safe Walking, Working Surfaces and Emergency Egress and additional Supervisor's Additional Training covered Accident Reporting. NPS Safety Management Information System and the Worker's Compensation Program

Grand Canyon National Park is planning to provide similar training to all park personnel within the next year and commits to continuing training into the future. This will include 4 to 5 more mandatory trainings before December 31ˢᵗ, 2019 to reach all employees. Attached is the Certification of Corrective Action Worksheet.

If you have any questions please feel free to contact me directly, or Brian Drapeaux at 928-638-7903.

Sincerely,

Woody Smeck
Acting Superintendent

RECEIVED

JUN 2 1 2019

OSHA-PHOENIX

*Designed to deflect to deliberately falsified & defraud Notice1 Item2 It never happened, violation 18 USC §1001 violation 18 USC §1031*

## CERTIFICATION OF CORRECTIVE ACTION WORKSHEET – FEDERAL AGENCIES

**Inspection Number:** 1363108
**Agency Name:** National Park Service, dba Grand Canyon National Park
**Inspection Site:** 2C Albright Ave, Grand Canyon, AZ 86023
**Issuance Date:** 05/22/2019

**Employer Instruction:** List the specific method of correction for each item on the enclosed notices that does not read "Corrected During Inspection" and return to: **U.S. Department of Labor – Occupational Safety and Health Administration, 230 N 1st Avenue, Suite 202, Phoenix, AZ 85003.** Failure to submit a timely certification of corrective action may result in a notification to your agency DASHO.

Notice Number ___1___ and Item Number ___2___ was corrected on ___6/14/19___
By (Method of Abatement): _Training for HAZCOM, HAZMAT, safe walking, working surfaces_
_And Emergency egress, And Additional supervisor's additional training injury, accident Reporting_
_NPS injury management information System And the workers compensation program_

Notice Number ___1___ and Item Number ___3___ was corrected on ___6/14/19___
By (Method of Abatement): _Training for HAZCOM, HAZMAT, safe walking, working surfaces, And_
_Emergency egress And Additional supervisors additional training injury, Accident Reporting_
_NPS Injury Management Information System And the workers compensation Program_

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

I certify that the information contained in this document is accurate and that the affected employees and their representatives have been informed of the abatement.

_Woody Smith_
**Signature**

_6·19·19_
**Date**

_Acting Superintendent_
**Title**

**RECEIVED**

JUN 24
**OSHA PHOENIX**

**NOTE:** 29 USC 666(g) whoever knowingly makes any false statements, representation or certification in any application record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment of not more than 6 months or both

**POSTING:** A copy of completed Corrective Action Worksheet should be posted for employee review.

_[Handwritten marginal notes, right side:]_ Designed to Defraud & defraud Notice 1, Item 2 Knowing + Deliberately falsified document. It never happened. Violation 18 USC § 1001 Violation 18 USC § 1031

**U.S. Department of Labor**
Occupational Safety and Health Administration
230 N 1st Avenue
Suite 202
Phoenix, AZ 85003



# Notice of Unsafe or Unhealthful Working Conditions

**To:**
National Park Service, dba Grand Canyon National
Park
PO Box 129
Grand Canyon, AZ 86023

**Inspection Number:** 1363108
**Inspection Date(s):** 11/28/2018 -
**Issuance Date:** 05/22/2019

**Inspection Site:**
2C Albright Ave
Grand Canyon, AZ 86023



This Notice of Unsafe and Unhealthful Working Conditions (Notice) describes violations of the Occupational Safety and Health Act of 1970, the Executive Order 12196, and 29 CFR 1960, Basic Program Elements for Federal Employee Occupational Safety and Health Programs and Related Matters. You must abate the violations referred to in this Notice by the dates listed unless, within 15 working days (excluding weekends and Federal holidays) from your receipt of this Notice you request an Informal Conference with the US Department of Labor OSHA Area Office at the address shown above. Please refer to the enclosed publication "Federal Employer Rights and Responsibilities Following an OSHA Inspection" which outlines the appeals procedure for this Notice and which should be read in conjunction with this form. If you have any questions please contact this office at 602-514-7250

**Posting** – The law requires that a copy of this Notice be posted immediately in a prominent place at or near the location of the violation(s) cited herein, or, if it is not practicable because the nature of the employer's operations, where it will be readily observable by all affected employees. This Notice must remain posted until the violation(s) cited herein has (have) been abated, or for 3 working days (excluding weekends and Federal holidays), whichever is longer.

**Notification of Corrective Action** – For each violation which you do not appeal, you must provide abatement certification to the Area Director of the OSHA office issuing the Notice and identified above. This abatement certification is to be provided by letter within 10 calendar days after each abatement date. Abatement certification includes the date and method of abatement. If the Notice indicates that the violation was corrected

during the inspection, no abatement certification is required for that item. The abatement certification letter must be posted at the location where the violation appeared and the corrective action took place or employees must otherwise be effectively informed about abatement activities. A template abatement certification letter is enclosed with this Notice. In addition, where the Notice indicates that abatement documentation is required, evidence of the purchase or repair of equipment, photographs or video, receipts, training records, etc., verifying that abatement has occurred is required to be provided to the Area Director.

**Program Responsibilities** - Section 19(a)(1) of the OSH Act requires the head of each Federal agency to comply with applicable occupational safety and health standards. The intent of this section and Executive Order 12196 is implemented through 29 CFR 1960.8(b). If you are cited for violations of applicable safety and health standards, you have also violated the program element 29 CFR 1960.8(b), which stipulates:

*"The head of each agency shall comply with the Occupational Safety and Health Administration standards applicable to the agency."*

**Informal Conference** – An informal conference is not required. However, if you wish to have such a conference you may request one with the Area Director within 15 working days after receipt of this Notice. As soon as the time, date, and place of the informal conference have been determined please complete the enclosed "Notice to Employees" and post it where the Notice is posted. During such an informal conference you may present any evidence or views you believe would support an adjustment to the Notice. In addition, bring to the conference any and all supporting documentation of existing conditions as well as any abatement steps taken thus far.

If you are considering a request for an informal conference to discuss any issues related to the Notice, you must take care to schedule it early enough to allow time to appeal after the informal conference should you decide to do so. Please keep in mind that a written letter of intent to appeal must be submitted by the Agency's National OSH Manager to the OSHA Area Director within 15 business days of your receipt of the OSHA Notice to request that OSHA's Regional Administrator review the case.

**Inspection Activity Data** – You should be aware that OSHA publishes information on its inspection and notice activity on the Internet under the provisions of the Electronic Freedom of Information Act. The information related to these alleged violations will be posted when our system indicates that you have received this notice. You are encouraged to review the information concerning your establishment at www.OSHA.gov. If you have any dispute with the accuracy of the information displayed, please contact this office.

**U.S. Department of Labor**
Occupational Safety and Health Administration



# NOTICE TO EMPLOYEES

An informal conference has been scheduled with the Occupational Safety and Health

Administration (OSHA) to discuss the Notice of Unsafe or Unhealthful Working Conditions

(Notice) issued on 05/22/2019. The conference will be held by telephone or at the OSHA office

located at 230 N 1st Avenue, Suite 202, Phoenix, AZ 85003 on _____ at

_____. Employees and/or representatives of employees have a right to attend an

informal conference.

## CERTIFICATION OF CORRECTIVE ACTION WORKSHEET – FEDERAL AGENCIES

**Inspection Number: 1363108**
Agency Name: National Park Service, dba Grand Canyon National Park
Inspection Site: 2C Albright Ave, Grand Canyon, AZ 86023
Issuance Date: 05/22/2019

**Employer Instruction:** List the specific method of correction for each item on the enclosed notices that does not read "Corrected During Inspection" and return to: **U.S. Department of Labor – Occupational Safety and Health Administration, 230 N 1st Avenue, Suite 202, Phoenix, AZ 85003.** Failure to submit a timely certification of corrective action may result in a notification to your agency DASHO.

