Elston L Stephenson (Plaintiff, Pro Se)
Case 3:19-cv-08268-DLR
P.O. Box 129
Grand Canyon, AZ 86023
January 13, 2020

U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this corrected copy of **RESPONSE** to **MOTION TO DISMISS** in the case of **STEPHENSON V DRAPEAUX**. This is to supersede "ANSWER" to **MOTION TO DISMISS** in the case of **STEPHENSON V DRAPEAUX** dated January 11, 2020.

Thank You.

Sincerely,

Elston L Stephenson

## RESPONSE

Your Honor, the Court will find that the facts establish a *prima facie*, and meet all elements of stalking under 18USC §2261A and is ripe for Finder of Fact. Defendant was stalking Plaintiff's home. Defendant does not deny these basic facts of his actions and hints that this occurred on more than the one occasion when he was caught. On this basis alone Defendant's *Motion to Dismiss* should be Denied. Further, Defendant's multiple instances of documented, material perjury in this case before this Court should not only offend this Court and be a basis for Denial of *Motion to Dismiss*, but see Defendant prosecuted for Perjury as well. Additionally, as U.S. Attorney was alerted to documented proof of Defendant's perjury; this not only presents a

1

*Nix v. Whiteside*, 475 U.S.157 (1986) problem for the U.S. Attorney's Office, but *ABA Model Rules, Model Rules of Professional Conduct*, and even DOJ's own *Justice Manual* (Section 1752) problems as well.

Respectfully, it is asked that the Court please include and refer to Exhibits already in evidence.

U.S. Attorney argues to this Court—in fact the fundamental basis of U.S. Attorney's *Motion to Intervene* into this case is that Defendant was acting in "legitimate" government action when he was caught stalking. Plaintiff is seeking remedy under 18USC §2261A against several episodes of Defendant's stalking and inspiring others to stalk. Defendant also—in this case alone, and in several other instances has committed multiple act of perjury under 18USC §1621. The legal controversy and question of law ripe for Finder of Fact, and created by the U.S. Attorney's *intervening* is whether Defendant's stalking and Defendant's perjury are 'legitimate acts' covered by USA's premise. The Court would find itself among many who would ask "Isn't the U.S. Attorney supposed to be on the side prosecuting 2261 stalking and 1621 perjury?" Denial of *Motion to Dismiss* would allow opportunity to not only examine and answer this controversy, but also innumerate Defendant's multiple instances of perjury. This is in the Court's interest as well as Plaintiff's, and Justice's.

Secondly, U.S. Attorney dismantles its own defense by stating all at once that Defendant was just doing his job "legitimately", then, in virtually the next breath Counsel argues that Plaintiff should seek remedy and safety from Defendant's stalking—not before this Court, but before the EEOC. If Defendant was just doing his job "legitimately" as Counsel first attempts to sell to the Court; then there would be no reason to try to convince the Court that Defendant's *illegitimate* acts should be addressed by the EEOC. Counsel's indecisiveness about which defense to choose—"I was just doing my job" or "My stalking conduct should be addressed, but in another forum" should be cross examined, and tested before a Finder of Fact. For this reason alone *Motion to Dismiss* should be Denied.

Thirdly, Your Honor, Defense's—U.S. Attorney's assertion that this is an EEOC matter as a way of denying Plaintiff access to 18 USC § 2261A is made on the basis of Plaintiff's race alone. This is proved by simply examining the fact that if Plaintiff were white—not in a 'protected class'; the U.S. Attorney would not

2

be able to make such an argument. This federally attempts to deny Plaintiff *'equal access'* to 18 USC §2261A and this Court itself on the basis of his race and is therefore a violation of the Constitution—(at least) Section 1 of the Fourteenth Amendment. Defendant's *Motion to Dismiss* should not only be Denied so that this can be tested before a Finder of Fact, but also because it clearly serves as grounds for Appeal, later.

