Elston L Stephenson (Plaintiff Pro se)
Case 3:19-cv-08268-DLR
P.O. Box 129
Grand Canyon, AZ 86023
August 26, 2020



U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this SOLICITATION FOR *AMICUS CURIAE* (to law firms and stakeholders) for the Court's record in the case of STEPHENSON V DRAPEAUX.

Thank You

Sincerely,

Elston L Stephenson

## SUBMISSION

Your Honor, respectfully, if it pleases the Court, Plaintiff submits for the record this SOLICITATION FOR *AMICUS CURIAE* to law firms and stakeholders in support of Plaintiff's Motion for MANDATORY INJUNCTION to order the Department of the Interior to fix outstanding, potentially deadly safety and environmental issues identified in this case, and a 5-year court oversight of Grand Canyon National Park's safety program.

Thank You, Your Honor.

Respectfully Submitted

*[signature]*

Elston L. Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

Respectfully Submitted

Elston L. Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

Good Morning.

My name is Elston Stephenson, Plaintiff in a federal court case # 3:19-cv-08268-DLR in U.S. District Court, Phoenix Arizona.

I am contacting You and your firm to ask that You please urgently submit an *amicus curiae* brief to support my Motion for a federal court to impose a 5-year court oversight of Grand Canyon National Park's safety program, and a mandatory injunction to fix deadly safety hazards, systemic abject racism, and deadly/damaging environmental hazards; all of which threatens the lives and wellness of millions of workers and visitors, along with the environment and wildlife of this precious national and global treasure.

I have done all the work myself. Although a recent pre-law grad (Legal Studies, UMUC, 2018), I am not a lawyer. Frankly, I do not know how I've gotten this far.

Please, I beg your help in your area of expertise to convey to the court the dangers posed in the respective matters, impacts, recommendations for corrective action, and remedy obligations as stated in the Motion.

Please find that I've tried to be helpful in organizing the Exhibits and filings in the accompanying disc.

You will find safety danger examples such as the videos of the helicopter accidents—particularly the 5,000lbs of steel piping wildly and without warning dropping onto the heavily trafficked Bright Angel trail below simply shocking. This is especially true when considering it could have killed anyone below. (Exhibit S series)

You will find examples of the systemic culture of racism at GRCA equally shocking—what I've endured and what others have endured. The treatment of Native Americans here amounts to a systemic, abject, chronic humiliation. The thought of a culture where an African-American worker feels compelled to daily drive around with his 'papers' on his dash so that he doesn't get shot for 'driving while black' is staggering. You'll also find a essay that I wrote to the DOI Secretary, NPS Director, and several US Congressmen and Senators describing coping mechanisms—'small victories' as we called them in SERE-C to cope day-to-day. (Exhibit Z-17)

You will find the 'uranium map' deliberately dubiously designated so as to keep secret from the workers and the public their uranium exposure on the highly trafficked trail to iconic Hermit's Rest. If you look closely, you will see that the uranium and its radiation runoff leaches into water and a collection/pooling point—likely doing long-term damage to underground aquifers and sources leading 'who knows where'. (Exhibit Z-13)

In all of the Exhibit correspondences, you will find that I have—in every instance, reached out to the supervisory chain—often, ultimately all the way to the very top to fix the problem or report wrongdoing. Respectfully, if they would have taken appropriate action, this matter would not be in federal court.

I do not know how *amicus curiae* works, exactly. Please forward your *amicus* brief directly to the court. Please, also, forward a copy, additional information requests, or any advice you may have to me.

As I mentioned earlier, I am representing myself *Pro se*. I could use a little help on that end too.

Thank You.


Very Sincerely,

Elston L Stephenson

Elston L Stephenson (Plaintiff Pro se)
Case 3:19-cv-08268-DLR
P.O. Box 129
Grand Canyon, AZ 86023
June 16, 2020

U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this MOTION FOR COURT ORDERED MANDATORY INJUNCTION to be issued to the Department of the Interior to protect Grand Canyon National Park, its workers, and its visitors from unabated deadly safety hazards identified in STEPHENSON V DRAPEAUX.

