1/11/2020

DOI: SMIS

| Case No. | Name | Job Title | Date | Location | Description | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2019-1001517 | JOSEPH DAWSON | PARK RANGER (INTERPRETATION) | Jun/19 | Grand Canyon South Rim Village Waldr | Exercising, Pack Test, etc. Pain/Swell Joint Arm or wrist Hoist, Sling Chain, Jack | | ✔ | 0 | 0 | ✔ |
| 2019-1001519 | KELLY CONFER | UTILITY SYS REPAIR-OPER | Jun/24 | ROARING SPRINGS PUMP HOUSE GRAND CAN | Back strain Lower back Wood | | ✔ | 0 | 0 | ✔ |
| 2019-1001764 | KEVIN DILLON | PARK RANGER (PROTECTION) | Jun/29 | IN THE STREET IN FRONT OF MY RESIDEN | Scratch/Abrasion Single hand Walking/Working Surface (floor, street, etc.) | | ✔ | 0 | 0 | ✔ |
| 2019-1001765 | CHARLES PARKER | MISC. CLERK AND ASSISTANT | Jul/3 | AT WORK, GRAND CANYON AZ | Strain, multiple Fingers Sngl Hnd Stress (physical) | | ✔ | 0 | 0 | ✔ |
| 2019-1001554 | CHRISTOPHER AHNLUND | FORESTRY TECH | Jul/11 | MURRY WILDLAND FIRE NORTH RIM | Obj in eye Eye Sngle Intern Walking/Working Surface (floor, street, etc.) | | ✔ | 0 | 0 | ✔ |
| 2019-1001766 | JEROME CHAVEZ | UTILITY SYS REPAIR-OPTR | Jul/16 | 2ND FLOOR, PRWWTP,PUMP ROOM GRAND CA | Strain, multiple Lower back Equipment Layout (Ergonomic) | ✔ | | | 15 | 0 | ✔ |
| 2019-1001767 | AVERY THOMAS | FORESTRY TECHNICIAN | Jul/20 | LARGE FIRE SUPPORT FOR THE CELLER FI | Strain, multiple Single knee Inanimate objects | ✔ | | | 1 | 0 | ✔ |
| 2019-1001768 | MICHAEL HARRINGTON | LABORER (MOTOR VEHICLE OPERATOR) | Jul/21 | NORTH KAIBAB TRAIL GRAND CANYON, AZ | Strain, multiple Single knee Walking/Working Surface (floor, street, etc.) | ✔ | | | 7 | ? | ✔ |
| 2019-1001769 | ADAM DOCKERY | MAINTENANCE WORKER LEADER | Jul/24 | BRIGHT ANGEL TRAIL BETWEEN 1.5 AND 3 | Strain, multiple Single Foot Walking/Working Surface (floor, street, etc.) | | ✔ | 0 | 7 | ✔ |
| 2019-1001770 | JOSE MARTINEZ | MISC TRANS/MOBILE EQUIP MAINT | Jul/30 | 1577 SHUTTLE BUS RD, AUTO SHOP GRAND | Obj in eye Eye Sngle Extern Liquid Chemical Toxic | | ✔ | 0 | 0 | | ✔ |
| 2019-1001771 | JANA IRVING | MISC. CLERK AND ASSISTANT | Jul/31 | GRCA, SOUTH ENTRANCE, LANE 5 GRAND C | Injury - NEC Ear Sngle Intern Vehicle, Privately-Owned (Includes Rental) | | ✔ | 0 | 0 | | ✔ |
| 2019-1001772 | DANTE FOWLER | LABORER | Aug/9 | NORTH KAIBAB TRIAL GRAND CANYON NORT | Strain, multiple Abdomen Nonmetallic, rocks, sand | ✔ | | | 8 | 8 | ✔ |
| 2019-1002113 | ANDREW SHOUSE | FORESTRY TECHNICIAN | Aug/10 | GRAND CANYON SOUTH RIM HELIBASE GRAN | Hernia Pelvis Physical Training -Tactical, Exercising, Pack Test, etc. | | ✔ | 0 | 0 | ✔ |
| 2019-1002114 | PATRICK MURPHY | MAINTENANCE WORKER LEADER | Aug/13 | KILAUEA IKI TRAIL VOLCANO, HAWAII | Inflam Joints Single knee Material | | ✔ | 0 | 0 | ✔ |

1/11/2020

DOI: SMIS

| Case | Name | Title | Date | Location | Injury | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Handling Equipment | | | | | |
| 2019-1002115 | MICHAEL HARRINGTON | MAINTENANCE WORKER | Aug/27 | HIKING ALONG KEN PATRICK TRAIL ON NO | Fracture Rib Walking/Working Surface (floor, street, etc.) | ✔ | | 13 | 13 | ✔ |
| 2019-1002803 | BRYAN STRUBLE | UTILITY SYS REPAIR-OPTR | Aug/30 | Inner Canyon, North Kaibab Trail, 1. | Hearing Loss Ear Sngle Intern Welding Equipment | | ✔ | 0 | 0 | ✔ |
| 2019-1002806 | KAYLEE NEWCOMB | PARK RANGER | Sep/7 | NORTH KAIBAB TRAIL GRAND CANYON | Obj in eye Eye Sngle Extern Insect | ✔ | | 5 | 0 | |
| 2019-1002188 | KAYLEE NEWCOMB | PARK RANGER | Sep/7 | North Kaibab trail Grand Canyon Natl | Obj in eye Eye Sngle Intern Insect | | ✔ | 0 | 0 | ✔ |
| 2019-1002187 | CHARLES PARKER | MISC. CLERK AND ASSISTANT | Sep/7 | TRAFFIC LANE A & B BOOTHS AT DESERT | Obj in eye Eye Sngle Extern Dust (Silica, Coal, etc. ) | | ✔ | 0 | 0 | ✔ |
| 2019-1002805 | LEONARD RIOS | BIOLOGICAL SCIENCE TECHNICIAN | Sep/10 | NORTH RIM EMERGENCY SERVICES FACILIT | Strain, multiple Single knee Physical Training -Tactical, Exercising, Pack Test, etc. | | ✔ | 0 | 0 | ✔ |
| 2019-1002801 | SHANE BARTON | PARK RANGER (PROTECTION) | Sep/17 | INDIAN GARDEN DAY USES AREA GRAND CA | Strain, multiple Single Lower Leg Walking/Working Surface (floor, street, etc.) | | ✔ | 0 | 0 | ✔ |
| 2019-1002899 | HEATHER HADAWAY | VISITOR USE ASSISTANT | Oct/2 | Trail between Residential Housing an | Laceration Both hands Walking/Working Surface (floor, street, etc.) | ✔ | | 0 | 1 | ✔ |
| 2019-1002897 | RYAN MCDONALD O'LEAR | PARK RANGER (PROTECTION) | Oct/21 | Garden Creek Slot Canyon | Muscuskeletal NC Single leg Walking/Working Surface (floor, street, etc.) | | ✔ | 0 | 0 | ✔ |
| 2019-1002900 | KENNETH GAYDUSEK | HEAVY MOBILE EQUIPMENT MECHANIC | Oct/28 | back of building of the auto shop b/ | Muscuskeletal NC Single Foot Walking/Working Surface (floor, street, etc ) | | ✔ | 0 | 0 | ✔ |
| 2019-1002902 | CLAIRE SCHULER | VISITOR USE ASSISTANT | Oct/28 | North Rim Entrance Station | Laceration Single hand Animal, Dog bite | | ✔ | 0 | 0 | ✔ |
| 2019-1002905 | ADAM DOCKERY | MAINTENANCE WORKER LEADER | Nov/14 | Grand Canyon National Park - Thunder | Diarrhea/Vomit Intestines Insect | | ✔ | 0 | 0 | ✔ |
| 2019-1002906 | CAMDEN SHAKESPEARE | LABORER (MOTOR VEHICLE OPERATOR) | Nov/18 | Below oohah point, Grand Canyon Natl | Bruise Single hand Hand tools (non-powered) | | ✔ | 0 | 0 | ✔ |
| 2019-1002907 | NATHANIEL PHELPS | MAINTENANCE WORKER LEADER | Nov/19 | South Kaibab Trail, 2 switchbacks be | Laceration Single 4th finger Hand tools (non-powered) | | ✔ | 0 | 0 | ✔ |

1/11/2020

DOI: SMIS

| 2019-1002908 | MATTHEW KRUPP | PARK RANGER (PROTECTION) | Dec/6 | W-1 Road near the Intersection of W- | Pain/Swell Joint Arm or wrist Vehicle, Government-Owned | ✔ | 0 | 0 | ✔ |
| 2019-1002977 | HANNAH ORFE | PARK RANGER (PROTECTION) | Dec/24 | Station One, Women | Bruise Single Upper Arm Human (Violence) | ✔ | 0 | 0 | ✔ |
| 2019-1002976 | CHARLES PARKER | MISC CLERK AND ASSISTANT | Dec/26 | Desert View Office Parking Lot | Muscuskeletal NC Single shoulder Vehicle, Government-Owned | ✔ | 0 | 0 | ✔ |

Totals:  0   12   2   43   73   47   50   0   0   3   1   3



Stephenson, Elston <elston_stephenson@nps.gov>

## Meeting to discuss outcomes of OIG OI-HQ-19-0668-R

**Stephenson, Elston** <elston_stephenson@nps.gov>
To: "Drapeaux, Brian" <brian_drapeaux@nps.gov>
Cc: Woody Smeck <woody_smeck@nps.gov>

Tue, Aug 20, 2019 at 7:49 AM

Woody, Brian, Lisa,

Good Morning.

Please let's take a look at this to review, in particular, the 'jurisdictional issues', and what actually happened,

She still remain open in my SMIS.

I must answer questions to close out the SMIS entry.

Please take another look at what the supervisor sent to me. Clearly this, by his description is/was an entrapment. She was overrun by the fire in his description.  The reason that she drove through the fire is clearly because she felt trapped.