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

I certify that the information contained in this document is accurate and that the affected employees and their representatives have been informed of the abatement.

_____          _____
**Signature**                                                    **Date**

_____
**Title**

NOTE: 29 USC 666(g) whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment of not more than 6 months or both.

POSTING: A copy of completed Corrective Action Worksheet should be posted for employee review.

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number: 1363108**
**Inspection Date(s): 11/28/2018 -**
**Issuance Date: 05/22/2019**



## Notice of Unsafe and Unhealthful Working Conditions

**Company Name:** National Park Service, dba Grand Canyon National Park
**Inspection Site:** 2C Albright Ave, Grand Canyon, AZ 86023

---

Notice 1 Item 1        Type of Violation: **Serious**

29 CFR 1960.25(c): The Agency did not inspect annually, all areas in each workplace, including office operations:

a) MUSEUM COLLECTIONS BUILDING AND Throughout the Entire Park: Annual inspections for the identification of safety and health hazards were not conducted since 2014. Employees were routinely exposed to the potential chemical and physical hazards associated with ingestion and inhalation when handling uranium core samples; and biological specimens and historical artifacts coated with preservatives to prevent deterioration.

### ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date by which Violation must be Abated:    07/10/2019

See Pages 1 through 3 of this Notice for information on employer and employee rights and responsibilities.

Notice of Unsafe and Unhealthful Working Conditions              Page 6 of 8                              OSHA-2H

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1363108
**Inspection Date(s):** 11/28/2018 –
**Issuance Date:** 05/22/2019



## Notice of Unsafe and Unhealthful Working Conditions

**Company Name:** National Park Service, dba Grand Canyon National Park
**Inspection Site:** 2C Albright Ave, Grand Canyon, AZ 86023

---

Notice 1  Item 2      Type of Violation: **Serious**

29 CFR 1960.55(a): The Agency did not provide safety and health training for supervisory employees:

a)    Museum Collection Building and throughout the Park: Supervisors and employees in the Museum Collection Building and other areas throughout the park were responsible for the collection, storage, and preservation of physical artifacts and relevant materials associated with the Grand Canyon including its geology, vegetation, habitation, and cultural history. The supervisor oversaw employees working with uranium core samples, biological specimens, and historical artifacts coated with preservatives to prevent deterioration while performing inventory and display/presentation set up, and when those materials were used for research purposes. Employees had potential exposure to chemical hazards such as uranium core samples, radon, cellulose nitrate film, and biological specimens preserved with arsenic, cyanide of mercury, naphthalene, 1,4-dichlorobenzene and other chemicals, as well as physical hazards such as slips, trips, falls, struck by hazards, and heat exposure. Despite the numerous potential exposures, supervisors did not receive safety and health training from the Agency.

Date by which Violation must be Abated:    06/18/2019

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 1363108
Inspection Date(s): 11/28/2018 -
Issuance Date: 05/22/2019



<u>Notice of Unsafe and Unhealthful Working Conditions</u>

Company Name: National Park Service, dba Grand Canyon National Park
Inspection Site: 2C Albright Ave, Grand Canyon, AZ 86023

Notice 1   Item 3    Type of Violation: **Serious**

29 CFR 1960.59(a):  The Agency did not provide appropriate safety and health training for employees:

a) MUSEUM COLLECTIONS BUILDING and throughout the Park:  Employees in the Museum
Collection Building and other areas throughout the park were responsible for the collection, storage,
and preservation of physical artifacts and relevant materials associated with the Grand Canyon
including its geology, vegetation, habitation, and cultural history. Employees worked with uranium core
samples, biological specimens, and historical artifacts coated with preservatives to prevent
deterioration while performing inventory and display/presentation set up, and when those materials
were used for research purposes. Employees had potential exposure to chemical hazards such as
uranium core samples, radon, cellulose nitrate film, and biological specimens preserved with arsenic,
cyanide of mercury, naphthalene, 1,4-dichlorobenzene and other chemicals, as well as physical hazards
such as slips, trips, falls, struck by hazards, and heat exposure.  Despite the numerous potential
exposures, employees did not receive safety and health training from the Agency.

Date by which Violation must be Abated:    06/18/2019

Z. Zachary Barnett
Area Director

# Federal Employer Rights and Responsibilities Following an OSHA Inspection-1996

## After an Inspection

An inspection of your workplace was conducted in accordance with the Occupational Safety and Health Act of 1970, Executive Order 12196, and 29 CFR Part 1960, Basic Program Elements for Federal Employee Occupational Safety and Health Programs and Related Matters. The compliance safety and health officer (CSHO) who conducted the inspection has found conditions that are in violation of the Act, Executive Order 12196, or 29 CFR Part 1960, and you have been issued a Notice of Unsafe or Unhealthful Working Conditions, OSHA-2H Form (OSHA Notice) that explains in detail the exact nature of the alleged violation(s).

This pamphlet contains important information regarding your rights and responsibilities under the Act, Executive Order 12196, and 29 CFR Part 1960. For each apparent violation found during the inspection, the compliance officer discussed the following with you:

- The nature of the violation,
- Possible abatement measures you may take to correct the violative condition, and
- Possible abatement dates you may be required to meet.

## Types of Violations

- **WILLFUL:** A willful violation is defined as a violation in which the employer either knowingly failed to comply with a legal requirement (purposeful disregard) or acted with plain indifference to employee safety.
- **SERIOUS:** A serious violation exists when the workplace hazard could cause an accident or illness that would most likely result in death or serious physical harm, unless the employer did not know or could not have known of the violation.
- **REPEATED:** A Federal agency may be cited for a repeated violation if the agency has been cited previously for the same or a substantially similar condition and, for a serious violation, OSHA's regionwide (see last page) inspection history for the agency lists a previous OSHA Notice issued within the past five years; or, for an other-than-serious violation, the establishment being inspected received a previous OSHA Notice issued within the past five years.
- **OTHER-THAN-SERIOUS:** A violation that has a direct relationship to job safety and health, but is not serious in nature, is classified as "other-than-serious."

## Posting Requirements

When you receive an OSHA Notice, you must post it (or a copy of it) at or near the place where each violation occurred to make employees aware of the hazards to which they may be exposed. The OSHA Notice must remain posted for 3 working days or until the hazard is abated, whichever is longer. (Saturdays, Sundays and Federal holidays are not counted as working days).

## Employer Options

As an employer who has been cited, you may:

- Correct the condition by the date set in the OSHA Notice and/or,
- Request an Informal Conference within 15 working days from the time you received the OSHA Notice with the OSHA Area Director to discuss the violations and/or the abatement dates.

## How to Comply

For violations cited in the OSHA Notice, you must promptly notify the OSHA Area Director by letter that you have taken the appropriate corrective action within the time set forth in the OSHA Notice. The notification you send the Area Director is generally referred to as a LETTER OF CORRECTIVE ACTION. It must explain the specific action taken with regard to the violation and state the date each corrective action was taken.

If you have abatement questions after the inspection, they should be discussed with the Area Director in the informal conference.

When the OSHA Notice permits an extended period of time for abatement, you must insure that employees are adequately protected during this time. If this is the case, you must provide OSHA with a periodic progress report on your actions taken in the interim.

## Informal Conference

You may request an informal conference with the OSHA Area Director to discuss the violations. You may use this opportunity to do any of the following:

- Obtain a better explanation for the violations cited.
- Obtain a more complete understanding of the specific standards that apply.
- Discuss ways to correct violations.
- Discuss problems concerning the abatement dates.
- Discuss problems concerning employee safety practices.
- Resolve disputed violations.
- Obtain answers to any other questions you may have.