Your Honor, Plaintiff turned to this Court because, in this Culture of Fraud, GRCA Superintendent 2, NPS Intermountain Regional Headquarters, and others falsified—defrauded Plaintiff protection of the DOI's DO 16E Harassment protocols and investigation filed in response to Defendant's stalking—never even interviewing Plaintiff or the eye witness who caught Defendant stalking Plaintiff's home, before returning endangered Plaintiff to his stalker's 'supervision' (Exhibit C). As the Court listens to the Witness' statement (Exhibit A-1) it will find him credible. He was so alarmed by Defendant's stalking that he broke from his work routine to go pound on Plaintiff's door to warn him once 'the coast was clear'. Testimony shows that not knowing that Plaintiff was out of town (in LA) at the time, Witness was so distressed that he went out of his way to go to Plaintiff's office when Plaintiff returned 3 days later to warn him—even pacing the hall several times to wait for Plaintiff to finish with safety business with another NPS employee inside. What should startle and chill the Court most is the end of Witness 1's statement where Witness, unprompted, goes into shocking detail and describes the brutal, ceaseless campaign of retaliation against and mistreatment and persecution of Plaintiff by Defendant and other senior-most GRCA leadership for doggedly going about his job of keeping Grand Canyon's workers and visitors safe—Motive. Respectfully, Deny *Motion to Dismiss*.

Plaintiff, a 25-year retired U.S. Army officer, former attack helicopter pilot, and leader who served 5 years on this Nation's frontlines is the product of decades of mentors, leaders, and a culture of Integrity. He was appalled when he came upon a DOI, NPS, IMR, and GRCA culture where falsified statements, falsified documents—fraud was the norm. Worse; was a culture where workers and visitors alike were being place in danger with Depraved Indifference, intimidating workers into silence, and even cover-up at all levels of GRCA,

NPS and DOI. This is established in Exhibits already submitted and will be proven in Court by subpoenaing and deposing witnesses at all levels.

If allowed before this Court, Plaintiff will demonstrate Motive for Defendant and other to do him harm. Plaintiff will demonstrate a clear and repeated fact pattern of Depraved Indifference as every time that Plaintiff (arguably one of NPS' most expert, experienced, and formally trained Safety Professionals) found a situation which could result in death, he took it first to the GRCA Superintendents. Evidence already submitted will show that they failed or refused to take action each and every time. And that when they failed to take action, Plaintiff took it directly to the Secretary of the Interior and the DOI Inspector General; uranium (Exhibit D), failed AEDs, falsified helicopter accident investigations, and more. Denying the *Motion to Dismiss* will allow Defendant to firmly establish these as Motive for Defendant and others targeting him.

Allowing this case to go forward—evidence will demonstrate how Defendant and GRCA Superintendent 2 were so intent on inflicting maximum harm on Plaintiff that they violated DOI/NPS regulations as they plotted to deny him professional training required to maintain his hard earned Safety certifications. The intense desire to inflict maximum harm on him extended to forcing him to pay out-of-pocket for this required training. This intensity to inflict maximum harm on Plaintiff went even further as they violated OPM regulations and forced him to burn personal leave to attend the training. The Court will see that this plot to inflict maximum pain on Plaintiff worked as he and his family were forced to skip to house payments in order to fund the training in order to not lose his certification that DOI/NPS benefits from. As a result of Defendant and GRCA Superintendent 2's actions, Plaintiff is now on the brink of foreclosure—peppered with near-daily collection phone calls and emails.

Evidence will demonstrate that this is but just one such instance. Instances such as Defendant and GRCA Superintendent conjuring up suspending Plaintiff in part for coming to work early, falsifying AWOLs, and targeting Plaintiff for reporting fraud such as Superintendent 2's falsifying official statements and even falsifying documents to OSHA in order to 'beat the rap' on OSHA citations (Exhibit J) are many.

Evidence will also demonstrate that Defendant began a 'crack down' on Plaintiff because he learned that Plaintiff was seeking to work with the U.S. Attorney's Office and OSHA to report the widespread fraud.

Denying *Motion to Dismiss*—allowing Justice to move forward will allow evidence which will incontrovertibly demonstrate Defendant's Motive and justification for Injunction Against Harassment.