Thank You


Sincerely,

Elston L Stephenson

## MOTION

Your Honor, respectfully, Plaintiff seeks an Order issued by this Court to the Department of Interior (DOI) to fix the dangerous, life-threatening, and environmental hazards identified by Plaintiff in this case.

The Court will recall Plaintiff submitting into evidence several clear and present dangers to the lives of the workers and visitors of Grand Canyon National Park. In the half-year that this case has been before this Court, and despite full awareness of these dangers; DOI has taken no action on any of these. In fact, DOI has demonstrated a depraved indifference to them and hostility to Plaintiff for finding and reporting. While the Department may ignore the dangers; Plaintiff prays that this Court cannot, and orders the Department to fix these dangers and orders that Grand Canyon National Park safety be subject to Court oversight for 5 years.

1

Respectfully, Your Honor, Plaintiff also asks that the Court receive *amicus curiae* briefs from stakeholders with compelling/vested interests and expertise in the impacts to safety, the life-threatening and environmental hazards identified by Plaintiff, and the fiduciary of good stewardship of this precious national and global treasure.

The Court will find DOI's precise obligations to be determined in *amicus*, and that this case urgently meets the traditions of Mandatory Injunction remedy. GRCA/NPS/DOI is fully to blame for the safety dangers in question. The lives of workers and visitors are at stake. And it has only been a matter of luck that someone has not been killed or seriously injured so far. Someone dying would obviously represent an *irreparable harm* if the Injunction is not granted. In the case of helicopter accidents, the building of a new *Transcanyon Water Pipeline* slated to begin this year will see flights go from 10 per day to approximately 70 per day. Most, exactly the same profile of the helicopter dropping 5,000lbs of piping onto the Park below—increasing the exposure rate and almost guaranteeing a repeat if unaddressed. The Court will also find that while it is traditional to determine in Injunctive Relief the good faith of DOI; DOI has done nothing to address these matters—demonstrating *no faith*. In fact, evidence has shown that several times it has broken the law—falsifying documents, deleting documents, stamping documents with dubious designations to hide dangers from the public (e.g. the 'uranium map' violating PEPC, NEPA, and CERCLA), 'secret pacts', authoring dubious 'reports' to launder dangers, intimidating workers into silence, and a 'Culture of Fraud'. There is nominal cost as Plaintiff possesses the expertise to act as Court's Executor. There is no burden as these are legal requirements—these are things that DOI should be doing now. While there are laws on the books such as 29CFR §§1910, 1926 for OSHA workplace, and FAR/AIM Parts 91 and 135 for aviation operations, CERCLA, NEPA, and even 18USC §1001, 18USC §1621, and 18USC §401; GRCA/NPS/DOI has blown though these with impunity. It is in the absence of *oversight* that these dangers—this dangerous culture has flourished.

The Court will notice the hostility toward Plaintiff for recently relaying workers' being scared of contracting and being killed by the corona virus—COVID-19 as required by the duties of his job and position description (Exhibit Z-10). The scathing email's author could have shown concern for workers' wellness. She could have very well simply stated "I see that they are scared of dying of this killer virus…" Instead, she revealed a hostility toward the workers for being scared for their safety and their lives. And if Your Honor looks closer, there is also a very personal berating hostility toward Plaintiff. Plaintiff has asserted all along—in fact, Plaintiff's reason for seeking a restraining order against Defendant for stalking his home is because Defendant held/holds this very same hostility toward Plaintiff—as you see here; for raising safety concerns. This is why (Motive) Defendant was caught stalking Plaintiff's home and why this case is before this Court.

Your Honor, please; an even closer look still, reveals that this person signed the email "Acting Superintendent, Grand Canyon National Park" and dated "5/12/2020". Your Honor, evidence (Z-11) clearly shows that this person was <u>not</u> the Superintendent of Grand Canyon National Park. The real Superintendent took over 5/8/2020. Indisputable evidence shows Author even actively acknowledges as much.

This fraud is currently the subject of an Office of Special Counsel (OSC) complaint and investigation.