Clearly, in 50B it says that a SAIT can be done. National Fire Director's call.

By the supervisor's description there were many---at least 7 things that went horribly wrong.

I have yet to see an 'investigation'.

I understand that there were 'Lessons Learned'. I would like to see what happened. We would have to reverse engineer the Lessons Learned to understand exactly what happened. Seeing the investigation would be more meaningful.

This sounds like it can happen during wildland firefighting on GRCA

Please see that the entire point of the safety investigation is to determine what happened and apply it to Our operations.

Respectfully, We must decide as a matter of policy, of jurisdiction, of Our Identity how much care for Our People we abdicate to others.

Respectfully, she's Ours.

We put her in that situation.

At the very least we owe her, her Parents, her Family, her Husband, her Wife, her Sister, her Brother, her Friends our best determination of what happened so we do not put her in that situation again---or other 'hers'/'hims' in the future.

Thank You.


Elston
928-255-8727



On Thu, Jul 25, 2019 at 11:25 AM Drapeaux, Brian <brian_drapeaux@nps.gov> wrote:
[Quoted text hidden]

 **GRCA Wildland Firefighter Burn Incident  June 4, 2019.pdf**
694K

# EXHIBIT X-21

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elston L Stephenson, | No. CV-19-08268-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Brian Drapeaux, | |
| Defendant. | |

The Court has reviewed Plaintiff's Motion for Extension of Time to Respond to the Motion to Dismiss. (Doc. 16.) For good cause shown,

**IT IS ORDERED** that Plaintiff's Motion for Extension is **GRANTED**.

**IT IS FURTHER ORDERED** extending the deadline for Plaintiff to file his Response to Defendant's Motion to Dismiss (Doc. 13), through and including **January 13, 2020**.

Dated this 5th day of December, 2019.

Douglas L. Rayes
United States District Judge

MIME–Version:1.0 From:azddb_responses@azd.uscourts.gov To:azddb_nefs@localhost.localdomain
Message–Id: Subject:Activity in Case 3:19–cv–08268–DLR Stephenson v. Drapeaux Order on Motion for
Extension of Time to File Response/Reply Content–Type: text/html

*This is an automatic e–mail message generated by the CM/ECF system. Please DO NOT RESPOND to this
e–mail because the mail box is unattended.*
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits
attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all
documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees
apply to all other users. To avoid later charges, download a copy of each document during this first
viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.*

### U.S. District Court

### DISTRICT OF ARIZONA

**Notice of Electronic Filing**

The following transaction was entered on 12/5/2019 at 10:37 AM MST and filed on 12/5/2019

| | |
|---|---|
| *Case Name:* | Stephenson v. Drapeaux |
| *Case Number:* | 3:19–cv–08268–DLR |
| *Filer:* | |
| *Document Number:* | 17 |

*Docket Text:*
 **ORDER granting [16] Motion for Extension of Time toto Respond to the Motion to Dismiss.
the deadline for Plaintiff to file his Response to Defendant's [13] Motion to Dismiss is
extended through and including 1/13/2020. Signed by Judge Douglas L Rayes on 12/5/2019.
(MMO)**

**3:19–cv–08268–DLR Notice has been electronically mailed to:**

Laurence G Tinsley, Jr     laurence.tinsley@usdoj.gov, glenna.millsaps@usdoj.gov

**3:19–cv–08268–DLR Notice will be sent by other means to those listed below if they are affected by this
filing:**

Elston L Stephenson
PO Box 129
Grand Canyon, AZ 86023

The following document(s) are associated with this transaction:

*Document description:*Main Document
*Original filename:*n/a
*Electronic document Stamp:*
[STAMP dcecfStamp_ID=1096393563 [Date=12/5/2019] [FileNumber=20074579–
0] [194a4fcba77654bb3beba0ee5fe7c4ddb6d0497bc45db258292847eae8533d255f
8218999f86a4129c3aa801f92c96a8ef5d84ec604ca12c1bf403197d5276de]]

# EXHIBIT X-11

## Due Deference Notification - GRCA Opening US Mail/Federal Court Documents, Notification to US District Court, DOJ, OSC

Stephenson, Elston L <elston_stephenson@nps.gov>
Tue 9/29/2020 4:37 AM
To: dwbernhardt@ios.gov <dwbernhardt@ios.gov>; Greenblatt, Mark L <mark_greenblatt@doioig.gov>
Cc: Keable, Edward T <edward_keable@nps.gov>; Burnette, Chris C <chris_burnette@nps.gov>; Rowe, Louis R <Louis_Rowe@nps.gov>

Mr. Secretary,

Sir, Good Morning.

On September 19, 2020 I was informed by the GRCA Deputy Superintendent, Operations that on at least one occasion someone had deliberately opened my US Mail.

As You know, I have a federal case in US District Court, Arizona against GRCA Deputy Superintendent Brian Drapeaux.

On at least one occasion these were Court documents clearly addressed to me, clearly sent by the Court.

Sir, respectfully, as You know; these are several 18USC felonies---both with respect to the US Mail, and interfering with federal court proceedings/obstruction of justice.

I have notified the Court, the Justice Department directly, and the Justice Department through the Office of Special Counsel.

Thank You, Mr. Secretary.


Very Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

## Re: Due Deference Notification - GRCA Opening US Mail/Federal Court Documents, Notification to US District Court, DOJ, OSC

**Stephenson, Elston L** <elston_stephenson@nps.gov>
Tue 9/29/2020 5:29 AM

To: dwbernhardt@ios.gov <dwbernhardt@ios.gov>; Greenblatt, Mark L <mark_greenblatt@doioig.gov>
Cc: Keable, Edward T <edward_keable@nps.gov>; Burnette, Chris C <chris_burnette@nps.gov>; Rowe, Louis R
<Louis_Rowe@nps.gov>

Mr. Secretary,

Correction Sir; the date was September 16, 2020.

Thank You, Mr. Secretary.


With Apologies,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

---

**From:** Stephenson, Elston L
**Sent:** Tuesday, September 29, 2020 4:37 AM
**To:** dwbernhardt@ios.gov <dwbernhardt@ios.gov>; Greenblatt, Mark L <mark_greenblatt@doioig.gov>
**Cc:** Keable, Edward T <edward_keable@nps.gov>; Burnette, Chris C <chris_burnette@nps.gov>; Rowe, Louis R
<Louis_Rowe@nps.gov>
**Subject:** Due Deference Notification - GRCA Opening US Mail/Federal Court Documents, Notification to US District
Court, DOJ, OSC

Mr. Secretary,

Sir, Good Morning.

On September 19, 2020 I was informed by the GRCA Deputy Superintendent, Operations that on at least one occasion someone had deliberately opened my US Mail.

As You know, I have a federal case in US District Court, Arizona against GRCA Deputy Superintendent Brian Drapeaux.

On at least one occasion these were Court documents clearly addressed to me, clearly sent by the Court.

Sir, respectfully, as You know; these are several 18USC felonies---both with respect to the US Mail, and interfering with federal court proceedings/obstruction of justice.

I have notified the Court, the Justice Department directly, and the Justice Department through the Office of Special Counsel.

Thank You, Mr. Secretary.


Very Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727









FILED ____ LODGED
____ RECEIVED ____ COPY
FEB 24 2020
CLERK U S DISTRICT COURT
BY ____ DISTRICT OF ARIZONA DEPUTY

Elliott I. Stephenson (Plaintiff, Pro Se)
Case 3:19-cv-08268-DLR
P.O. Box 129
Grand Canyon, AZ 86023
January 27, 2020

U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this Plaintiff's REPLY to U.S. Attorney's REPLY to Plaintiff's
RESPONSE TO MOTION TO DISMISS in the case of STEPHENSON V DRAPEAUX.

Thank you,

Sincerely,
Elliott I. Stephenson

Dear Clerk of the Court.
Please date-time stamp this copy of
Page one and forward to Plaintiff in
that self addressed envelope.
that I hold all that holds

Very Sincerely,
[signature]

REPLY

Your Honor, in U.S. Attorney's Reply, Counsel lists the Court's jurisdictions. Respectfully, the Court will
notice that Counsel overstates the fact that discerning whether or not a party or witness is lying before the Court
is not only the jurisdiction of all courts and weighs on whether or not any or all of that party's or witness'
testimony should be thrown out, but is an indispensable pillar of the entire 'third branch' and the American
Justice system itself. Defendant's many demonstrated instances of materially lying to this Court—perjury (to
which Counsel is now desperately trying to distract) is sufficient grounds to Deny Motion to Dismiss.

1



FILED ___ RECEIVED ___ COPY
JAN 13 2020
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Eldon L Stephenson (Plaintiff)
Case 3:19-cv-08268-DLR
P O Box 129
Gila Bend AZ 85337
January 11, 2020

U.S. District Court Court Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please review and consider this ANSWER to MOTION TO DISMISS in the case of STEPHENSON V DRAPEAUX.

Thank You

Sincerely,

Eldon L Stephenson

*Please Time Stamp And Return to Sender*

**ANSWER**

Your Honor, the Court will find that the facts establish a prima facie, and meets all elements of stalking under 18 USC § 2261A and is ripe for Finder of Fact. Defendant was stalking Plaintiff's home. Defendant does not deny these basic facts of his actions. On this basis alone Defendant's Motion to Dismiss should be Denied. Further Defendant's multiple instances of documented material perjury in this case before this Court—should not only offend this Court, but should be a basis for not only Denial of Motion to

1

September 15, 2020

Mr. Secretary,

Sir, good morning.

As you know, I have a federal US District Court case against GRCA Dep Superintendent Drapeaux for stalking my home, and an EEOC case against DOI in its final stage awaiting a hearing before a federal Administrative Judge.

I request that these legal proceedings be allowed to move to their conclusions without interference.

Much bad has gone on here at Grand Canyon National Park which can be determined while awaiting the court cases to come to their conclusions. Nothing is lost. In fact, much is gained.