You are encouraged to take advantage of the opportunity to have an informal conference if you foresee any difficulties in complying with any part of the OSHA Notice. Employee representatives have the right to participate in any informal conference or negotiations between the Area Director or Regional Administrator and the employer.

If you agree that the violations do exist, but you have a valid reason for wishing to extend the abatement date(s), you may discuss this with the Area Director during the informal conference. The Area Director may issue an amended OSHA Notice that changes the abatement date prior to the expiration of the 15 working day period.

Every effort will be made to resolve the issues at an informal conference. If, however, an issue is not resolved by the Area Director, a summary of the discussion together with the agency's position on the

unresolved issues shall be forwarded to the Federal Agency Program Officer (FAPO) within 5 working days of the informal conference.

- The FAPO/Regional Administrator will confer with the appropriate Regional agency official before making a decision on the unresolved issues.
- If the FAPO/Regional Administrator, in consultation with the Area Director, decides that the item in question should remain unchanged on the OSHA Notice, the appropriate agency officials shall be advised.
- If there is still an unresolved issue after the Regional review, the agency may send a letter of appeal to OSHA's Office of Federal Agency Programs (OFAP).
- OFAP will review the disputed issues and discuss these with top agency officials, as appropriate, to obtain resolution. The decision at the National Office level, in consultation with the Regional Administrator, FAPO, and Area Director, is final.
- Under the OSHA Act, Executive Order 12196 and 29 CFR Part 1960, Federal agencies do not have the right to contest the OSHA Notice.

## Petition for Modification of Abatement (PMA)

Abatement dates are assigned on the basis of the best information available at the time the OSHA Notice is issued. When you are unable to meet an abatement date because of uncontrollable events or other circumstances, you may file a Petition for Modification of Abatement (PMA) with the OSHA Area Director.

The petition must be in writing and must be submitted no later than one working day after the abatement date. To show clearly that you have made a good-faith effort to comply, the PMA must include all of the following information before it can be considered:

- Steps you have taken in an effort to achieve compliance and dates they were taken;
- Additional time you need to comply;
- Why you need the additional time;
- Interim steps you are taking to safeguard your employees against the cited hazard(s) until the abatement; and
- A certification that the petition has been posted, the date of posting and, when appropriate, a statement that the petition has been furnished to an authorized representative of the affected employees. The petition must remain posted for 10 working days, during which employees may file an objection.
- A PMA may be granted or objected to by the OSHA Area Director. If a PMA is granted, a monitoring inspection may be conducted to ensure that conditions are as they have been described and that adequate progress toward abatement has been made.

When agreement to extend the abatement date cannot be reached at the Area Office, the agency may bring unresolved issues to the Regional Administrator/FAPO for resolution with his counterpart in the agency. Issues not resolved at the regional level shall be forwarded to the Director, OFAP, for resolution with agency headquarters in consultation with the Regional Administrator, the FAPO, and the Area Director.

Further information on PMAs may be obtained from any OSHA Area/District office.

## Alternate Standards

Agency heads may apply for approval of an alternate standard where deemed necessary and, after consulting with employees or their representatives, including appropriate safety and health committees, notify the Secretary of Labor and request approval of such standards. The Secretary will not approve alternate standards unless it provides affected employees equivalent or greater protection.

The agency head must provide the Secretary with the following:

- A statement of why the agency cannot comply with the OSHA standard or wants to adopt an alternate standard;
- A description of the alternate standard;
- An explanation of how the alternate standard provides equivalent or greater protection for the affected employees;
- A description of interim protective measures afforded employees until a decision is rendered by the Secretary of Labor; and
- A summary of written comments, if any, from interested employees, employee representatives, and occupational safety and health committees.

Employees and other interested groups are encouraged to participate in the alternate standard process.

## Employee Courses of Action

Employees or their authorized representatives may object to any or all of the abatement dates set for violations if they believe them to be unreasonable. A written notice of their objections must be filed with the OSHA Area Director within 15 working days after the employer receives the OSHA Notice.

The filing of an employee objection does not suspend the employer's obligation to abate the hazard(s).

Employees also have the right to object to a PMA. Such objections must be in writing and must be sent to the Area Office within 10 days of service or posting.

## Follow-up Inspection and Failure to Abate

If you receive a Notice of Unsafe or Unhealthful Working Conditions, a followup inspection may be conducted to verify that you have done the following:

- Posted the OSHA Notice as required,
- Corrected the violations as required in the OSHA Notice, and/or
- Adequately protected employees and made appropriate progress in correcting the hazards during multi-step or lengthy abatement periods.
- Any new violations discovered during a followup inspection will be cited, as well as any hazards which have not been abated by the abatement date so specified on the OSHA Notice. The latter violations will be cited in the form of a Failure to Abate Notice.

## Employer Discrimination

Executive Order 12196 and 29 CFR Part 1960.46 prohibit Federal agencies from discharging or otherwise discriminating against an employee who has exercised any right under these laws, including the right to make safety and health complaints or to request an OSHA inspection. In addition, Federal employees may have protection for such activity under the Whistleblower Protection Act of 1989.

Complaints from employees who believe they have been discriminated against will be investigated by the Office of Special Counsel except in those agencies not covered by the Whistleblower Act. Agencies exempted from the Whistleblower Act are:

- A government corporation, such as the Tennessee Valley Authority;
- the Central Intelligence Agency, Defense Intelligence Agency, National Security Agency, or certain other intelligence agencies excluded by the President;
- the General Accounting Office;
- the U.S. Postal Service or Postal Rate Commission;
- the Federal Bureau of Investigation; and,
- Federal prisoners.

If the Federal employee's agency is exempted from the Whistleblower Act, the alleged reprisal is forwarded to the agency's Designated Agency Safety and Health Official (DASHO).

There is no time limit for filing a complaint with the Office of Special Counsel. To obtain further information on this matter, employees may contact OSHA and/or the Office of Special Counsel.

## Providing False Information

All information reported to OSHA by employers and employees must be accurate and truthful.

## Additional Information

For further information and assistance, please contact your OSHA Area Director.

## Related Publications

A single free copy of the following materials can be obtained from the OSHA Publications Office, 200 Constitution Avenue, N.W., Room N3101, Washington, D.C. 20210, (202) 219-4667

- Chemical Hazard Communication (OSHA 3084)
- How to Prepare For Workplace Emergencies (OSHA 3088)
- Job Hazard Analysis (OSHA 3071)
- 29 CFR Part 1960, Basic Program Elements for Federal Employee Occupational Safety and Health Programs and Related Matters

# EXHIBIT K



Stephenson, Elston <elston_stephenson@nps.gov>

## AED re-check from Friday

**Vandzura, Matt** <matt_vandzura@nps.gov>                                Mon, Mar 25, 2019 at 10:33 AM
To: Lisa Carrico <lisa_carrico@nps.gov>, Brian Drapeaux <brian_drapeaux@nps.gov>, Michael May
<michael_may@nps.gov>, "Sawyer, Kate" <kate_sawyer@ios.doi.gov>, Aaron Roth <aaron_roth@nps.gov>, Andrew Hower
<andrew_hower@nps.gov>, "Stephenson, Elston" <elston_stephenson@nps.gov>

Howdy,

Attached is the re-check of AEDs from Friday.

The North Rim is closed, no Rangers on duty so we weren't able to re-check those units.  That will be accomplished prior
to opening 5/2019.