Finally, Denying Defendant's *Motion to Dismiss* will allow Plaintiff to demonstrate that the danger to Grand Canyon National Park's workers' and visitors' safety by this Culture of Fraud is not merely an abstraction or notional. The October 28, 2019 incident (Exhibits S, S-1, S-2) of a helicopter flailing wildly out of control before desperately jettisoning—raining 5,000lbs of steel piping onto the Park of workers and visitors below was a direct result of fraud in falsifying an investigation of a helicopter incident on October 7, 2019. This helicopter brushed a live power line which knocked out power to the computerized SCADA control system—resulting in the failure to pump water to the entire Park. Evidence will show that these fraudulent 'investigations' avoided interviewing key witnesses, and no 'investigator' even went to the accident scenes. Evidence will show that Plaintiff—arguably one of NPS' most formally trained and experience aviation accident investigators, hiked the 11 miles down and back into the Canyon to conduct his own serious investigation. And that he found that the root causes of the first accident were also the root causes of the second. And had a serious legitimate investigation been conducted in the first instance, the second would have been prevented. The Court will find that in this Culture of Fraud, are attempts to hide the dollar amount lost in this entirely preventable dropping of the steel piping—likely in the tens of thousands of dollars.

As the Court will be shocked by the sight of the video footage; the Court will also appreciate that it was only a matter of luck that someone did not get killed as a result of this Culture of Fraud. Evidence will show that just as in the other incidents; Plaintiff first took these to the GRCA Superintendent's Office. When they failed to take action, Plaintiff took these potentially deadly incidents and fraud directly to the Secretary of the Interior and DOI Inspector General. And that these types of incidents and reporting are the Motive for action

against Plaintiff which culminated in Defendant's stalking him and ending up before this Court. Please Deny *Motion to Dismiss* in the interest of Public Safety.

You Honor, Defendant and Counsel would like this Court to believe the folly that Defendant was some sort of 'crime fighter' on a stakeout fighting crime. Respectfully, the Court should not believe this. This is Defendant's fallback alibi once he gets caught; his *modus operandi*/M.O. He tried the exact same alibi as he was caught lying and swindling Superintendent 1 by the DOI IG in *IG Report 18-1188* (Exhibit G). In fact, in this instance, he claimed that he was a 'crime fighter' *protecting Plaintiff*. At all rates, the assertion that Defendant was on a stakeout approved by Superintendent 2 is in controversy and is contradicted by evidence—Exhibits already before this Court and should be tested before a Finder of Fact by Denying *Motion to Dismiss*.

Your Honor, respectfully, Denying the *Motion to Dismiss* will allow U.S. Attorney's suggestions, Defendant's credibility—along with witnesses to be subpoenaed and deposed under threat of prosecution for perjury—to be examined, cross-examined and justly weighed before a Finder of Fact.

While overwhelmed by the U.S. Attorney and DOI Solicitor; I regard the Courts as 'The Great Leveler'.

Defendant meant me harm when he came to my house. I can prove it in Court.

I pray that Your Honor—this Court allows me the opportunity by Denying *Motion to Dismiss*.

Thank You, Your Honor.

Respectfully Submitted,

*[signature]*

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

# EXHIBIT S

1/13/2020 DEPARTMENT OF THE INTERIOR Mail - Stephenson Federal Court Material v DOI/NPS - Falsified/Faked Aviation Accident Investigations

Case 3:19-cv-08268-DLR Document 26 Filed 01/14/20 Page 8 of 11



Stephenson, Elston <elston_stephenson@nps.gov>

# Stephenson Federal Court Material v DOI/NPS - Falsified/Faked Aviation Accident Investigations

**Stephenson, Elston** <elston_stephenson@nps.gov>                      Wed, Dec 11, 2019 at 7:29 AM
To: David Bernhardt <dwbernhardt@ios.doi.gov>, Mark Greenblatt <mark_greenblatt@doioig.gov>

Secretary Bernhardt, General Greenblatt

Good Morning.