Clearly this is yet another example of fraud (just like the falsified documents by Superintendent 4 to OSHA of training that never happened; and falsified inventories of dead/obsolete AEDs to show them 'good'; the deleting from SMIS of the firefighter injured—burned as she was isolated, separated, and her position overrun by fire (possible OWCP insurance fraud); the two falsified helicopter accident 'investigations' including the wild dropping of 5,000lbs of steel piping onto a heavily trafficked Bright Angel Trail below; falsified uranium reports deleting dangerous readings; the 'secret pact' keeping the facts of the uranium exposures away from the workers and public, and more) in what Plaintiff has demonstrated through indisputable evidence as GRCA/NPS/DOI's 'Culture of Fraud'.

The Court would be understood to ask, "Why would this person commit fraud to 'smite' Plaintiff?" "Why would Defendant commit perjury?" "Why do so many senior officials feel such impunity to commit crimes and risk prosecution regarding the safety of the workers and visitors they are charged to protect?"

Exhibit (Z-12) shows that dogged inspection and investigation by Plaintiff in November 2019 revealed that the Flagstaff, Coconino Forestry building (housing about 25 GRCA employees and at least 50 federal workers of other Agencies) had deliberately let the entire fire protection system lapse—posing danger to all workers and the public in the building. He found an Emergency Exit sign was inoperative, and every fire extinguisher in the building was let to expire over a pricing dispute with the servicer. Evidence shows that Plaintiff properly and promptly reported it to GRCA leadership. Defendant was tasked with fixing it. Defendant falsified that the problem was fixed. When Plaintiff dutifully returned to verify, he not only found the Emergency Exit sign still broken and every single fire extinguisher still expired, but his deeper investigation found the building's entire fire sprinkler system, the entire fire alarm system, and fire detection system to have lapsed as well. Plaintiff doggedly found the *entire* fire protection system to be unreliable—which endangered the lives of upwards of 100 people in the build at a time. When confronted with Defendant's fraud, Plaintiff called OSHA. OSHA came out that morning—driving all the way up from Phoenix and confirmed the violations. When the building's owner reportedly 'fixed' the problems, Plaintiff, as his duty required, returned to verify. He insisted on a fire alarm drill as required by law. When the drill was conducted none of the alarms on the entire second story (housing GRCAs employees) sounded. To this date, no test has been conducted in which any fire alarm on the second floor can be heard or confirmed to work.

The 2015 'uranium map' (Exhibit Z-13) clearly shows GRCA/NPS/DOI's intent to hide from workers and the public their exposure to uranium on the heavily trafficked road to Hermit's Rest. Plaintiff clearly recalls young ACC workers laying on the ground resting and eating on that uranium laden terrain for hours at a time as they conducted trail repairs over several days. Plaintiff himself was sent into the 'bull's eye' of that red target several times as these hazards were knowingly and deliberately withheld from him.

4

In addition to the Culture of Fraud, Plaintiff's dogged investigation of the helicopter accidents found a fatal flaw which also serves as an *Indicator* to any formally trained investigator. Respectfully, it should shock the Court to know that entire National Park Service's *Director's Manual for Aviation Management (DM-60)* has just 2 pages for *Accident Mishap Procedures. Aircraft Mishap Documentation* has only the title (the rest is blank). What should shock the Court most is that in regard to accident investigations; "NPS RD will determine within 14 days whether an internal NPS review of an aviation mishap is necessary". This is just to make the *decision* to investigate. Hopefully, the Court will agree that the perishability of physical evidence, witness statements (much less locating witnesses), and weather damaging a site suggests that this is not a serious program. In professional safety jargon, this is a dangerous *Indicator*, Your Honor. (Exhibit Z-14)

This fatal demonstration of DOI/NPS' commitment to the safety and health of its workers and visitors is amazingly replicated as evidence shows that opening the DOI/NPS *Director's Order 50B National Park Service Occupational Safety and Health Program* and turning the page to *Radiation Protection* [Uranium] will find "RESERVED" and a completely blank page (Exhibit Z-15). This is 2 years after Grand Canyon's infamous uranium crisis and several other parks having uranium dangers. DOI is aware and *chose* to do nothing.