Respectfully, wait for these conclusions before forcing me to 'interview'.

Forcing me to 'interview' with the Inspector General (or third parties) violates the law, the courts, and Discovery in both cases, and my Constitutional right against 'self-incrimination'.

Insofar as the U.S. Attorney—prosecutors are the opposing counsel in the stalking case; in addition to violating my 5th Amendment right, it creates jeopardy for me.

My intention all along has been to go through the courts to seek justice and to protect my workers and visitors, and my park from getting hurt, and to end Grand Canyon National Park's Racism.

While I am representing myself pro se; acts of intimidation, retaliation, and attempts to undermine my rights or the cases in federal court will be reported to the courts, and force me to very publicly seek legal representation.

Respectfully, the story right now is that bad people running Grand Canyon National Park did bad things. And that new people have shown up to fix it.

Retaliation, of any sort, and/or attempts to undermine my cases, harm or intimidate me changes the story and puts everyone involved in jeopardy.

Respectfully, I ask and recommend that whatever investigation takes place, takes place without me until the court cases resolve and can be used as facts and findings added to the investigations. And that my rights are not violated, and no intimidation or retaliation are directed at me.

Thank You.

Sincerely,

Elton L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

Cc: Douglas L. Rayes, United States District Judge
    Equal Employment Opportunity Commission

# EXHIBIT X-22

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
MAILING SERVICES

ARIZONA MOTOR VEHICLE DIVISION
POST OFFICE BOX 2100
PHOENIX, AZ 85001-2100
**RETURN SERVICE REQUESTED**

ELSTON STEPHENSON
PO BOX 129
GRAND CANYON AZ 860230129

1987

245    HA0?1P1    86023

ARIZONA MOTOR VEHICLE DIVISION
POST OFFICE BOX 2100
PHOENIX, AZ 85001-2100
**RETURN SERVICE REQUESTED**



**Motor Vehicle Division**

4D-5140  R12/13

## azdot.gov

ELSTON STEPHENSON
PO BOX 129
GRAND CANYON AZ 860230129

1987

To protect your personal identity you must destroy your temporary or expired permit, driver license, or State ID Card.

Examine your card carefully to verify that all information is correct. For any issues with your card, please contact MVD:
Website: azdot.gov/contactmvd
Phone: 602.255.0072
Hearing/Speech Impaired TDD:
   Phoenix: 602.712.3222
   Elsewhere: 800.324.5425



20164A20138192050701

Arizona is required to clearly state on all non-federal compliant credentials "Not for Federal Identification." THESE CREDENTIALS WILL CONTINUE TO BE ACCEPTED FOR FEDERAL USE INCLUDING AIRPORTS UNTIL 10/1/2021.

Federal compliant credentials will have a gold circle marker with a star outline indicator and will continue to be accepted after 10/1/2021.

Remove card and place in your wallet.

⟶

## Save time with MVD online services



**S ERVICE A RIZONA**

Visit **ServiceArizona.com** for:
• Vehicle registration renewals
• Driver license motor vehicle records
• Duplicate driver licenses, IDs and more

---

**511**

*Arizona Travel Info*

**az511.gov**

Traffic
and road
information


ADEQ
Arizona Department
of Environmental Quality

Emissions
testing
information

**myazcar.com**

**PULL ASIDE
STAY ALIVE**

Dust storm
driving tips

PullAsideStayAlive.org



04.06.20

# EXHIBIT X-31

Elston L Stephenson (Plaintiff)
Case 3:19-cv-08268-DLR
P.O. Box 129
Grand Canyon, AZ 86023
June 2, 2020

U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this request for STIPULATION FOR EXTENSION OF TIME TO RECEIVE

NOTICE AND COURT DOCUMENTS (Second Request) in the case of STEPHENSON V DRAPEAUX due

to COVID-19 pandemic disrupting Grand Canyon National Park mailroom delivery.

Thank You


Sincerely,

Elston L Stephenson



STIPULATION FOR EXTENSION

Your Honor, respectfully, Plaintiff seeks a 90-day Extension in this case in order to

appropriately secure Notice of the Court's ruling in several filings before this Court and any other

Court documents in accordance with Rule 5 of the *Federal Rules of Civil Procedure*. And time to

answer/reply while in a continually developing COVID-19 posture.

Your Honor, the COVID-19 pandemic impacts such as 'lock downs', restricted hours, park closure, and

other protocols disrupted the U.S. mail service at Grand Canyon National Park. Additionally, the mail clerk

1

being 'vulnerable' along with COVID-19 related restrictions hampered Plaintiff's ability to collect the Court's documents. After the clerk retired, the new mail clerk notified Plaintiff that several Court documents mailed to Plaintiff were 'returned to sender'. Prior to the COVID-19 pandemic, Plaintiff filed 1 Reply and 2 Motions; but never received the Court's rulings/decisions, Defendant's Reply, or other documents which may have been sent by the Court.

Respectfully, Plaintiff asks that the Courts decisions listed below be re-sent to Plaintiff:

MOTION FOR INJUCTION OF PROTECTION AGAINST RETALIATION, dated March 8, 2020

REPLY to U.S. Attorney's REPLY to Plaintiff's RESPONSE TO MOTION TO DISMISS, dated February 22, 2020

MOTION FOR PRESERVATION ORDER, dated January 25, 2019 [2020].  Front page to each attached.

As the Court may itself be experiencing, COVID-19 response measures are in flux and make a shorter Extension timeline tenuous and likely subject to disruption.

Your Honor, in the interest of justice, and consistent with due process and Rule 5 of the *Federal Rules of Civil Procedure*, I respectfully ask that the Court extends any deadlines 90 days so that Plaintiff may receive the Court's documents and reliably respond to them in this COVID-19 environment.

Thank You, Your Honor.

Respectfully Submitted,

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

2

# EXHIBIT X-24

## [DRAFT] TDY TRAVEL - COST COMPARISON FORM [DRAFT]



| | |
|---|---|
| Traveler Name (Last, First, MI): | STEPHENSON, Elston |
| Travel Authorization #: | TANUM0000UJPQ |
| Permanent Duty Station: | Grand Canyon NP, AZ |
| TDY Travel Location(s): | San Diego, CA |

| Itinerary 1 (Actual Trip) | | | | | | |
|---|---|---|---|---|---|---|
| **Primary Mode of Transportation (Enter only one):** | | | | | | |
| | | | | | | |
| **Number of Travelers:** | | 1 | | | | |
| **Trip Start Date:** | | 10/29/2017 | | | | |
| **Trip End Date:** | | 11/3/2017 | | | | |
| **Total Trip Cost (Enter only relevant costs)** | | | | | | |
| *Transportation Costs* | | | | | | |
| 1 | Ticket / Fare Price | $ - | x # travelers | 1 | = | $ - |
| 2 | Booking Fee | | | | = | $ - |
| 3 | Number of Miles | 1150 | at $ per mile | $ 0 | = | $ 195.50 |
| 4 | Parking | | | | = | $ - |
| 5 | Taxi / Shuttle | | | | = | $ - |
| *Other Costs* | | | | | | |
| 6 | Lodging (see Per Diem Worksheet) | | | | = | $ 425.00 |
| 7 | M&IE (see Per Diem Worksheet) | | | | = | $ 352.00 |
| 8 | Other 1 (identify) | | | | = | $ - |
| 9 | Other 2 (identify) | | | | = | $ - |
| **Total Cost (sum of all lines above)** | | | | | $ | 972.50 |
| **Comments:** Please explain any costs that should be taken into consideration when comparing itineraries. | | | | | | |
| | | | | | | |
| GOV or POV ?   GOV avail - use .17 rte | | | | | | |

| Itinerary 2 (Comparison trip) | | | | | | |
|---|---|---|---|---|---|---|
| **Primary Mode of Transportation (Enter only one):** | | | | | | |
| | | | | | | |
| **Number of Travelers:** | | 1 | | | | |
| **Trip Start Date:** | | 10/29/2017 | | | | |
| **Trip End Date:** | | 11/3/2017 | | | | |
| **Total Trip Cost (Enter only relevant costs)** | | | | | | |
| *Transportation Costs* | | | | | | |
| 1 | Ticket / Fare Price | $ 466 | x # travelers | 1 | = | $ 465.60 |
| 2 | Booking Fee | | | | = | $ 8.26 |
| 3 | Number of Miles | 180 | at $ per mile | $ 1 | = | $ 95.40 |
| 4 | Parking | | | | = | $ - |
| 5 | Taxi / Shuttle | | | | = | $ - |
| *Other Costs* | | | | | | |
| 6 | Lodging (see Per Diem Worksheet) | | | | = | $ 425.00 |
| 7 | M&IE (see Per Diem Worksheet) | | | | = | $ 352.00 |
| 8 | Other 1 (identify) | | | | = | $ - |
| 9 | Other 2 (identify) | | | | = | $ - |
| **Total Cost (sum of all lines above)** | | | | | $ | 1,346.26 |
| **Comments:** Please explain any costs that should be taken into consideration when comparing itineraries. | | | | | | |
| Flight from Flagstaff - San Diego estimate from CONCUR. No parking cost in Flagstaff POV at high rate to keep GOV from sitting at airport | | | | | | |

I certify that I used the electronic travel system to obtain the above cost estimates, and that all of the information included in this form is accurate and complete. I acknowledge that, by signing this form, I agree to be reimbursed for the total cost of the less expensive itinerary and will seek no additional payment to recoup the difference in cost between the two itineraries.

Traveler Signature _____   Date  1/12/2018

I certify that the traveler completed this form in accordance with DOI / Bureau policy, and authorize the use of the following itinerary ("X" one):

Itinerary 1: [✓]
Itinerary 2: [ ]

If the comparison includes personal leave, I hereby authorize the traveler to complete the personal deviation in conjunction with his / her official travel.