Matt


Matthew D. Vandzura
Chief Ranger
Grand Canyon National Park
928 638 7800 office
928 522 3073 cell

Promise me you will not spend so much time treading water and trying to keep your head above the waves that you
forget, truly forget, how much you have always loved to swim.  Tyler Knott Gregson


**AED Inventory_as_of_3.22.29.xlsx**
21K

11/23/2019                                    DEPARTMENT OF THE INTERIOR Mail - AED re-check from Friday



Stephenson, Elston <elston_stephenson@nps.gov>

---

## AED re-check from Friday

**Stephenson, Elston** <elston_stephenson@nps.gov>                              Thu, Apr 11, 2019 at 5:55 AM
To: Kate Sawyer <kate_sawyer@ios.doi.gov>, Michael May <michael_may@nps.gov>
Cc: David Bernhardt <dwbernhardt@ios.doi.gov>, Mary Kendall <mary_kendall@doioig.gov>

Dr. Sawyer, Michael,

Good Morning.

Please receive this follow-up to my "Afterthoughts" email sent this morning.

Thank You again for taking this on.

Please know that I think that You and your investigation are being duped, played, defrauded with deliberately false statements, and even fraudulent documents meant to buttress this sham.

As I alluded to the earlier email, I had to check back with OSC.

The reason that I had to check back with OSC is, unfortunately, unpleasant and nefarious---perhaps even criminal conduct.

It occurred to me that I was using a 'guesstimate' when describing the distance that the Desertview Ranger had to run to get the AED at the Tower the day the man died. And that I was using 'guesstimates' from the Rangers that I spoke with to figure out how much time it took---guesstimates likely clouded and distorted by panic, fear, not really paying attention explicitly to the runner, etc.

So the days after our teleconference---Saturday and Sunday I decided to go measure the distance and run it a couple of times---even carrying an AED.

Of course, as a Safety Officer, I wouldn't be worth my business cards if I would not have checked the AED at the Tower while I was there.

The AED in that inventory "Attached is the re-check of AEDs from Friday." that Matt provided the Teleconference participants clearly states that the Tower AED is a LifePak CR Plus, serial number 46276433.

Clearly the one in my Saturday March 23, 2019 pic is a LifePak 500. The other pics, one of our Rangers swearing in a pair of Junior Rangers was around that time and verifies the location. I soon after ran the distance to the top of the venue (measuring wheel in hand) and a visitor snapped the pic attached.

Sunday March 24, 2019, my intent was to run the route a few times again. But I was so impressed that they had a pouch with gloves, shavers, and even a mouth-to-mouth prophylactic that I pulled it outside to take a pic as an example to be copied by.

It wasn't until Sunday night that I took a look at Matt's inventory and realized that he had falsified (at least) that Deserview Tower AED entry on the inventory.

Also questionable; if You will recall in my "Afterthought" email, the Rangers in the Desertview office had cannibalized an AED from a nearby campground closed for the winter and put it in their office. I did not check, but I do not believe that they had been provided (and the campground replaced) with a permanent AED. Those entries in the spreadsheet are questionable.

Matt went on a month's long vacation immediately after that weekend (pic). So he had no intention of correcting it for at least a month; if ever.

When I realized that we still had a 500 at the very place that the man had died with a LifePak 500 AED involved, I contacted Matt's Deputy Chief (pic) had lunch with her and got her to replace the 500 with a CR Plus (pic).

Doctor, Mike; Matt knows the difference (particularly in this very contentious discussion) between a LifePak 500 and a LifePak CR Plus. I believe that Matt deliberately falsified that spreadsheet to trick You and the other on the email into believing that our program was 'healthier' than it was.

Clearly when he angrily shouted into the phone (at Dr. Sawyer) that "It was only at most 2 or 3 max AEDs that were found with problems!", this was also wrong. He knew it. I had put out at various times and contemporaneously updated PSET; 8, 9, 10 AEDs reported bad....I even documented it in update PowerPoints to PSET. I'm sorry that I deleted the pics of 3 other AEDs, but it was 13 bad AEDs in less than a year.

Worse; both Brian and Lisa (on the call) also knew that Matt was knowingly spewing out gravely incorrect numbers and said nothing on the call.

Further, my 'antenna' tells me that You and the Team were probably lied to about the 'health' of our AED program--- probably told that we had some sort of working system to track and detect AEDs for maintenance and upcoming expirations; and likely told that we had removed of all LifePak 500s. Both are/were demonstrably not true. If they told You this; they lied to You---to the investigation.

Michael, You mentioned that Brian swore that he knew nothing of the man's death. Please receive the text pics that I found during a FOIA search attached. Clearly Brian is engaged in a dialog where I clearly express my concerns about not only the man's death but the lack of trauma counseling for the Desertview Rangers in the aftermath. You don't 'misplace' a memory of someone notifying You about a fatality. He lied to You---to the investigation.

Lastly, I watched (during the teleconference) in shock as Brian and Lisa not only did not correct the angry "only 2 or 3 max" proclamations of Matt. But I was also shocked that they did not stop and address his open hostility and bullying tactic with You. Particularly because I had just called it out at the PSET meeting days earlier (Tuesday), and very pointedly called out Brian and Lisa for not stopping it. It is a regular feature in our PSET culture. You both saw it on display at the very first 'In-Brief' meeting as your team arrived here. Mike, You remarked to me about it.

During that Tuesday's (March 19, 2019) PSET meeting I notified the room of the expired AED that I found at Back Country. Matt defended it as being 'not a big deal' by describing how he had revived a man with an AED with expired batteries. He told the room that it was overblown.

Please be reminded that it was Matt who pronounced to PSET the philosophy that "If you need, an AED; you're already dead". And that no one in the entire PSET other than me challenged that.

Days later, Friday March 22, 2019 in an 'All Employee' email "Automatic External Defibrillators (AED)" he doubles down on this claims and de facto made this part GRCA's SOP by proclaiming that AEDs with 'Low Battery' indications are "...SAFE TO USE" and that " they still have enough battery capacity in reserve to function normally and safely for the duration of a cardiac arrest."

This is dangerously not true---particularly in the case of the LifePak 500s.

I knew this to be not true, but called the manufacturer as a matter of due diligence. He expressed that this was the craziest thing he had ever heard of. He emphatically urged me to correct this.

I will forward Matt's email, the PhysioControl (they've changed their name to Stryker), and you will find the pic of my outgoing call to PhysioControl attached..

No one on PSET said anything about "If you need an AED; you're already dead."

No one on PSET said anything about "I revived a guy with an AED with bad batteries; it's not a big deal."

I've waited; no one on PSET said anything about the email (although Jeanne mentioned it to me).

The reason is that PSET is bullied by Matt. You've both seen this tactic (resorting to hostility and bullying when he is losing the issue on merit) of resorting to hostility and bullying.

The AED program is just a symptom. Granted, it is a dangerous symptom with deadly consequences.

My data is true. There were 13 of 60 AEDs---22% found to be bad in less than a year at Grand Canyon National Park. That's terrifying.

And a combo of bad maintenance, and poor placement were undeniably present, and likely contributing to our inability to revive a stricken visitor who died on our watch.

Respectfully, as far as a serious root cause analysis; the failed state of maintenance of the GRCA AED program is directly caused by the Chief Ranger's demonstrated ignorance and cavalier attitude regarding AEDs. However, the true root cause is the hostility and bullying which captivates the PSET whose responsibility it is to develop GRCA Park policy. The root root cause is the lack of leadership demonstrated and exemplified by the Deputy Superintendents to confront and end the hostility and bullying tactic which is a undeniable fixture of this culture.

Respectfully, this dangerous, reckless, promiscuous flirtation with dead AEDs runs the direct risk of ending in a fatality and must be forcefully ended by DOI and NPS.

Doctor, Michael; I'm sorry, but I think that You are being played; lied to. And because this is an OSC directed investigation; these would be material deliberate false statements, fraud, and even falsified, fraudulent documents intended to mislead You in how safe this program is, but to defeat the OSC investigation. Criminal conduct.