Please receive this Motion that is before the U.S, District Court (Phoenix). And notification that I intend to take this to trial to stop the stalking of me and other harassing, targeting conduct. And regrettably, I have had to turn away the much appreciated IG investigations to investigate the recent falsified 16E process and another bizarre extra-IG/legal investigation targeting me because, although only a pre-law grad and not a lawyer; I could see that they presented at least 4th, 5th, and 14th Amendment violation problems as the U.S. Attorney is involved, and this matter is before a federal court. This is particularly true if the persons, processes, and 'investigations' involved are deposed.

Sir, please also urgently know that I have encountered what appears to be 2 instances of 'pencil whipping' aviation accidents. I have no indication that this is more widespread than the two that I have personally encountered.

Mr. Secretary, Inspector General, respectfully, I promise You if we don't conduct serious, legitimate investigations they will not withstand the litigations which will accompany accidents like these which are statistically certain to occur during the upcoming, massive Transcanyon Pipeline construction---particularly in the case of serious injury or loss of life.

Returning to the court matter; Sir, unfortunately, the GRCA Deputy Superintendent committed several instances of perjury with the U.S. Attorney's Office, and this federal U.S. District Court (Phoenix).

Sir, unfortunately, You will find in the Motion several other instances of falsifying statements and documents by the Deputy Superintendent and Superintendent 2 along with instances of others; falsifying the uranium reports by IMR, falsifying the 16E investigation by Superintendent 2, falsifying OSHA statements and documents by Superintendent 2---nearly 2 dozen instances of falsified statements in EEOC deposition/testimony by Deputy Superintendent that all paint a picture of a culture that I have been reporting to You virtually since joining NPS. These are included to demonstrate and 'walk the Court' through a 'Pattern of Conduct' which culminated with the GRCA Superintendent feeling confident, in his sense of impunity to show up (stalk) my home in retaliation. And to illustrate to the court the impropriety by stating the obvious; if I were a female, no one would be arguing otherwise. He would likely be out of a job.

A court of law before a federal judge should firmly establish, find, and pronounce these, and the culture as fact.

Please, Sir; in addition to felonies, this culture of loose integrity and looseness with propriety and the truth runs the risk of getting someone killed.

Indications are that NPS may be faking aviation accident investigations. While this material is not yet ready for court; this 70% local finding is enough to beg for action in the interest of preventing dramatic, potentially catastrophic accidents.

Sir, I have recently encountered serious problems with NPS' 'investigations' of helicopter accidents. These problems; namely that no one has gone to the accident scenes to conduct their 'investigation' or interview key witnesses may have led to Grand Canyon National Park's most recent jettisoning---dumping 5,000lbs of piping from the air onto the Park of visitors below.

On October 7, 2019 a Kaman 'KMax' K-1200 helicopter contacted 7.2kv/12.47kv powerlines with the loadline of the lift it was attempting to extract from Grand Canyon's Indian Garden's pumping station which is responsible for providing water to the entire Park. The incident knocked the computerized SCADA pumping system offline and unable to pump water. Video shows the pilot was in great distress with his aircraft. Likely exceeding the 25deg pitch limits. (video attached)

Just 21 days later, on October 28, 2019 a Boeing CH-47 attempting to sling load 5,000lbs of water piping into the very same Indian Gardens pumping station experienced 'settling with power'/vortex ring state and frantically dumped/jettisoned the 5,000lb external load onto the Park below in an effort to prevent the huge aircraft from crashing into the ground.