Likewise, in this killer COVID-19 pandemic, workers opening *'50B'* seeking measures that would save their lives would similarly find a blank page and "RESERVED" at the top of the *Infectious Disease Control* section. Your, Honor, these are *Indicators* that any certified professional ISO 45001 or OHSAS 18001 auditor (such as Plaintiff) would note as a 'tell'—evidence of DOI's commitment to safety despite its words. It is also further evidence that left to its own devices, DOI will continue to do nothing for safety. It must be *compelled*.

It should shock and deeply offend the Court to find, predictably, that GRCA/NPS/DOI resorted to the very same tactics of false and misleading statements to its workers and community even during the ongoing deadly corona virus (COVID-19) pandemic. Defendant himself, shamelessly and without guilt or conscience on a 3/11/2020 'Stakeholder's Call' misled the entire community upset that GRCA was late in taking any action as the pandemic exploded across the country. As GRCA tried to slow major concessioners Xanterra and

5

Delware North's closure measures, DOI/NPS/GRCA fumbled closing. Defendant deliberately misled them into believing that DOI/NPS/GRCA had taken the earliest possible action by standing up an Incident Command System (ICS) that day when Plaintiff (a formally trained war planner) urged GRCA Superintendent 5 and the GRCA Park Senior Executive Team (PSET) to stand up the team weeks and days earlier (respectively)—even before DOI and NPS took such action at their Washington DC headquarters. Plaintiff's pleas were ignored by both the Superintendent and PSET (Exhibit Z-16).

Other 'misleading' events may have contributed to workers being needlessly exposed to and even contracting COVID-19.

As the United States deals with the deadly impacts of racism, experts and *amicus* will redouble that racism has safety and health impacts. Evidence demonstrates, and the Court will find that as with all the other safety and health dangers, DOI/NPS/GRCA—left to their own devices have chosen to do nothing about Grand Canyon's Racism. This includes years old Native American's complaints of being targeted and persecuted. This includes episodes such as one African-American so afraid of getting pulled over and shot (even in the Park) for 'driving while black' that he drives around with his 'papers' (registration, insurance, etc.) atop his dashboard so that he does not risk getting shot while reaching for them in his glove box. He even urged Plaintiff to share this with PSET (Exhibit Z-17), which Plaintiff did. PSET and the Superintendents have done nothing in the more than 2 years since it was presented to them. And even as an African-American family was humiliated and chased from the Park under the most vile, racist of circumstances just weeks ago.

Likewise, no action was taken when Plaintiff's investigation discovered that those on the lower end of the economic scale (usually people of color) were herded into a food price gouging situation. This arrangement, co-signed by GRCA/NPS/DOI, forced non-credit card holders to pay 13%-97% more for food at the very same General Store Tusayan than the General Store GRCA Park—in a 'food desert' with the nearest supermarkets being nearly 200 miles and 100 miles away roundtrip (Flagstaff, Williams respectively).

6

The entire community pitched in with a local pizza parlor donating free pizza, food pantries; free meals, compassion, and help on one end and the "the least among us" being victimized in their captivity with GRCA/NPS/DOI (perhaps unaware of the impact) as a co-signer to this arrangement on the other.

Evidence (Exhibit 18) shows that Plaintiff detailed and dutifully documented random disparities and wrote each member of the Park Senior Executive Team (PSET). GRCA/NPS/DOI was now fully aware of the impacts. Initially he was given a 'distribution/delivery cost' excuse by GRCA/NPS/DOI. Superintendent 5 summarily shut down the conversation by hostilely declaring "We can't to nothing. It's not on the Park."

The Court will recognize that there *were* things that could have been done such as convincing the Park store to take cash (if one store could take it so could the other), warning the workers, setting up buddy systems where a card holder could 'buy for' and immediately be paid by a non-card user, or ask the Tusayan store to set the same prices during the shutdown as nearly all of the traffic was of the local community of shared hardship. Magically, when the Park reopened; the store again accepted cash.