Approving Official Signature _____   Date  1/30/18

Note: Booking your airfare at least 15 days in advance of your departure will result in lower cost airline tickets

FLAGSTAFF, AZ TO SAN DIEGO, CA
SUN, OCT 29 - FRI, NOV 3

Hide matrix   Print / Email

|  | All 20 results | American Airlines | Multiple |
|---|---|---|---|
|  |  | 465.60 6 results | 1,473.60 14 results |
| Lowest Published | 20 results |  |  |

**Shop by Fares**   Shop by Schedule

For complete selection of available fares, click the Show Fares link and click the View More Fares button.

Flight Number Search 🔍   Sorted By: Policy - Most Compliant ▼

Displaying: 20 out of 20 results.
Previous 1 2 Next | All

| American Airlines | 07:00a FLG → 11:48a SAN | 1 stop PHX | 4h 48m | ⚠️ | $465.60 |
|---|---|---|---|---|---|
|  | 12:45p SAN → 04:21p FLG | 1 stop PHX | 3h 36m |  |  |

Lesser policy violation

Least Cost Logical Fare

Show all details ∨

| American Airlines | 10:20a FLG → 03:13p SAN | 1 stop PHX | 4h 53m | ⚠️ | $465.60 |
|---|---|---|---|---|---|
|  | 12:45p SAN → 04:21p FLG | 1 stop PHX | 3h 36m |  |  |

Lesser policy violation

Least Cost Logical Fare

Show all details ∨

Note: Booking your airfare at least 15 days in advance of your departure will result in lower cost airline tickets

PHOENIX, AZ TO SAN DIEGO, CA
SUN, OCT 29 - FRI, NOV 3

Hide matrix   Print / Email



| | All 400 results | Southwest | American Airlines | Multiple | Delta | United | Alaska Airlines |
|---|---|---|---|---|---|---|---|
| Govt. Contract Discounted 51 results | | 270.40 51 results | — | — | — | — | — |
| Govt. Contract 104 results | | 382.40 104 results | — | — | — | — | — |
| Non-Contract Government 165 results | | 708.00 109 results | 270.40 8 results | 279.00 55 results | 343.60 9 results | 361.60 4 results | — |
| Lowest Published 60 results | | 294.96 36 results | 368.00 6 results | 368.00 9 results | 456.60 1 results | 376.60 4 results | 448.40 4 results |

**Shop by Fares**   Shop by Schedule

For complete selection of available fares, click the Show Fares link and click the View More Fares button.

Flight Number Search 🔍   Sorted By: Policy - Most Compliant ▼

Displaying: 292 out of 296 results. ❓
Previous | Page: 1 of 30 | Next | All

| Southwest | 09:45a PHX → 10:55a SAN | Nonstop | 1h 10m | $270.40 |
|---|---|---|---|---|
|  | 11:30a SAN → 12:40p PHX | Nonstop | 1h 10m | View Fares |

Govt. fare(s) available / Least Cost Logical Fare

Show all details ∨

| Southwest | 09:45a PHX → 10:55a SAN | Nonstop | 1h 10m | $270.40 |
|---|---|---|---|---|
|  | 09:25a SAN → 10:35a PHX | Nonstop | 1h 10m | View Fares |

Govt. fare(s) available / Least Cost Logical Fare

Show all details ∨

## YOUR TRIP TO:

San Diego

mapquest

**8 HR 40 MIN  |  575 MI** 🚗

**Est. fuel cost: $44.10**

*(handwritten)* 1150 RT

*(handwritten)* 10.19.17 @ 1209 left E_mid
.17 gov avail
.535 No gov avail

Start of next leg of route

**1.** Start out going **north** on Maswik S toward Maswik Laundry Rd.

**2.** Take the 1st **right** onto Maswik Laundry Rd.
*If you are on Aspen Rd and reach Cliffrose Rd you've gone about 0.1 miles too far.*

Then 0.05 miles                                                    0.05 total miles

**3.** Turn **left** onto Maswik Lodge Rd.

Then 0.07 miles                                                    0.12 total miles

**4.** Take the 1st **right** onto S Village Loop.
*If you are on S Village Loop and reach Cliffrose Rd you've gone about 0.1 miles too far.*

Then 0.13 miles                                                    0.25 total miles

**5.** Take the 2nd **left** to stay on S Village Loop.
*S Village Loop is just past Victor St.*

Then 0.23 miles                                                    0.48 total miles

**6.** Take the 1st **right** onto Center Rd.
*Center Rd is just past Village Loop Byp.*

*If you reach Navajo St you've gone about 0.1 miles too far.*

Then 1.61 miles                                                    2.09 total miles

**7.** Turn **right** onto US-180 E/AZ-64.
*US-180 E is 0.4 miles past Market Plaza Rd.*

Then 4.37 miles                                                    6.46 total miles

**8.** Enter next roundabout and take the 2nd exit onto State Route 64/US-180 E/AZ-64.

Then 0.65 miles                                                    7.11 total miles

**9.** Enter next roundabout and take the 1st exit onto AZ-64.

Then 49.71 miles                                                   56.82 total miles



SAN DIEGO BEACH & BAYVIEW COTTAGES

SAN DIEGO, CA. 92147
619-435-1227

Account: 50010128090
Arrival: 10/29/2017
Departure: 11/03/2017
Rate: $140.00
Room: N009

STEPHENSON, CW4 ELSTON

41551 BENTANA DR
PALMDALE, CA 93551

| DATE | | DESCRIPTION | COMMENT | CHARGE/PAYMENT | BALANCE |
|------|------|-------------|---------|----------------|---------|
| 10/29/2017 | 1020 | MC PAYMENT | MC PAYMENT | $-700.00 | $-700.00 |
| 10/29/2017 | 4000 | ROOM CHARGE | #N009 STEPHENSON, CW4 ELS˥ | $140.00 | $-560.00 |
| 10/30/2017 | 4000 | ROOM CHARGE | #N009 STEPHENSON, CW4 ELS˥ | $140.00 | $-420.00 |
| 10/31/2017 | 4000 | ROOM CHARGE | #N009 STEPHENSON, CW4 ELS˥ | ·$140.00 | $-280.00 |
| 11/01/2017 | 4000 | ROOM CHARGE | #N009 STEPHENSON, CW4 ELS˥ | $140.00 | $-140.00 |
| 11/02/2017 | 4000 | ROOM CHARGE | #N009 STEPHENSON, CW4 ELS˥ | $140.00 | $0.00 |

BALANCE DUE:                $0.00

Stephenson Lodging

Signature: _____
I agree that my liability for this bill is not waived.

*Stephenson Gas Depart*

Welcome To Loves#553

Date: 10/29/17
Time:   01:51
Invoice # 21298

MCFL      Card Sale
5#########5502

Pump   Gallons   Price
  5     4.286   $2.439

Product
Unleaded

TOTAL SALE   $ 10.45

Terminal :
Approved#   021298
REF:        79917

Thank You !!!

---

GSE 76 PALMDALE
0009459157
15483 PALMDALE RD
VICTORVILLE      , CA
10/29/2017 /01721056
06:22:41 AM

5502
MC FLEET

INVOICE 061934
AUTH 00-066956
REF320171029170619

PUMP# 4
REGULAR       14.266G
PRICE/GAL     $3.119

FUEL TOTAL   $  44.50

CREDIT       $  44.50

COMPLETION
SWIPE Cup.Date:******
Batch: 32 Seq Num: 5
Term ID: 4
workstation ID: 65
Your opinion
counts  Enter to
win 1 of $5 $25
gas gift cards!
Provide feedback
www.gasvisit.com
Learn how to earn
5¢ cents/gallon in
fuel statement
credits. Go to
mylesavvy.com or
see details at the
pump. Restrictions
apply. Offer
expires 12/31 17.
1861

---

AUTOPORT
NORTH ISLAND
BLDG 484
SAN DIEGO  CA

TP06876254-001
NEX FUEL 110285
BUILDING 484
SAN DIEGO     CA 9213

DATE     10/30/17
TIME     4:49 PM
AUTH# 028279

MC FLEET
STEPHENSON/ELSTON

PUMP  PRODUCT  PPG
 08    UNLD   $2.799

GALLONS    FUEL TOTAL
18.758      $52.50

THANK YOU
FOR SHOPPING AT YOUR
NAVY EXCHANGE

---

*Fuel on govt cc/travel his card*

# Stephenson Gas Return

```
GSE 76 PALMDALE
0009459157
15483 PALMDALE RD
VICTORVILLE      , CA
11/05/2017 701725435
04:52:50 PM

5502
MC FLEET

INVOICE 164902
AUTH 00-059992
REF190321105171649

PUMP# 9
REGULAR        17,663G
PRICE/GAL      $3.919

FUEL TOTAL  $  58.62

CREDIT      $  58.62

COMPLETION
SWIPE Exp.Date:**-**
Batch: 19 Seq Num: 32
Term ID: 9
Workstation ID: 65
Your opinion
counts! Enter to
Win 1 of 69 $25
gas gift cards!
Provide feedback
www.gasvisit.com
Learn how to earn
38 cents/gallon in
fuel statement
credits. Go to
drivesavvy.com or
see details at the
pump. Restrictions
apply. Offer
expires 12/31/17,
5135
```

```
AUTOFORT
NORTH ISLAND
BLDG 484
SAN DIEGO  CA

1POGB76254-001
NEX FUEL 110285
BUILDING 4E4
SAN DIEGO   CA 9213

DATE     11/03/17
TIME        1:31 AM
AUTH# 095116

MC FLEET
STEPHENSON/ELSON

PUMP  PRODUCT  PPG
12    UNLE     $2.889

GALLONS   FUEL TOTAL
16.229       $46.89

     THANK YOU
FOR SHOPPING AT YOUR
     NAVY EXCHANGE
```

**Love's**

```
STORE #386
14875 S. Hwy 95
Lake Havasu, AZ 86404
(928) 764-1505

11/05/2017 Tkt #99457692

Type: SALE      (#ORIGINAL)

Qty Name              Price   Total

  UNL-REGULAR                 28.50
    Pump:          5
    Gallons:      11.589
    Price / Gal:   2.459

Subtotal                      28.50
Sales Tax              0.00
Total                         28.50

Received:
  MASTERCARD FLEET
  ***********5502    SWIPED   28.50
    Auth No: 067300
  INVO14596

Pumps 1-16 & 25-32
Auto Diesel Tax Rate @ 18c

Pumps 17 through 24
Truck Diesel Tax Rate @ 26c

Reg:3 Clerk:Dennis
```

Fuel on govt cc / his travel card

# EXHIBIT G



OFFICE OF
**INSPECTOR GENERAL**
U.S.DEPARTMENT OF THE INTERIOR

# UNFOUNDED ALLEGATIONS OF IMPROPER LEADERSHIP DECISIONS AND HOSTILE WORK ENVIRONMENT AT GRAND CANYON NATIONAL PARK

**This is a revised version of the report prepared for public release.**

Report Number: 18-1188                    Web Posting Date:  March 5, 2019

## SYNOPSIS

We investigated allegations that Grand Canyon National Park (GRCA) Superintendent Christine Lehnertz proposed a 1-day suspension for a GRCA senior official for an improper purpose; that she created a hostile work environment and engaged in bullying and retaliatory behavior against senior leaders, particularly male leaders, at the GRCA; and that she wasted nearly $180,000 in renovations to a park residence.