Moreover, and respectfully, this unethical culture and sense of impunity and being able to get away with it is to blame for not only the AED malaise, but the hiding of the uranium data from me and the workers that has brought GRCA front-and-center in the first place.

I hope that You have not been fooled by these efforts.

A man died in this AED business. At the very least we owe him (and the workers still traumatized) a thorough, serious, investigation of unquestionable integrity.

I'm sorry that I did not say something in the moment during the teleconference about the hostility. We keep talking about this culturally at all levels of DOI and NPS. I just figured, that as the lowest ranking person on the call, that someone else would step up. I'm sorry.

I've already briefed the OSC, and somewhat briefed Secretary Bernhardt and IG Kendall.

This is regrettable.

Please, this flirtation with dead or dying AEDs has to be slammed hard.

We owe these people---both the workers and the visitors the very best in safety.

Safety shouldn't be this hard.

Thank You.


Regrettably,

Elston

Elston "Swede" Stephenson, OHST
Safety Health & Wellness Manager
Grand Canyon National Park
928-255-8727


---------- Forwarded message ---------
From: **Vandzura, Matt** <matt_vandzura@nps.gov>
Date: Mon, Mar 25, 2019 at 10:33 AM
Subject: AED re-check from Friday
To: Lisa Carrico <lisa_carrico@nps.gov>, Brian Drapeaux <brian_drapeaux@nps.gov>, Michael May <michael_may@nps.gov>, Sawyer, Kate <kate_sawyer@ios.doi.gov>, Aaron Roth <aaron_roth@nps.gov>, Andrew Hower <andrew_hower@nps.gov>, Stephenson, Elston <elston_stephenson@nps.gov>

[Quoted text hidden]

11/23/2019                              DEPARTMENT OF THE INTERIOR Mail - AED re-check from Friday

**14 attachments**



**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 1.png**
749K



**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 2.png**
671K



**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 3.png**
976K



**Stephenson GRCA AED Death Dep Sup Drapeaux Notification 4.png**
987K



**Stephenson GRCA AED Fraud Desertview 1.png**
975K

**Stephenson GRCA AED Fraud Desertview 2.png**
660K

11/23/2019                              DEPARTMENT OF THE INTERIOR Mail - AED re-check from Friday





**Stephenson GRCA AED Fraud Desertview 3.png**
915K



**Stephenson GRCA AED Fraud Desertview 4.png**
951K



**Stephenson GRCA AED Fraud Desertview 5.png**
559K



**Stephenson GRCA AED Fraud Desertview 6.png**
957K



**Stephenson GRCA AED Fraud Desertview 7.png**
922K

11/23/2019                                    DEPARTMENT OF THE INTERIOR Mail - AED re-check from Friday

 



**Stephenson GRCA AED Fraud Desertview 8.png**
912K

 **Stephenson GRCA AED Fraud Desertview 9.png**
944K



 **AED Inventory_as_of_3.22.29.xlsx**
21K

# EXHIBIT L

# UNITED STATES DEPARTMENT OF

# THE INTERIOR

# NATIONAL PARK SERVICE

## REPORT OF INVESTIGATION

Investigation conducted by:
**The Law Offices of Stuart L. Plotnick**
**Neil Jacobs - Investigator**
**51 Monroe Street, Suite 701**
**Rockville, Maryland 20850**
**301.251.1286 (phone)**
**301.762.8539 (fax)**

**COMPLAINANT'S NAME: Elston L. Stephenson**
**COMPLAINT NUMBER: NPS-18-0460**

This document is for **OFFICIAL USE ONLY**. Neither it nor its contents are to be distributed outside of your Agency, nor duplicated, without proper authorization. You should be advised that any unauthorized use of this document **might** subject you to penalties provided by law.

more favorably than the Complainant under similar circumstances?

Rebuttal:
Once the Complainant has established a *prima facie* case of discrimination then management has the burden to articulate a legitimate non-discriminatory reason for its action.

Pretext:
Once management has articulated a legitimate non-discriminatory reason its action, then the burden shifts back to the claimant to establish that the agency's articulated reason is a pretext for unlawful discrimination.

Defense:
Whether the Agency official(s) responsible for the employment action at issue articulate a legitimate, non-discriminatory reason (s) for the action at issue.

Pretext:
Whether the articulated reason(s) is pretext for prohibited discrimination.

## III.   DESCRIPTION OF THE INVESTIGATION

| | |
|---|---|
| Places of Investigation: | Grand Canyon, AZ |
| Dates of Investigation: | June 14, 2019 |
| Date ROI Submitted: | August 5, 2019 |
| Investigative Method Used: | Telephone interviews |

## IV.   BACKGROUND AND SUMMARY OF EVIDENCE

### Background

**Elston Stephenson** (African American) hereafter Complainant, is a Safety Health and Wellness Manager, grade GS-0018-13, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since June 26, 2017, the same period he has worked for the Agency. His first level supervisor is Brian Drapeaux, Deputy Superintendent. He has worked for Mr. Drapeaux since January 2018. Former Superintendent Christine Lehnertz is Complainant's second level supervisor. Complainant worked for Ms. Lehnertz until she left the Agency in 2019.[1]

**Brian Drapeaux** (American Indian) responsible management official, is Deputy Superintendent, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position

---

[1] Numerous efforts were made requesting that Complainant provide testimony including an interview, a completed and signed affidavit and a rebuttal. To date, no response has been received from Complainant. Additionally, former Superintendent Christine Lehnertz declined to provide testimony. See Exhibit G-9.

since June 2014. Mr. Drapeaux is familiar with Complainant as his first level supervisor . He is aware from visual observation that Complainant is an African American.

**Matthew Vandzura** (White) responsible management official, is Chief Ranger, grade GS-14, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since March 2016, and has worked for the Agency since 1989. Mr. Vandzura is familiar with Complainant as the Safety Officer at Grand Canyon National Park. He is aware that Complainant is African American from visual observation of him.

**Charles Erikson** (Caucasian) witness, is a Visitor Use Assistant; grade GS-5, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since April 2016 and has worked for the Agency since 2011. Mr. Erikson is aware that Complainant is African American from visual observation of him.

**David Kane** (Caucasian) witness, is Chief of Safety, Health and Wellness; grade GS-14, United States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since August, 2016, and has worked for the Agency since 2008. Mr. Kane is aware of Complainant being African American from visual observation of him.

## Summary

**Whether the complainant was subjected to harassment and discriminated against on the basis of race (African American) when:**

1. **He was not given a performance appraisal during his entire tenure at GRCA (Grand Canyon National Park).**

## Management Testimony

**Mr. Drapeaux** states that Complainant was not provided with a performance work plan prior to the period November 9, 2019 to December 19, 2019. According to Mr. Drapeaux, former Superintendent Lehnertz wanted to fire Complainant during his probationary period. He states that she utilized words in describing Complainant that led him to believe that she was basing her feelings toward him on his race rather than performance. Mr. Drapeaux states that he did not want to prepare a performance work plan for Complainant because he believed that Ms. Lehnertz would want material placed in it that could be used to justify his termination. He states that he himself had filed several complaints against Ms. Lehnertz. Mr. Drapeaux states that Ms. Lehnertz was subsequently suspended, and voluntarily resigned from her position last Spring.

Mr. Drapeaux states that Complainant has since requested a performance work plan and/or appraisal from him both in writing and verbally. He states that he has attempted to meet with Complainant on multiple occasions to design his performance

5

# EXHIBIT M

11/25/2019                       DEPARTMENT OF THE INTERIOR Mail - Elston: IG Follow-Up - Clearance to Take Gov Vehicle Home

                                           Stephenson, Elston <elston_stephenson@nps.gov>

## Elston: IG Follow-Up - Clearance to Take Gov Vehicle Home

**Stephenson, Elston** <elston_stephenson@nps.gov>                        Fri, Aug 2, 2019 at 2:58 PM
To: Woody Smeck <woody_smeck@nps.gov>

Woody,

Good Afternoon.