1/13/2020 DEPARTMENT OF THE INTERIOR Mail - Stephenson Federal Court Material v DOI/NPS - Falsified/Faked Aviation Accident Investigations

Case 3:19-cv-08268-DLR Document 26 Filed 01/14/20 Page 9 of 11

Nearby are permanent rest spots and makeshift campsites/rest sites heavily trafficked by visitors. Luckily no one was injured or killed. (video attached)

Sir, I hiked the 11 miles down and back to Indian Gardens to conduct my investigation on October 26, 2019 when it became clear that no serious investigation had been conducted---no ground witnesses (such as the ones filming the video and reacting to the wire strike, the APS power company which is troubled by this, or the responding SCADA expert) had been interviewed. And most importantly; no 'investigator' went to the site---even though the incident was 'investigated'. What I found was shocking to any experienced or formally trained accident investigator or aviator. The landing zones (LZs) and pads were so overgrown with trees that lowering an external load was literally like threading a needle. It was surrounded by trees at least 20-30ft high. The LZ pads are literally covered with the shadows of the canopy of the trees above. (video attached). At 3,290ft MSL and accounting for DA; aircraft can easily be operating at conditions equalling 5,000-6,000 feet---the 'high' of the venerable 'hot, high, and heavy' condition that helicopter pilots worry about. (attached)

The video shows that crews have been flirting with disaster by flying so close to live electrical lines---likely for years.

More importantly however, the trees force the helicopters (with their 50ft lines + 10ft for loads) into 'out of ground effect' (OGE) hovers devouring precious power (power required) and leaving little-to-no power available margin in case of emergencies.

Conducting a serious investigation---going to the accident scene/site of the first incident would have resulted in the changes that would have averted the second accident.

A legitimate, serious investigation would have readily observed the trees as hazards and had them chopped down or greatly trimmed.

When the CH-47 arrived, the trees forced the aircraft into a 90ft + OGE hover (50ft line + 10ft load + 30ft tree). According to Hover Power Charts (attached) in the operator's manual (which depict 80ft as the top of the IGE range); forcing the aircraft into the overgrown LZ deprived it of the power available of 'in ground effect' IGE (less power required) would have provided. And would have taken less time (surgical skill) to place the load on the LZ.

Further, this task (delivering the piping) was an 'audible' hastily called for and with hastily/little planning. The deliberate mission was delivering material to Phantom Ranch at the very bottom of the Canyon. The 'low time' in 'type' pilot had just earlier been repeatedly landing loads at Phantom Ranch---a wide open LZ with no obstacles and the ability to execute in favorable IGE conditions. After several loads all day long, in favorable conditions in an LZ, literally the size of a football field, this inexperienced pilot likely developed a 'muscle memory'. When suddenly tasked with landing a load in higher DA, obstacled LZ, in OGE, 'Negative Habit Transfer' likely took over and this pilot in an aircraft which should never have had power problems---and mechanically attempting the same maneuver exceeded the 300ft/min rate of descent needed to induce vortex-ring-state, and hastily 'punched' his 5,000lb load of piping to prevent crashing into the ground. Again---with hikers and campers all around Indian Gardens; it was only luck that someone below did not get killed.

Conducting a legitimate investigation, instead of 'pencil whipping or 'desktop investigating' on October 7, 2019 would have eliminated the trees and prevented the October 28, 2019 accident. A simple look at the charts shows that 10-15% power required (IGE) to hover could have been reduced. Keeping the pilot out of the near 100% power required (OGE)---and necessary for settling with power. And wasting likely thousands of dollars in lost material.

Sir(s), as I continue my investigation, I have found that the local power company, APS, has and has been harboring serious concerns---apparently for years concerning our dangerous operations around the live Indian Garden powerlines.

This 'settling with power' incident was entirely preventable, and is precisely among the potentials that I addressed in the 'white paper' that I wrote for NPS to address the upcoming onslaught of helicopter lift operations as part of the Transcanyon Pipeline Project. (attached). Again, Sir; it was only luck that no one got hurt or killed. Clearly, the pilot and ground crew mentioned and were concerned enough about the trees to continually mention them as they attempted this surgical maneuver. (video attached)

The CH-47 clearly and terrifyingly exceeds the ±30° pitch limit. The KMax exceeds or comes close to exceeding the ±25° pitch limit. (attached)

At the very least, having failed to conduct a proper accident scene investigation in the first instance; any formally trained, experienced, expert investigator would certainly conducted a proper accident scene investigation after two consecutive accidents at the exact same LZ less than 3 weeks later. Even a non-investigator layman would have begged the question "What the heck is going on at that LZ?!"