Plaintiff doggedly and dutifully waited at about 6am 5/22/2020 (Exhibit Z-18) to watch the delivery truck at the Park store then followed it directly to the Tusayan store just outside the gate. And on 6/22/2020 Plaintiff engaged a driver who revealed that his route was Phoenix to Tusayan store to the Park store.

Your Honor, same goods, same truck; the 'distribution/delivery cost' excuse was just another fraud.

Again, experts and *amicus* will attest that these, too, are safety and health dangers. And that despite being brought to the highest levels by Plaintiff; GRCA/NPS/DOI again *chose to do nothing* to fix them.

Exhibit Z-19 demonstrates that as Plaintiff brought the falsified helicopter accident investigations (complete with video), the falsified OSHA documents, the 'uranium map', the deleted burned firefighter, and more before the Park Senior Executive Team (PSET) on 2/24/2020, they were paralyzed into inaction.

The evidence demonstrates, and the Court will recognize that GRCA/NPS/DOI has failed at every major danger to life/safety and environmental matter brought to its attention in the past 3 years. Plaintiff

7

welcomes GRCA/NPS/DOI to identify to the Court a single instance where it has acted in the interest of safety without being compelled from outside.

Your Honor, it is because of these failures, and repeated, demonstrated propensity for outright hostility toward safety for the workers and visitors that Plaintiff asks that the Court *orders* DOI to fix these deadly dangers. These dangers have been before this Court for half a year. They were known to DOI for much longer. Left to their own devices, DOI has demonstrated no concern and taken no action to fix them. They could have very easily fixed them in the time that has lapsed if that was what they wanted to do. While the DOI can ignore that these could have killed people and still can; Plaintiff respectfully begs the Court not to show the same depraved indifference and hostility towards these peoples' safety—towards their lives.

Exhibit Z-20 demonstrates that during the 'uranium crisis' Plaintiff secured the mentorship of two Assistant Secretaries of Labor, OSHA Administrators—one Republican Administration, one Democratic Administration, but called it off for fear of tainting their honor and reputations with this 'Culture of Fraud'.

Likewise, Exhibit Z-17 demonstrates that Plaintiff wanted to invite the 44th President of the United States to Grand Canyon to celebrate its 100th Anniversary, but found Grand Canyon's Racism so bad and systemic (hovering around 1% African-American workers year-over-year in a country of 13%) that he did not want to taint the President with Grand Canyon's Racism and called it off.

The safety profession knows—*amicus* will attest, that it takes 5 years to establish a safety culture.

Your Honor, it is because of this repeatedly demonstrated 'Culture of Fraud' that Plaintiff respectfully begs the Court to impose a 5-year *oversight* with semi-annual reporting. (28CFR §76.20)

Because Plaintiff is intimately knowledgeable of these dangers, and because there is no one more uniquely and expertly qualified (Exhibit Z-21) in *all* of the areas than Plaintiff, and unmatched in proven expertise, thoroughness, and dedication; Plaintiff asks that the Court appoint him as the Court's Executor to verify action and conduct semi-annual reporting to the Court.

8

Your Honor, over 6 million people visit Grand Canyon National Park each year from all over the world. Over 2,000 people live here. Between 300 and 500 work here. Every single one of them is someone's loved one. Every single loved one of them is owed not having 5,000lbs of steel pipe raining down onto them and possibly killing them, not being exposed to uranium, not being abandoned and trapped by fire and records 'disappeared', not being racially discriminated against, and not being endangered by an Agency which takes no action to make/keep them safe. And when bad things happen, the American people deserve the truth; not to be targeted with lies, falsified statements, falsified documents, and schemes. Evidence shows that GRCA/NPS/DOI has indisputably failed—literally and demonstrably *choosing* not to look after these loved ones. These dangers discovered and reported by Plaintiff represent urgent and grave risks to life. This is why this Motion should be granted, Your Honor. It is very similar to the multiple court Consent Orders imposed on DOI as Grand Canyon National Park was found to be violating water quality safety. (Exhibit Z-22). Your Honor, it is difficult to imagine more dangerous circumstances affecting more people and with more merit for such action. If anyone would object to these safety measures, the outstanding question is why?

Thank You, Your Honor.


Respectfully Submitted,



Elston L. Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

9