We found that Lehnertz legitimately proposed a 1-day suspension for the GRCA senior official for "Failure to Follow Supervisory Instruction" because the official did not provide Lehnertz a copy of an Employee Performance Appraisal Plan (EPAP) for one of his subordinate employees, despite multiple requests; did not provide written reports as requested by Lehnertz related to a high-priority initiative at the GRCA; and did not attend a scheduled meeting related to that initiative.

We found no evidence that Lehnertz created a hostile work environment or that she wasted nearly $180,000 in unnecessary renovations to a park residence.

We provided this report to the National Park Service Deputy Director Exercising the Authority of Director for any action deemed appropriate.

## DETAILS OF INVESTIGATION

We investigated allegations that questioned Grand Canyon National Park (GRCA) Superintendent Christine Lehnertz' leadership at the GRCA. The allegations stated that Lehnertz:

- Proposed a 1-day suspension for a GRCA senior official for an improper purpose

- Created a hostile work environment and engaged in bullying and retaliatory behavior against senior leaders, particularly male leaders, at the GRCA

- Wasted nearly $180,000 in renovations to a park residence

**Lehnertz Proposed Suspension of a GRCA Senior Official for Legitimate Disciplinary Reasons**

We found that on August 31, 2018, Lehnertz proposed a 1-day suspension without pay against the GRCA senior official for "Failure to Follow Supervisory Instruction." According to Lehnertz, the senior official did not:

1. Provide an employee performance appraisal plan (EPAP) for a subordinate employee as requested

2. Provide Lehnertz written progress reports regarding a high-priority park initiative as directed

3. Attend a required meeting to discuss development options for the initiative or request

approved leave

*The Senior Official Did Not Provide an EPAP for a Subordinate Employee as Requested*

The GRCA hired the senior official's subordinate employee on June 25, 2017, with a 1-year probationary period. The employee initially reported to Lehnertz but was transferred under the senior official's supervision in September 2017. Lehnertz said that at that time, she told the senior official he needed to complete a performance review and create an EPAP for the subordinate employee.

The DOI Performance Management System (370 DM 430) requires that a supervisor establish a subordinate's EPAP within 60 days of the beginning of the appraisal period, the employee's entrance on duty, the assignment of an employee to a new position, the assignment of an employee to a new or different supervisory position, or the assignment of an employee to a detail or temporary promotion scheduled to exceed 120 days.

Lehnertz said she asked the senior official for a copy of the subordinate employee's EPAP during meetings on June 25, 2018, and June 29, 2018, and by email and text message on July 2, 2018. Lehnertz said the senior official responded to each of her requests that he had an EPAP for the employee.

In the July 2 email, Lehnertz asked the senior official to provide her a copy of the signed EPAP "first thing this morning." Lehnertz said the senior official told her he was "working on it," but the signed EPAP was not on her desk when she arrived at the office on July 3. Later that day, Lehnertz asked the senior official again in an email if he had a signed EPAP for the subordinate employee.

The senior official responded to Lehnertz on July 6, stating, "After further review, I do not have a signed EPAP [for the employee]. . . . In our discussions, I was sure that I had one signed. . . . I was quite sure I had him sign the EPAP developed. Yes Chris, you did direct me to provide you a copy of a signed EPAP. My apologies for not complying with your directive."

On July 10, 2018, Lehnertz emailed an NPS regional manager stating she (Lehnertz) needed to take a disciplinary action against the senior official because he was not truthful about the signed EPAP. Later that same day, the senior official emailed the NPS regional manager, stating his belief that Lehnertz had lost objectivity regarding the subordinate employee.

The NPS regional manager said she talked to the senior official in July 2018 and told him to sign an EPAP for the subordinate employee immediately and that Lehnertz could hold the senior official accountable if the subordinate employee did not have a signed EPAP. According to the NPS regional manager, the senior official never completed the EPAP in response to Lehnertz' requests.

*The Senior Official Did Not Provide Lehnertz Written Progress Reports Regarding a High-Priority Park Initiative*

Lehnertz said developing this high-priority initiative was important not only to the GRCA but

2

also to the NPS. She said she assigned the senior official to lead the initiative in November 2017 and authorized and directed him to work with human resources to hire someone to fill a 1-year detail to help him develop it.

Lehnertz said that in February 2018, she had not seen any progress on the initiative, so she told the senior official they needed to meet every Monday to discuss the status. In addition, Lehnertz requested that the senior official provide her with written progress reports each week when they could not meet in person. Lehnertz said that over the next several weeks and months, the senior official inaccurately represented that the initiative was moving forward and that he did not complete the written reports as directed. Lehnertz said the senior official did not provide written reports on seven or eight dates; the Notice of Proposed Suspension listed February 5, 2018; April 2, 2018; April 9, 2018; April 16, 2018; April 30, 2018; May 14, 2018; June 25, 2018; and July 23, 2018.

According to Lehnertz, because the senior official did not make progress on developing the initiative, she hired an NPS regional director on a detail to the GRCA in September 2018 to develop it.

*The Senior Official Did Not Attend a Required Meeting or Request Approved Leave*

On May 16, 2018, Lehnertz emailed the senior official stating that he had not completed progress reports for the initiative for May 7 and May 14. She directed him to prepare to discuss options for development at their next regularly scheduled meeting on May 21. According to Lehnertz, the senior official did not attend the meeting, so she emailed him on May 22 stating that he did not attend the scheduled meeting and did not send her any text messages, voicemails, or emails regarding his absence. Lehnertz also wrote that the senior official must submit written updates to her and asked him how she could help or if there were barriers in their communication and understanding. The senior official did not reply to Lehnertz' email. Lehnertz stated that when she talked to the senior official about his absence from the May 21 meeting, he said, "I don't recall that."

*Lehnertz Proposed a 1-Day Suspension for the Senior Official*

In August 2018, Lehnertz discussed her concerns about the senior official with a GRCA human resources specialist. The human resources specialist provided Lehnertz three different notices, with discipline ranging from a written reprimand to a 3-day suspension.

Lehnertz said that before taking action against the senior official, she met with the senior official on August 31, 2018, to give him an opportunity to explain his actions related to his subordinate employee's EPAP and progress reports for the high-priority initiative. According to Lehnertz, the senior official said he had not completed the EPAP because he did not think it was his responsibility. Consistent with the advice the NPS regional manager had provided to the senior official in early July, Lehnertz said she reminded the senior official that the standard supervisory element of his performance plan required him to complete an EPAP for each of his subordinate employees. We found that the senior official's 2017 EPAP stipulated that he communicate performance standards that reflect job requirements to subordinates, give appraisals in a timely manner, and establish performance plans for the current year according to human resources

3

guidance.

Lehnertz said the senior official also told her he did not provide updates for the initiative because he did not think the GRCA needed it.

Based on the senior official's responses during the August 31 discussion, Lehnertz said she decided to propose a 1-day suspension for the senior official.

*The Senior Official's Response to the Proposed Suspension*

On October 3, 2018, the senior official met with an NPS regional director to orally respond to the proposed suspension. According to the regional director, the senior official said he did not provide a signed EPAP for his subordinate employee to Lehnertz because he believed Lehnertz would use the EPAP to terminate the employee. During his oral response, the senior official said, "I did not, would not, and will not, provide it to her so that she can use it as a weapon."

The senior official also told the regional director that he had reported his concerns about Lehnertz' requests for the EPAP to the U.S. Office of Special Counsel (OSC). According to the senior official, Lehnertz proposed the 1-day suspension because the senior official did not provide the EPAP to further the subordinate employee's termination. The senior official provided us copies of two OSC pre-determination letters, dated October 10 and October 15, 2018. In both letters, the OSC determined that an order to prepare an EPAP would not require the senior official to violate a law because it is routine for supervisors to prepare such documents. The letters also stated it was speculation by the senior official that Lehnertz would use the EPAP for an improper purpose. In each of the two letters, the OSC made a preliminary determination to close its inquiry into the senior official's complaint.

When we interviewed the senior official, he confirmed that Lehnertz had asked him for his subordinate employee's EPAP in June 2018. He said he initially told her he had it, but later told her he did not. The senior official stated he did not want to give the EPAP to Lehnertz because he thought Lehnertz would use the EPAP to terminate the subordinate employee.

We also asked the senior official about the progress reports for the high-priority initiative. The senior official told us he had previously admitted to the NPS regional director that he provided verbal updates but did not always provide the written reports to Lehnertz as directed. When asked why he did not provide the reports, the senior official replied, "I just didn't get to them at the time of the meeting."