Can You please clear me to take my GOV home at night pending a written memorandum?

Wednesday I was interviewed by the IG for 'misuse of a government vehicle' allegation.

One of the allegations was that I was taking home my vehicle without written authorization.

The understanding that I have operated under has been that due to the nature and responsibility of the Safety Manager, I must be poised to immediately respond to chemical/HAZMAT spills, fatalities, amputations, crashes, etc at all times.

The IG folks said that I had to have a memorandum and that I am in violation of 'policy' unless I have a memorandum.

I cannot find a memorandum template.  No one in the building has ever done one.

Can You please voice-clear me to take home my vehicle until I find the memorandum and get it to You?


Thank You.

Sincerely,

Elston
928-255-8727



Stephenson, Elston <elston_stephenson@nps.gov>

## Elston: IG Follow-Up - Clearance to Take Gov Vehicle Home

**Smeck, Woody** <woody_smeck@nps.gov>                    Fri, Aug 2, 2019 at 3:58 PM
To: "Stephenson, Elston" <elston_stephenson@nps.gov>

Elston,

Let me review national policy on this subject.  I will respond shortly.


Woody Smeck
Acting Superintendent
Grand Canyon National Park
P.O. Box 129
Grand Canyon, AZ 86023
---
(928) 638-7945 office
(559) 788-9247 mobile


[Quoted text hidden]

11/25/2019                    DEPARTMENT OF THE INTERIOR Mail - Your request for Home-to-Work use of a government vehicle



Stephenson, Elston <elston_stephenson@nps.gov>

---

## Your request for Home-to-Work use of a government vehicle

**Woody Smeck** <woody_smeck@nps.gov>                                      Tue, Aug 13, 2019 at 7:00 AM
To: elston_stephenson@nps.gov

Hello Elston,

In the email below dated August 2, 2019 you requested authorization to take a government passenger carrier home in order to immediately response to safety incidents.

In reviewing authority and guidance provided under 31 USC §1344, 41 CFR §102, and RM44, the Secretary must authorize all home-to-work transportation involving government passenger carriers. RM44 states, "The Secretary of the Interior is the only official authorized to approve the use of Government motor vehicles between an employee's residence and place of employment." See https://www.nps.gov/policy/DOrders/RM44.pdf for more information.

The Secretary has approved a narrow group of positions for home-to-work vehicle use, but safety officer is not among the approved positions. Use of your government vehicle is for official government purposes only.

Please let me know if you'd like to discuss further.

---

**2 attachments**

 **noname.html**
6K

**Updated Home-to-Work Authorization SIGNED 10302018.pdf**
118K

# EXHIBIT N



Stephenson, Elston <elston_stephenson@nps.gov>

## Fwd: Steidle Tort Claim

**Stephenson, Elston** <elston_stephenson@nps.gov>                          Fri, May 31, 2019 at 6:00 AM
To: Brian Drapeaux <brian_drapeaux@nps.gov>, "Vandzura, Matt" <matt_vandzura@nps.gov>

Brian, Matt,

Good Morning.

I don't know what You mean by "taking so long".

I spent 5 hours researching and responded at length to this claim on May 22, 2019. In it I expressed: How it was denied before I arrived at GRCA. How based on information from Nicole, he simply re-submitted the denied claim paperwork and attached 'estimates'. How I advised the claimant (and later, You) that he only had 'estimates' instead of actual receipts and that it would be better for his claim if he had actual receipts. How he responded that he refused to have the work done because "NPS has a good record of denying these claims with no continued course of action by the claimer and as a result I didn't want to spend thousands out of my pocket if I wasn't going to get reimburse". How I advised both You and Matt of the hazards of settling claims based on estimates and, how it is likely against any prudent policy. And how it would likely be again Denied.

That was everyone's opportunity to fix this package before resubmitting.

Brian concurred by stating "I'm sure by policy, that there must be an actual expenditure.  With out that, I would find it impossible for there to be a claim." in the May 22, 2019 email (pasted below).

That was the Superintendent's Office's 'non-endorsement.'

Any Fiduciary (to include the Solicitor's Office) would also 'non-endorse' this claim.

On Memorial Day weekend,  May 26, 2019 Matt located the complainant's contact information. He lives in Virginia.

Never mind that there was going to be no progress at all on his case over the Memorial Day weekend; that he now lives in Virginia creates problems that You and Matt should have spotted and addressed.

Filing a claim which suggests (based on the estimates attached) that he will be spending X amount of dollars renting a car in Flagstaff, and spending X amount of dollars for repairs done at a shop in Flagstaff, and spending X amount of dollars on mileage from Grand Canyon to Flagstaff---when he (and presumably his car) are in Virginia (where any future work would likely be done) is a virtual sure-fire denial and submitting such a claim will likely open him up to allegations of fraud.

Neither the claimant or his supervisory chain have done any work here. They have simply taken the bad (already denied) paperwork, added Grand Canyon to Flagstaff Arizona estimates, and re-submitted it.

You and Matt are pushing a bad claim which may permanently close the door to any opportunity to help Our Worker.

He should have gotten the work done, or at the very least updated the paperwork to reflect Virginia estimates---or wherever he would actually get the work done.

In order to meet your "provide an update by COB Friday May 31, 2019' " to show responsiveness", I will forward this deeply flawed package to the Solicitor's Office.

Submitting such a flawed package will most likely result in a second Denial and prejudice him in the Office with respect to any future filing.

Also, I don't know who advised him to use an SF-95. My research finds that he should have filed a DI-570.

Respectfully, and again, the claimant is Our Teammate. And we should do what we can to justly repair his POV damaged by our GOV. He legitimately has the basis of a claim which meets the Four Elements of a Tort. He is not served well by

Brian (the Superintendent's Office) has clearly already stated as much. (below).

Please expect that the Solicitor's Office will Deny this claim.

Please consider this your COB Friday May 31, 2019 update.

Thank You.


Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727



---------- Forwarded message ---------
From: **Drapeaux, Brian** <brian_drapeaux@nps.gov>
Date: Wed, May 22, 2019 at 9:02 AM
Subject: Re: SF 95
To: Stephenson, Elston <elston_stephenson@nps.gov>
Cc: Vandzura, Matt <matt_vandzura@nps.gov>


Hi Elston,
I'm sure by policy, that there must be an actual expenditure.  With out that, I would find it impossible for there to be a claim.

thanks,
Brian


Brian Drapeaux
Deputy Superintendent, Business Operations
Grand Canyon National Park
P.O. Box 129
Grand Canyon AZ 86023
[Quoted text hidden]

**5 attachments**



**Steidle Rental Car.PNG**
35K


**Steidle Mileage to Flagstaff.PNG**
35K

11/24/2019                         DEPARTMENT OF THE INTERIOR Mail - Fwd: Steidle Tort Claim



 **Steidle Claim For Damage Form SF-95.pdf**
1103K

 **STEIDLE MVA Statement.docx**
13K

 **Steidle Vehicle Damage Estimate - Campus Collision Flagstaff.pdf**
53K



Stephenson, Elston <elston_stephenson@nps.gov>

## Fwd: Steidle Tort Claim

**Drapeaux, Brian** <brian_drapeaux@nps.gov>                    Wed, May 29, 2019 at 2:07 PM
To: Elston Stephenson <elston_stephenson@nps.gov>

Hi Elston,

I'm not sure why the TORT related issues are taking so long to respond to but people are waiting and deserve some sort
of update in regard to their claim.  Provide an update by COB Friday May 31, 2019 to Matt and his staff member so show
responsiveness.  Please cc me on the exchange.