1/13/2020 DEPARTMENT OF THE INTERIOR Mail - Stephenson Federal Court Material n DOI/NPS Falsified/Faked Aviation Accident Investigations

Case 3:19-cv-08268-DLR Document 26 Filed 01/14/20 Page 10 of 11

I have been vetting my findings with experts---namely the professionals at the Naval Safety Center's School of Aviation Safety, and others that I know. I particularly would like to get with the Aviation Aeromedical team to assess the repetitive task saturation and the onset of 'Negative Habit Transfer' (which fills the annals as root cause analysis of crashes) introduced by having that CH-47 pilot repeatedly, conducting open LZ, favorable PA/DA IGE conditions all day long, then being called into a 'hey you' hasty mission into more difficult conditions. Unfortunately, the School of Aviation Safety building is the site of the last week's Pensacola mass shooting. Luckily none of the SAS staff was injured. But it will take a while to complete my investigation and analysis.

Respectfully, applying HFACS (attached); we may see this again with the huge Transcanyon Pipeline construction.

Sir, it may also be that those tasked with investigating aviation accidents have neither the technical knowledge, formal training, or experience to be tasked with conducting such vital investigations. At all rates; the absence of a serious, thorough, professional investigation inarguably denies aviators and the aviation community vital lessons learned so as to prevent 'repeats'. This is a crucial legacy ethos of the aviation community as expressed in the 'white paper'.

Again Mr. Secretary, Inspector General, respectfully, I promise You if we don't conduct serious, legitimate investigations they will not withstand the litigations which will accompany accidents like these which are statistically certain to occur during the upcoming, massive Transcanyon Pipeline construction---particularly in the case of serious injury or loss of life.

Mr. Secretary, Mr. Inspector General, respectfully, my hope is that all can agree that the videos---having helicopters dancing with live powerlines and raining thousands of pound of steel (or whatever) without warning on Grand Canyon National Park and its visitors and workers is unacceptable.

Sir, I keep running into these lapses of Integrity. Respectfully, they do not just pose moral imperatives, but safety as well.

Thank You, Sir.


Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

ps. Sir, please allow me multiple sends because of the size of attachments---such as the audio and video files

p.s.p.s. Sir, I will include my qualifications to validate my credentials along with 22 years as a safety expert and 19 years as an aviation accident investigation expert from which I make my assessment.

**12 attachments**

- **Stephenson Affidavit - 17.7 Video Helicopter Incident.3gp**
  464K
- **Stephenson GRCA Helicopter Accident Invest - Indian Gardens Elevated View.3gp**
  972K
- **Stephenson GRCA Helicopter Accident Invest - Indian Gardens Site Ground Level.3gp**
  962K
- **Stephenson Case 3-19-cv-08268-DLR Stip for Extension (Full without MTD)(12-3-2019).pdf**
  7347K
- **Stephenson - White Paper Pipeline Aviation Safety.pdf**
  421K
- **Stephenson GRCA Helicopter Accident Invest Diagram (Indian Gardens).pdf**
  48K
- **Stephenson GRCA Helicopter Accident Invest - CH-47 Hover Power Chart (Dash -10).pdf**
  71K
- **Stephenson HFACS (Human Factors Analysis Classification System) Primer.pptx**

1/13/2020 DEPARTMENT OF THE INTERIOR Mail - Stephenson Federal Court Material in DOI/NPS Falsified/Faked Aviation Accident Investigations

Case 3:19-cv-08268-DLR Document 26 Filed 01/14/20 Page 11 of 11

288K

📄 **Kaman K-MAX_K-1200 Operator's Manual (Limits Excerpt).pdf**
33K

📄 **TM_1-1520-240-10 (CH-47D Operator's Manual)(Limits Excerpt).pdf**
160K

📄 **Stephenson - Degrees + Safety Certifications 2.pdf**
728K

📄 **Stephenson - Safety Certifications 1.pdf**
2962K