Finally, in his oral response to the proposed suspension, the senior official stated his calendar indicated he was in Flagstaff, AZ, on May 21, 2018, at an annual review for the concessioners and that Lehnertz' calendar did not have any appointments scheduled for that date. The senior official said he did not recall if he took leave that day. When we asked the senior official about this meeting, he stated, "I'm still confused of the date, the circumstance of what may or may not have happened." The senior official later provided a copy of his calendar for May 21, 2018, which showed a meeting scheduled at 4:00 p.m. for updates related to the initiative in "Chris's Office."

4

We confirmed that the senior official was not on leave on May 21, 2018, and that he claimed 8 regular work hours on that day.

**Lehnertz Did Not Create a Hostile Work Environment at the GRCA**

We interviewed 20 GRCA employees who worked directly with Lehnertz. Of those 20 employees, 15 were senior managers and 5 were nonsupervisory employees. Most of the employees indicated that Lehnertz was generally liked at the park and reported that Lehnertz did not treat men or women differently and held everyone to the same standard.

During our interviews, five employees—four managers and one nonsupervisory employee—expressed they had encountered differences and conflict with Lehnertz on occasion. Despite these occasions, four of these five employees identified positive aspects of Lehnertz' leadership and acknowledged that she championed an "inclusive and respectful" environment. The fifth employee stated that she had expressed concerns about her first-level supervisor to GRCA management and said the way Lehnertz handled her concerns caused her to mistrust GRCA management. Some managers observed that Lehnertz "drilled down" for information, explaining that she continuously asked questions to gather information if the presenter seemed ill-prepared or provided incorrect information, which made them feel "intimidated" at times.

Lehnertz said a colleague from the Pacific West Region made her aware that when she drilled-down for information, it felt like an accusation, rather than an inquiry. She added that a manager at the GRCA felt nervous when she asked many detailed questions. Lehnertz said that instead of discussing it with the manager individually, she discussed her management style with the GRCA management team and conveyed that "when I'm really getting into something, I'm gonna ask more and more detailed questions. And that it's okay to say, 'I don't have that information, but I'll get it.'" Lehnertz added that one of her personality traits is to drill "really deep on a question" when she is stressed and that she told the GRCA management team that she would try to "check" herself.

**Lehnertz Did Not Authorize Unnecessary Renovations to a Park Residence**

On July 20, 2017, Lehnertz emailed GRCA managers informing them that she had toured the residence at 45 Kaibab Street in preparation for advertising the position for a deputy superintendent for operations. In the email, Lehnertz stated the home would be an important recruitment tool for the position. Lehnertz listed 19 deficiencies that she had identified during her walk-through, ranging from smaller issues like removing a coat rack in the entry hall, to larger projects like updating the kitchen and removing all carpet from the house. Lehnertz said that after informing the managers of the deficiencies, she was no longer involved in the renovations, except to request that the GRCA architect assist with the kitchen redesign.

An NPS housing official told us he managed the renovation project, to include resources, materials, personnel, and budget, and he did not have to obtain higher supervisory approval. The housing official said he inspected the house after the previous occupant moved out and made a list of necessary renovations. He recalled that Lehnertz' July 20 email included a list of updates for the house and that it instructed the housing official to coordinate with another NPS manager, who was on detail assignment. The housing official said most of the items referenced in

Lehnertz' email matched the list he had generated.

The housing official said he did not receive any further direction from Lehnertz about the renovation after receiving the July 20 email. He said he provided weekly status reports to management, which included Lehnertz, about all maintenance projects. He said neither the incoming deputy superintendent nor Lehnertz attempted to direct him to complete any aspect of the renovation.

According to the housing official, the renovation at 45 Kaibab Street began in August 2017 and ended in April 2018. He explained that the renovation took longer than anticipated because of unexpected safety issues, such as out-of-code electrical wiring, an underrated circuit breaker box, no fire alarm system, structural issues, and a sagging roof and doorways. The housing official estimated the house was built in 1978, and said it appeared to have been built in stages because one side of the house was heated with a propane furnace and the other was heated by electric baseboards. He said he used his staff, trail personnel (for landscape work), an electrician, and a seasonal carpenter (former NPS employee) to complete the renovation. The housing official provided documentation showing that the labor costs for the renovation were $135,192.83 and the cost of materials was $30,733.07, for a total renovation cost of $165,925.90.

When asked, the housing official told us that the renovations to 45 Kaibab Street impacted his employees' ability to work on other houses. He explained that he tried to keep the number of vacant homes below 35, and that when this renovation was completed, the number of vacant homes totaled approximately 50. The housing official noted, however, that because of the number of vacancies and hiring problems at the GRCA, he did not recall employees contacting him about needing a house during that time.

A GRCA maintenance employee, who worked directly on the housing project, told us that 45 Kaibab Street was "decent" and "livable" before the renovations, but he noted that after the renovations began, the maintenance crew found structural damage that needed repair. The maintenance employee said the renovations were needed to replace original work that had been completed in 1972. The renovations included installing a new kitchen, hardwood floors throughout the house, new stairs, vanities in two of the three bathrooms, and new toilets and tiles in all three bathrooms, and replacing the wiring throughout the house. He said the work also included opening the walls and ceiling in the kitchen, during which they identified and repaired structural deficiencies. The maintenance employee said all renovations were needed and none were unusual. He added that the costs were reasonable based on the work performed.

## SUBJECT

Christine Lehnertz, Superintendent, Grand Canyon National Park, National Park Service.

## DISPOSITION

We provided this report to the National Park Service Deputy Director Exercising the Authority of Director for any action deemed appropriate.

6

# **Report Fraud, Waste, and Mismanagement**



Fraud, waste, and mismanagement in Government concern everyone: Office of Inspector General staff, departmental employees, and the general public. We actively solicit allegations of any inefficient and wasteful practices, fraud, and mismanagement related to departmental or Insular Area programs and operations. You can report allegations to us in several ways.



| | |
|---|---|
| **By Internet:** | www.doioig.gov |
| **By Phone:** | 24-Hour Toll Free:        800-424-5081 |
| | Washington Metro Area:   202-208-5300 |
| **By Fax:** | 703-487-5402 |
| **By Mail:** | U.S. Department of the Interior |
| | Office of Inspector General |
| | Mail Stop 4428 MIB |
| | 1849 C Street, NW. |
| | Washington, DC 20240 |

# EXHIBIT X-25

Re: [EXTERNAL] RE: Stephenson US Attorney Contact / Formal IG Complaint Failed 16E (Stalking), Falsified Statements Docs (OSHA)

Yim, Deborah E <deborah.yim@sol.doi.gov>
Tue 11/19/2019 2:00 PM
To: Tinsley, Laurence (USAAZ) <Laurence.Tinsley@usdoj.gov>
Cc: Stephenson, Elston L <elston_stephenson@nps.gov>

Mr. Stephenson, I neglected to add that if we were to engage in an EEOC mediation, the Agency would require that the district court case be dismissed first, without prejudice (to your refiling if no settlement is reached). If the latter is dismissed before your response to the motion to dismiss is due, you would of course not need to file a response. If you have any questions, please feel free to reach out to me.

Thanks,
Deborah

**DEBORAH YIM | Attorney-Advisor**
U.S. Department of the Interior | Office of the Solicitor
755 Parfet Street, Suite 151, Lakewood, CO 80215
Direct: (303) 445-0623 | Main: (303) 445-0600
Fax: (303) 231-5363 | deborah.yim@sol.doi.gov

This e-mail (including attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this e-mail or its contents is strictly prohibited. If you receive this e-mail in error, please notify the sender immediately and destroy all copies.

On Tue, Nov 19, 2019 at 1:46 PM Yim, Deborah <deborah.yim@sol.doi.gov> wrote:
Mr. Stephenson,

I wanted to let you know that I did communicate with the EEOC, and there is a means by which we can have a mediation facilitated by an EEOC judge, at no cost to the parties. If you are interested, please let me know and we can make the ask of the supervisory judge.

Sincerely,

**DEBORAH YIM | Attorney-Advisor**
U.S. Department of the Interior | Office of the Solicitor
755 Parfet Street, Suite 151, Lakewood, CO 80215
Direct: (303) 445-0623 | Main: (303) 445-0600
Fax: (303) 231-5363 | deborah.yim@sol.doi.gov

This e-mail (including attachments) is intended for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected by applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this e-mail or its contents is strictly prohibited. If you receive this e-mail in error, please notify the sender immediately and destroy all copies.

On Tue, Nov 19, 2019 at 12:15 PM Tinsley, Laurence (USAAZ) <Laurence.Tinsley@usdoj.gov> wrote:

# EXHIBIT X-26

## Fw: Update (Data and Research) / Fw: Important Awareness (Recommend Not for Action Yet) - Worker Hardship No Pay for 2 Months / Fw: Request for back pay due to Corona Virus

**Stephenson, Elston L** <elston_stephenson@nps.gov>

Mon 7/13/2020 4:10 PM

**To:** theswedepilot64@hotmail.com <theswedepilot64@hotmail.com>

📎 3 attachments (1 MB)

Johns Hopkins COVID Trend Tracker (7-13-2020).pptx; CDC Navajo Nation COVID Tracker (7-13-2020).pptx; ADHS COVID-19 Data Dashboard (7-13-2020).pptx;

---

**From:** Stephenson, Elston L <elston_stephenson@nps.gov>
**Sent:** Monday, July 13, 2020 8:58 AM
**To:** Keable, Edward T <edward_keable@nps.gov>
**Cc:** Burnette, Chris C <chris_burnette@nps.gov>
**Subject:** Update (Data and Research) / Fw: Important Awareness (Recommend Not for Action Yet) - Worker Hardship No Pay for 2 Months / Fw: Request for back pay due to Corona Virus

Ed,

Good Morning.

Please receive the updated data and research into this matter.

According to CDC and Arizona Department of Health Services the entire Navajo Nation's percent of positives of 13.7% (8,142/59,331) is AMAZINGLY exactly the same 13.7% (123,824/899,994) percent positive as Arizona's. (refs. 1, 2, attached). This, of course means that Navajo Nation's rate is most likely lower as the entire Nation is comprised of Arizona, Utah, and New Mexico.