thanks,
Brian


Brian Drapeaux
Deputy Superintendent, Business Operations
Grand Canyon National Park
P.O. Box 129
Grand Canyon AZ 86023
928-638-7945  Phone
928-638-7815  Fax
Brian_Drapeaux@nps.gov


[Quoted text hidden]

# EXHIBIT O

United States Department of the Interior

**NATIONAL PARK SERVICE**
**GRAND CANYON NATIONAL PARK**
20 South Entrance Road
PO Box 129
Grand Canyon, Arizona 86023



Date:       February 26, 2019

To:         Elston Stephenson, Safety Manager, Grand Canyon National Park

From:       Brian Drapeaux, Deputy Superintendent, Grand Canyon National Park

Subject:    Instruction Regarding Communications Related to Radiation Exposure and Uranium Ore

With the departure of Acting Superintendent, Woody Smeck, I would like to reiterate instructions in the
02/07/2019 memorandum that Mr. Smeck issued to you regarding your responsibilities as to radiation
exposure and uranium ore. The Park remains appreciative of your efforts regarding this issue, and as
indicated in Mr. Smeck's memorandum, the Park's response and communications regarding same will be
handled by OSHA and the federal risk management team. As indicated in Mr. Smeck's memorandum, all
communications with NPS employees and dealings with other agencies regarding this matter will be
handled by the federal risk management team, and as such, you were specifically instructed not to
communicate with park staff on this matter.

I understand that you sent two emails to a number of Park employees on 2/17/2019 and 2/25/2019
regarding this issue. Again, to be clear, you are not to communicate with any staff regarding this issue.
This matter is being investigated by the appropriate authorities, and any communications regarding this
issue should come from the agency, so that there is no confusion regarding the agency's official position
on this issue.

If you receive any emails regarding this issue from any employees or other state and federal agencies, you are instructed to forward them to Brian Drapeaux, and the agency will respond accordingly. We again emphasize that failure to comply with these instructions may result in disciplinary action.

As mentioned in the press release of 2/21/2019, NPS will update a recorded phone line (928-638-7688) and the park's website (https://www.nps.gov/grca/learn/historyculture/muscol.htm) as new information becomes available regarding this issue. The public may also email grca_incident_team@nps.gov with questions or concerns.

Brian Drapeaux

Cc:     Acting Regional Director, Intermountain Regional Office


**Employee Receipt of Acknowledgement**

Please sign and date this letter as evidence that you have received it. Your signature does not mean that you agree or disagree with the contents of this letter. Your failure to sign will not void the contents of this letter.

Receipt Acknowledged: _____     Date: _27 Feb 2019_

# EXHIBIT P

# EXHIBIT A-1

12/2/2019　DEPARTMENT OF THE INTERIOR Mail - Fwd: 09/30/2019-Action Requested-Status of Safety Health and Wellness Implementation (e-T...

Case 3:19-cv-08268-DLR　Document 18-3　Filed 12/03/19　Page 45 of 53



Stephenson, Elston <elston_stephenson@nps.gov>

# Fwd: 09/30/2019-Action Requested-Status of Safety Health and Wellness Implementation (e-Tool)

**Stephenson, Elston** <elston_stephenson@nps.gov>　　　　　　　　　Thu, Jun 6, 2019 at 7:08 AM
To: Brian Drapeaux <brian_drapeaux@nps.gov>
Cc: NPS GRCA Executive Team <grca_executive_team@nps.gov>, David Bernhardt <dwbernhardt@ios.doi.gov>, Mary Kendall <mary_kendall@doioig.gov>


Brian

Good Morning.

Thank You for passing this along---particularly yesterday as we were conferring with OSHA on the citations associated with the uranium issue.

This is a timely opportunity and an 'integrity check'. An opportunity to define our 'Identity'---who we are and aspire to be for the GRCA PSET, and Grand Canyon National Park which I feel You are in a perfect position to lead.

I am concerned about being forced into making fraudulent entries or retaliation if I refuse. And the insistence on forcing ME to make the entries.

Respectfully, You should also make the entries yourself as the Department of the Interior, National Park Service, and Congress are keenly interested in GRCA safety, culture, and Ethical Culture.

As You know, as we process the culmination of the OSHA Notice, the upcoming DOI/NPS Safety Team report, the OSC Findings, and the Uranium Incident response, they must be reconciled in the eTool---which is why I have made no entries since the 'Uranium Incident'. And which is why I raised the eTool matter in the DOI/NPS Safety Team's outbrief as they prepared to leave.

Since the eTool is a government document and requires "statements" and "entries'; integrity and care must be taken so as not to commit multiple (each entry) felony frauds under 18USC §1001(a).

This is not only true of the entries to be made now, but in defining the criteria (time, milestones, improvements, actions, etc.) needed to move us in subsequent entries that will hopefully progress GRCA toward DOI/NPS' highest safety performance expectations (Green).

You are the perfect one to lead the discussion and to make the entries your self because You were there at the August 30, 2018 EEO mediation when the GRCA Superintendent admitted making the secret plot with IMR Safety staff to pointedly and deliberately hold secret meetings deliberately excluding me and hiding the uranium readings, health implications, and other information from me and the GRCA workers.

I don't know that as a PSET we have ever come to terms with the facts of the uranium issue. Or other developments such as those surrounding the AED program.

With You taking the lead appropriate to a Deputy Superintendent, the members of PSET can ask questions of You directly instead of merely relying on my assertions.

Other facts to consider:

1. Failure to notify workers or take any action on the uranium until forced by public disclosure
2. No Superintendent went to visit the Museum Collections staff for at least 8 months (June-March) to check on them or inform them after the uranium incident.
3. Failure to notify the work force of uranium exposure IAW the Right to Know Law.
4. The fact that the DOI Chief Medical Officer found our AED Program in such disarray and unreliable that it was nearly ordered completely shut down.
5. The fact that it took an EEO mediation Settlement Agreement to force the signing of OSHA required Written Programs.

Case 3:19-cv-08268-DLR   Document 18-3   Filed 12/03/19   Page 46 of 53

6. The fact that it took an EEO mediation Settlement Agreement to force the signing of OSHA required Competent/Qualified Person designations.
7. 2 Whistleblower complaints
8. DOI/NPS  DO/RM 50B violations
9. Investigations for false statements in the OSC safety investigation
10. Investigations for falsified documents in the OSC safety investigation
11. Several workers recently raising concerns about being forced to be silent about safety concerns
12. IMR Safety Office safety violations in the uranium response
13. IMR Safety Office Environmental, Resource, and CERCLA (at least) violations in the uranium response.


These facts (and others) must be considered in any honest self-assessment. Of course, knowing these facts and not honestly and accurately reflecting them is the "knowingly and willfully" of 18USC §1001(a).

These facts have wide-ranging influences in Tier I and Tier II assessment from Management and Leadership Involvement to Communication to Employee Leadership Involvement to Training Management and more.

Again, You should not only lead the PSET discussion, but also make the entries yourself as GRCA Deputy Superintendent, and as You have first-hand knowledge of the plot to hide the uranium information, but first-hand knowledge of many of the other items listed as well. And how to honestly reconcile these in the eTool entries.

This has been a period of becoming aware of and facing uncomfortable and inconvenient truths. But necessary if we are to provide true leadership and move forward to providing a safe workplace for our workers and visitors.

I worry that all of the burden of this leadership is inappropriately being placed on me.

I hope that You will agree that it is very important that we not commit multiple counts of felony fraud. And if we do, THAT becomes our Identity.

Thank You.