But as Arizona's John's Hopkins show an alarming---nation/world leading 26.6% rate of positives. (ref. 3, 5, attached)

The application of protection measures applied to Navajo Nation workers by GRCA is disparate, much more restrictive, and counter to science and data than what we apply to non-Navajo GRCA workers. Despite the fact that while President Nez himself describes "...really stringent public health orders"; there is no such uniform protection measures (public health orders) between here and Phoenix. (ref. 4)

Please also know that I received a call from Norm Johnson this morning---more upset as he opened his LES over the weekend to find that 80 hours of Annual Leave was deducted without his permission and consultation.

Ed, in Norm's own words; beyond the financial hardship and stress, it looks like and feels like GRCA is discriminating against him because he is Navajo.

Mail - Elston Stephenson - Outlook

Again, I'm optimistic the Big Brains and Good People of this morning's meeting can find an equitable solution which is good for Norm and good for the Park. Hopefully the data informs and helps.

Thank You


Very Sincerely,

Elston
928-255-8727


References


1. Department of Health and Human Services (2020). CDC. Navajo nation tracker. Retrieved from https://www.ndoh.navajo-nsn.gov/COVID-19

2. Arizona Department of Health Services (2020). ADHS Arizona data dashboard. Retrieved from https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/

3. John Hopkins University & Medicine (2020). Coronavirus Resource Center. *Testing hub, testing trends tool (Arizona)*. Retrieved from https://coronavirus.jhu.edu/testing/tracker/overview

4. McMorris-Santoro E (2020). CNN. *What states can learn from navajo nation's case rebound*. Retrieved from https://www.cnn.com/videos/health/2020/07/12/navajo-nation-coronavirus-case-study-arizona-spike-jonathan-nez-mcmorris-santoro-nr-vpx.cnn/video/playlists/coronavirus/

5. Leingang R, Steinbach A. (2020) Arizona Republic Arizona. *Arizona has highest percentage of positive COVID-19 tests in the US. here's what it means*. Retrieved from https://www.azcentral.com/story/news/local/arizona-health/2020/07/07/why-arizonas-percent-positive-tests-highest-country/5386600002/

---

**From:** Stephenson, Elston L <elston_stephenson@nps.gov>
**Sent:** Friday, July 10, 2020 7:41 AM
**To:** Keable, Edward T <edward_keable@nps.gov>
**Cc:** Burnette, Chris C <chris_burnette@nps.gov>
**Subject:** Important Awareness (Recommend Not for Action Yet) - Worker Hardship No Pay for 2 Months / Fw: Request for back pay due to Corona Virus

Ed,

Good Morning.

Please receive this Awareness brief with recommendation of 'Not For Action'...............yet. Please also know that this situation has outsized implications for GRCA's reputation (internally and externally) for looking after its workers, GRCA's reputation with Native Tribes, and in particular; GRCA's reputation and relationship with the Navajo Nation.

A GRCA FMD worker is seeking to have some form of COVID-19 options or EFMP retroactively applied because he has not been paid in 2 months as he has had to care for his ailing mother and negotiate the COVID-19 tragedy striking the Navajo Nation, the Nation's quarantine/lockdown/curfew restrictions, and the GRCA quarantine protocols upon returning to GRCA.

This worker has spoken with his supervisory chain; Zane Johnson and Donna Richardson. He has also contacted Mike Collins and Lisa Carrico. There is a meeting scheduled with Zane, Donna, Mike, and Lisa on Monday July 13, 2020. I do not know if the worker will be at the meeting.

Ed, yesterday evening an FMD AutoShop worker, Norm Johnson came to me (extremely upset) to share that he has not been paid in 2 months and that it is creating an unbearable economic hardship to him personally and his family on the Navajo Reservation. He left to take care of his mother on the Navajo Reservation sometime on or before March 25, 2020 and has not been paid between then and June 11, 2020.

Norm (a solid worker and person, a veteran who has been at GRCA for nearly 20 years) has an ailing mother (elderly with lung cancer) who lives on the Navajo Nation. He has had a longstanding arrangement worked out with his siblings where they take care of her during the week, and Norm returns and takes care of her during the weekends. He also contributes financially.

Apparently, somehow none of the options created precisely to avoid just this type of such hardship (e.g. EFMP, Admin Leave, Weather Leave, Safety Leave) were applied.

Also, in the time that this situation first developed until now, the 'earth has shifted' in the awareness and application of the options in the course of the COVID-19 pandemic which best expresses our consideration and care of our workers.

A complicating matter is that other workers who came along later appear to be currently negotiating the COVID tragedy and quarantine/curfew restrictions of the Navajo Nation may be benefiting from the later, more considerate application of the options.

Lastly, as an auto mechanic, there seems to be a 'penalty' insofar as Norm is precluded from 'quarantining' while working (as many others can telework) simply by virtue of his job.

I had a conversation with Mike Collins immediately after my conversation with Norm Johnson. He seems to agree in principle that there options that may be able to retroactively apply which are equitable, take care of Norm, take care of the Park, and which may even provide a word-of-mouth reputational benefit to the Park.

Donna is one of our best leaders. Lisa and Dr. Mike are among our best minds. I am optimistic that they will do what is best and equitable for Norm.

My hope is that it is realized that what is equitable and best for Norm is also what is best for the Park and the NPS.

Again, Sir, my recommendation is that this is for Awareness. Between Donna, Dr. Mike, and certainly Lisa, I am confident that a successful solution will be found. Ordinarily, I would have felt that in the hands of these leaders to sit still. Respectfully, however; this *does* potentially have far reaching, oversized implications for GRCA's reputation (internally and externally) for looking after its workers, GRCA's reputation with Native Tribes, and in particular; GRCA's reputation and relationship with the Navajo Nation. As You know, these will be invaluable during the years ahead in dealing with the development and turns of this pandemic.

Please receive the summary that Norm Johnson forwarded to me (below).

Thank You.


Very Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

---

**From:** Johnson, Norman NJ <Norman_Johnson@nps.gov>
**Sent:** Thursday, July 9, 2020 4:14 PM
**To:** Stephenson, Elston L <elston_stephenson@nps.gov>
**Subject:** Request for back pay due to Corona Virus

I am requesting back pay and annual leave for (4) pay periods starting on March 25th till June 11th. I was placed on stay at home orders on March 25th and told to come back to work on April 20th.I came back on that date and was notified to take two weeks quarantine before starting work posted on my shop door.I talked to Donna Richardson on that day and told her this was not possible for me to work and quarantine every week due to me commuting to the reservation every week end to take care of my elderly mother whom was diagnosed with lung cancer. I told Donna that I will stay on the reservation to take care of my mom and stay there till the pandemic is over. I asked her if I will still be getting admin pay referring to the weather&safety leave per the Navajo Nation public health authority memo sent by Mary Risser. Donna told me that I will not be getting admin pay because I am going back to the Reservation on my own decision. My immediate supervisor Zane Johnson also told me that I have to either use annual or sick leave to get payed. I informed Donna and Zane that I will instead take leave without pay because I did not want to utilize my hard earned annual leave and sick leave because of the Corona virus. I was on leave without pay for (4) pay periods on the reservation where we were subject to nightly and week end curfews. I was informed to came back to work on June 15th but told my supervisor Zane Johnson that I wanted to take sick leave that week due to my allergy problem.I finally went back to work on June 22nd and was informed by my supervisor that there was no more quarantine required and only a 25 question check list that my supervisor completed prior to me coming back to work. Due to this Corona virus pandemic I had a pay stoppage. Upon coming back to work I informed Donna and Zane that I would like to request back pay.Donna said that she will mention it to Zane. I asked Zane what Donna told him and he said that Donna neither said yes or no to the back pay request before she went on leave. I had previously notified Lisa Carrico on this matter and also informed Mike Collins. As a federal  employee,a tribal member,and a military veteran this Corona virus pandemic should not cause a pay disruption or pay stoppage to myself or anyone. No employee should be subject to unwillfull quarantine and told to utilize their annual&sick leave because of this Corona pandemic.All employees should be treated fairly and equally throughout this pandemic.

# EXHIBIT X-27

Elston L Stephenson
P.O. Box 1702
Grand Canyon National Park, AZ 86023
September 11, 2020

Honorable President Nez

Dear Mr. President,

Good Morning Sir.

My name is Elston Stephenson. I am Plaintiff in a case that is in federal US District in Phoenix.

Sir, respectfully,  I would like to ask that You consider asking your Attorney General to submit an *amicus curiae* brief in support of my Motion to have the Court issue a Mandatory Injunction forcing Grand Canyon National Park (GRCA) to fix dangerous safety, health, wellness, and environmental issues. And to bring the entire safety program under court oversight for 5 years.

Sir, respectfully, this is not an esoteric, academic, or notional endeavor.

I must admit that I am new to this entire 'world'.

I am not a Tribal member.

But, Sir, what I have witnessed—what Tribal members have brought to me for remedy and redress is shocking in its disparate, insensitive, and frankly racist treatment.

I believe that if You were to contact and poll Tribal people working here—respectfully, including the Navajo; the number of people feeling targeted and discriminated against would be shocking.

Sir, a very proud Navajo—a very good man, came to me with a 'situation' which illuminated disparate treatment that GRCA subjected Tribal members to as they traveled home and back to work since this COVID-19 pandemic began. Our quarantine, isolation, and stay-at-home protocols were much more stringent and discriminatory toward Native Americans. This was only recently changed as my push to the GRCA Superintendent pointedly showed that the measures that You put in place—as a matter of math, public safety, and science demonstrated that a person coming from the Navajo Nation was quantitatively less a risk of spread or contagion than someone spending a weekend in Phoenix, and making stops along the way.  Yet, we imposed draconian measures on GRCA's Navajo and Hopi workers while imposing nothing on travelers to 'Red Zone' areas.