Very Sincerely,

Elston
928-255-8727

Reference

Cornell Law School (2019). Legal Information Institute. U.S. Code. *Title 18 Crimes and criminal procedure, part I crimes, chapter 47 fraud and false statements, section 1001 statements and entries generally.* Retrieved from
https://www.law.cornell.edu/uscode/text/18/1001

[Quoted text hidden]


**2 attachments**

 **Stephenson Findings OSC File No. DI-19-1689.pdf**
105K

**Stephenson - GRCA DOI NPS Settlement Agreement_NPS-18-0460_GRCA FINAL (signed).pdf**
254K

12/2/2019    DEPARTMENT OF THE INTERIOR Mail - Fwd: 09/30/2019-Action Requested-Status of Safety Health and Wellness Implementation (e-T...

Case 3:19-cv-08268-DLR Document 13-3 Filed 12/03/19 Page 47 of 53



Stephenson, Elston <elston_stephenson@nps.gov>

## Fwd: 09/30/2019-Action Requested-Status of Safety Health and Wellness Implementation (e-Tool)

**Drapeaux, Brian** <brian_drapeaux@nps.gov>                    Thu, Jun 13, 2019 at 2:42 PM
To: "Stephenson, Elston" <elston_stephenson@nps.gov>
Cc: Woody Smeck <woody_smeck@nps.gov>

Hi Elston,

As you know, one of the major responsibilities of your position as the GRCA Safety Manager is the management of the NPS etool.   In reading the requirements of the memo, what is being requested fully falls within your scope of responsibilities as the park's safety manager.  The <u>Action Requested, Reason for Request and Background and Tips</u> clearly defines the what's and why's as well as the who.

I am giving you until  9/15/19 to perform this task as I've assigned, this give you ample time to prepare a response. Failure to complete this assignment by the given time may result may result in disciplinary action.

Brian


Brian Drapeaux
Deputy Superintendent, Business Operations
Grand Canyon National Park
P.O. Box 129
Grand Canyon AZ 86023
928-638-7945  Phone
928-638-7815  Fax
Brian_Drapeaux@nps.gov


[Quoted text hidden]



United States Department of the Interior

NATIONAL PARK SERVICE
GRAND CANYON NATIONAL PARK
20 South Entrance Road
PO Box 129
Grand Canyon, Arizona 86023



February 26, 2019

Elston Stephenson
Safety Manager
National Park Service
Grand Canyon National Park
Grand Canyon, Arizona

On February 26, 2019, you sent me an email at approximately 3:47 am. The email stated something to the effect of, "I am heading down to Phoenix to meet with the US Attorney's Office this morning." I will allow this, on a one time basis. However, moving forward, I want to make sure that you are made clearly aware of my expectations of you.

Your duty station is Grand Canyon National Park, as such, you are expected to be present at your duty station at the beginning of your tour of duty. (7:00 AM-4:00PM) If you feel that your work requires you to be elsewhere or that you need to work at hours other than your scheduled tour of duty (including travel hours), you are to request such a change, through me, prior to any changes being made.

If I have not granted your requested change or if I have not responded to your requested change, it my expectation that you maintain your regular schedule at your regular duty station. I will give consideration to any such requests that you make to perform work locations outside of Grand Canyon National Park and/or outside of your normal tour of duty so that I can make a determination as to whether your request is valid and in the furtherance of the NPS mission.

Any changes to your schedule or work location that have not been previously approved will be considered as AWOL and disciplinary action may be taken as a result.

In the event that you are requesting a last-minute or emergency change to your schedule or duty station that requires an immediate response, and you are unable to contact me in person to make your request, it is my expectation that you call my government issued cell phone 928-606-7894.

Sincerely,

Brian Drapeaux
Deputy Superintendent
Grand Canyon National Park

**Employee Receipt of Acknowledgement**

Please sign and date this letter as evidence that you have received it.  Your signature does not mean that you agree or disagree with the contents of this letter.  Your failure to sign will not void the contents of this letter.

Receipt Acknowledged: _____         Date: _27 Feb 2019_

# EXHIBIT Q

11/23/2019                    DEPARTMENT OF THE INTERIOR Mail - Official Time and Leave Procedures



Stephenson, Elston <elston_stephenson@nps.gov>

---

## Official Time and Leave Procedures

**Risser, Mary** <mary_risser@nps.gov>                                    Thu, Nov 21, 2019 at 8:47 AM
To: Elston Stephenson <elston_stephenson@nps.gov>

Good morning, Elston.

I wanted to get back to you about your email from Tuesday that informed me that you needed to spend an "inordinate" amount of time working with the U.S. Attorney's Office, DOI Solicitor's Office, EEOC lawyers, and private attorneys. Yes, you are entitled to a "reasonable" amount of official time - not an inordinate amount of time - to prepare and present this complaint. This is usually measured in hours, not days, weeks or months.

This is an area that I haven't dealt with often. So you will find that if I don't know the exact answer, I will contact the experts to get that information so I can give you the best possible information that I can.

I have been informed that the AUSA and the DOI Solicitor were prepared to talk to you, instead you sent them a very long email in which you tried to respond to some assertions made in a pending motion to dismiss as well as some statements. While we do not know how long you actually spent working on that email, you claim to have spent a lot of time. The recommendation that I received from the Solicitor would be to allow up to 8 hours with regard to preparation of that particular email.

We don't have any other calls or meetings planned in the near future, so there really should be no meeting for which you need to prepare, let alone for an "inordinate" amount of time.

You will see I've attached two documents for your review. The first provides information about the use of official time. The second comes from the Natchez Trace Parkway standard operating procedures. While the information does come from another park the source of the information provides the direction for all NPS units. Below are the citations, so there should be no questions about if they apply to the Grand Canyon and its personnel.

5 U.S.C § 63 Leave; 5 C.F.R. § 630.209; 5 U.S.C § 6302(d);
5 C.F.R. § 630.402; 5 C.F.R. § 630.501; 5 C.F.R. 630.502(a);
37 Comp. Gen 439
Personnel Bulletin NO:15-05 dated July 20, 2015 - Family
Medical Leave Act

Elston, I believe that we will be able to work together well over the next few months as long as we are operating from the same set of expectations. This basic understanding about leave and official time will be the foundation from which all else will stem. Moving forward, my expectations are for you to follow the leave requesting procedures outlined and to contact me in advance concerning the amount of official time you anticipate  you may need so that I can review and make the appropriate determination

Please let me know if you have any questions.

Mary

--
Mary Risser, Acting Superintendent
Grand Canyon National Park
P.O. Box 129
Grand Canyon, AZ 86023

928.638.7945 (office)
662.308.8829 (iPhone)

"Quotes found on the internet are not always accurate." Abraham Lincoln



**2 attachments**

 **2011- Use of Official Time.1.pdf**
60K

 **AD08.1 - Leave 5.25.2018.pdf**
471K

11/23/2019                    DEPARTMENT OF THE INTERIOR Mail - Official Time and Leave Procedures



Stephenson, Elston <elston_stephenson@nps.gov>

## Official Time and Leave Procedures

**Stephenson, Elston** <elston_stephenson@nps.gov>                    Thu, Nov 21, 2019 at 10:14 AM
To: "Risser, Mary" <mary_risser@nps.gov>

Mary,

Good Morning.

Thank You...lots to read in the references. I haven't cracked them open yet.

There was the time of the calls and preparation. I've been doing the homework through the nights and getting with people during the day.

That is what I meant by inordinate.

Respectfully, as I have a better sense of what is happening---court submissions, counseling, deadlines. I am in a better position to determine what my needs are, what my deadlines and requirements are.

This is a weeks long (at least) process.

I did not mean that I was going to be solely doing this for a week. But that there would be times when I would have to attend events or step away for a phone call for privacy purposes.

Mary, this is new to me too. And frankly, didn't think I'd end up 'here' in a million years.   : (

I have and will endeavor to keep You informed.

Thank You


Sincerely,

Elston
928-255-8727
[Quoted text hidden]