This resulted in this man and his family suffering extraordinary hardship. He asked that I enclose his email.

But this abject disparate treatment and discrimination seems to have gone on for years, and years.

Sir, I try to be a good person. This man gave me what I felt was one of the most meaningful compliments of my life when, some time ago, he told me that "You have the Tribal Spirit in your heart."

That said, Sir, I'm still learning about the Native American life and culture. I feel inadequate to best represent Native interests, and the rich culture with the expert advocacy that it deserves.

Native people reach out to me to describe hostility, persecution, humiliations, and a lack of agency which seems chronic and hopeless as a condition of working here—especially in the eyes of someone new and from the 'outside' like me.

I've visited and reached out to NACA and asked their help. But I have yet to hear back.

In the meantime, Mr. President, I would like to ask that The Nation considers submitting an *amicus* brief which speaks to the Native experience of workers here at Grand Canyon National Park and the impacts and injury of a history of disparate, undignified, discriminatory treatment. With an emphasis that these are as much an impactful health danger as falling off a roof while working. And also possible remedies.

Please, Sir, also consider lending expert voice to the environmental damages of the 'uranium problem' identified in the Motion—its violations of Native values, the water, and gamut of health dangers.

Sir, please share this with the heads of state of other Nations freely, with the open invitation to join.

Sir, if I may; even if it is not possible to submit an *amicus* brief supporting this Motion, these Native American workers need help from someone of power, and shared cultural knowledge, experience, and identity to make their situation………………human.

Please, the man in the letter asks that someone reach out to him. If need be, I can identify Tribal workers to contact to share their own experiences.

Please be well.

Thank You, Mr. President.

Very Sincerely,

# EXHIBIT D



Stephenson, Elston <elston_stephenson@nps.gov>

---

## URGENT HELP: Uranium Exposure at Grand Canyon National Park

**Stephenson, Elston** <elston_stephenson@nps.gov>                                    Thu, Dec 20, 2018 at 5:07 AM
To: Secretary Zinke <secretary_zinke@ios.doi.gov>
Cc: David Bernhardt <dwbernhardt@ios.doi.gov>, Mary Kendall <mary_kendall@doioig.gov>

Secretary Zinke,

Sir Good Morning.

I was sorry to hear of your imminent departure. But, Sir, I'm respectfully asking you, as an Operator, to 'service' one more target before you go.

Please consider this a continuation of my Formal Complaint.

Sir, 1000s of Grand Canyon National Park (GRCA) workers and visitors—particularly young children appear to have been exposed to uranium levels that appear to be 100s of times the NRC limits for the general public as they attended tours and shows here. The same is likely true for our workers.

Sir, in pictures (attached) you will see a large case with taxidermied animals. Just to the left (facing) of the case is where three 5 gallon buckets of uranium were stashed. One bucket was piled so high with uranium that it could not be completely closed. On the floor just in front of the case is where tours of children would sit to take in animal shows—just a few inches to a few feet (at most) from the buckets of emitting uranium.

At least one NPS employee working in the vicinity of the material contracted cancer and survived. At least one NPS employee working in the vicinity of the material contracted cancer and died.

The three 5 gallons buckets of uranium were stashed away in the GRCA Museum Collections building back in 2000. I started working here June 26, 2017. It was reported to me on June 11, 2018. I instantly contacted the InterMountain Regional Headquarters (IMR) for help. They sent out an NPS IMR uranium 'expert'. Immediately upon his arrival, the GRCA Superintendent, the IMR Safety Manager, and the responding IMR uranium expert made a pact to explicitly secret and hide any of their findings, measurements, etc from me—and from the employees working in the building—in violation of the OSHA 'Right-to-Know Law'.

Please receive this report that I just received last night (pdf). It was hidden from me until now.

Sir, when you compare the numbers on page 1 to the Nuclear Regulatory Commission's (NRC) limits on their webpage 10CFR §20.1302 Compliance With Dose Limits For Individual Members of the General Public; You will see that the 0.02 mSv/hr hourly limit listed in 10CFR §20.1302(b)(2)(ii) is exceeded several thousand times over—especially as you consider the kids sitting there on the floor for the show.

But, Sir, it gets worse when you consider that NRC's webpage 10CFR §20.1207 Occupational Dose Limits for Minors states that minor-aged children are limited to just 1/10th the exposure of adults.

Sir, between 2000 and June 18, 2018 we have likely exposed 1000s of Americans to excessive levels of uranium at Grand Canyon National Park.

Beyond the retaliation and hostility that I have faced as a result of trying to bring this forward and protect my workers—in violation of the Whistleblower Law; the attempts to cover this up, and the amateurish IMR response may be criminal.

I have already described the secret pact made between the GRCA Superintendent and IMR personnel—there may be others in IMR beyond just these three that I know of. Please receive this other 'report' (MSWord) that the IMR responding 'expert' forwarded 2 weeks ago when pressed. Clearly, you can see that he deliberately deleted items 4 thru 7 in an attempt to hide those potentially deadly exposure readings.

Respectfully Sir, what may be also criminal is that the GRCA Superintendent and the IMR personnel knew of these exposures to our workers for thes past 6 months and did nothing to inform, advise, or care for them. In fact, the departing IMR uranium expert told them that they had nothing to worry about—they were "good".

The workers were also told that they had nothing to worry about when the uranium was first dumped on them back in 2000.

My concerns were raised when not only did it take the IMR uranium expert 4 days to get here (June 14, 2018), but he had to divert to another park to borrow a radiation measuring device (Ludlum). As you may know, Sir, uranium 'off-gasses' radon. Yet he brought no radon measuring equipment. He brought his wife who is also a non-NPS uranium expert. Although she assisted him, she does not appear anywhere in the 'report'. Neither of them had what would be expected personal protective equipment (PPE). It was such an amateurish response that they had to go to the tourist General Store here at the Park and purchase several pairs of common dishwasher gloves as their PPE. They resorted to tearing off the head of a mop and using the mop handle to move the buckets of uranium (pic).

Between the June incident and August, I kept pestering for information in order to inform my workers, but received none. I was told to await the report.

In an August EEO federal mediation session, the GRCA Superintendent slipped and revealed the secretive pact that she made with the IMR Safety Manager and IMR responding uranium expert.

When I found this out, I decided to call OSHA, the NRC, and notified Congress with a formal complaint in order to get the help and information I needed to help my workers. OSHA responded like pros. They even came with a detachment of active duty USAF uranium experts fully equipped and clad to measure and ensure our safety (November 29, 2018). However this was 6 months after the fact. The uranium had already been removed and dumped at a local mine. There was little for them to measure—except for the fact that the amateurish IMR crew brought the buckets back to the office space where they continued emitting.

Sir, respectfully, I know and understand that you are busy. I know your're leaving.

Respectfully, your country needs you to do one more thing before you go; take care of this.

Sir, I need your help.  Please. My workers need your help. The 1000s of Americans who were exposed for over 18 years to uranium—particularly the children need your help.

Thank You.

And, Sir, Thank You for Your Service.


Very Sincerely & Respectfully,

CW4(ret) Elston "Swede" Stephenson, OHST
Safety Health & Wellness Manager
Grand Canyon National Park
928-255-8727


References

NRC (2018). Nuclear Regulatory Commission, *Regulation of radioactive materials*. Retrieved from
https://www.nrc.gov/about-nrc/radiation/protects-you/reg-malls.html

NRC (2018). Nuclear Regulatory Commission, 10CFR §20, *Standards for protection against radiation*. Retrieved from
https://www.nrc.gov/reading-rm/doc-collections/cfr/part020/

NRC (2018). Nuclear Regulatory Commission 10CFR §20.1207, *Occupational dose limits for minors*. Retrieved from
https://www.nrc.gov/reading-rm/doc-collections/cfr/part020/part020-1207.html

NRC (2018). Nuclear Regulatory Commission 10CFR §20.1302, *Compliance with dose limits for individual members of the public*. https://www.nrc.gov/reading-rm/doc-collections/cfr/part020/part020-1302.html

NRC (2018). Nuclear Regulatory Commission 10CFR §20.1801 *Control and storage of licensed material*.  Retrieved from https://www.nrc.gov/reading-rm/doc-collections/cfr/part020/part020-1801.html

NRC (2018). Nuclear Regulatory Commission 10CFR §20.1802 *Control of material not in storage*.  Retrieved from
https://www.nrc.gov/reading-rm/doc-collections/cfr/part020/part020-1802.html

Translater's Café (2017). TranslatorsCafe.com. *Unit converter.* Retrieved from https://www.translatorscafe.com/unit-converter/en/radiation/27-24/milliroentgen/hour-microsievert/hour/?mobile=1

**17 attachments**



Stephenson GRCA Uranium 1.jpg
703K



Stephenson GRCA Uranium 2.jpg
525K



Stephenson GRCA Uranium 3.jpg
1010K



Stephenson GRCA Uranium 4.jpg
893K

Stephenson GRCA Uranium 6.jpg
913K





**Stephenson GRCA Uranium 7.jpg**
894K



**Stephenson GRCA Uranium 8.jpg**
904K



**Stephenson GRCA Uranium 9.jpg**
654K



**Stephenson GRCA Uranium 10.jpg**
585K

**Stephenson GRCA Uranium 11.jpg**
601K





**Stephenson GRCA Uranium 12.jpg**
665K



**Stephenson GRCA Uranium 13.jpg**
622K



**Stephenson GRCA Uranium 14.jpg**
595K



**Stephenson GRCA Uranium 15.jpg**
582K

**Stephenson GRCA Uranium 16.jpg**
606K

1/30/2019                DEPARTMENT OF THE INTERIOR Mail - URGENT HELP: Uranium Exposure at Grand Canyon National Park



📄 **Stephenson GRCA - Trip Report - GRCA Radiation Concerns - June 2018.pdf**
71K

📄 **Stephenson Grand Canyon - Rad Resp- Uranium report (1).docx**
183K

# EXHIBIT D-1