# EXHIBIT X-15

# EXHIBIT X-15

# UNITED STATES DEPARTMENT OF

# THE INTERIOR

# NATIONAL PARK SERVICE

# REPORT OF INVESTIGATION

**Investigation conducted by:**
**The Law Offices of Stuart L. Plotnick**
**Neil Jacobs - Investigator**
**51 Monroe Street, Suite 701**
**Rockville, Maryland 20850**
**301.251.1286  (phone)**
**301.762.8539 (fax)**

**COMPLAINANT'S NAME: Elston L. Stephenson**
**COMPLAINT NUMBER: NPS-18-0460**

This document is for **OFFICIAL USE ONLY**. Neither it nor its contents are to be  distributed outside of your Agency, nor duplicated, without proper authorization.  You  should be advised that any unauthorized use of this document **might** subject you to  penalties provided by law.

1

since June 2014. Mr. Drapeaux is familiar with Complainant as his first level supervisor .
He is aware from visual observation that Complainant is an African American.

**Matthew Vandzura** (White) responsible management official, is Chief Ranger, grade
GS-14, United States Department of the Interior (DOI), National Park Service (NPS),
Grand Canyon National Park, Grand Canyon, AZ. He has been in his position since
March 2016, and has worked for the Agency since 1989. Mr. Vandzura is familiar with
Complainant as the Safety Officer at Grand Canyon National Park. He is aware that
Complainant is African American from visual observation of him.

**Charles Erikson** (Caucasian) witness, is a Visitor Use Assistant; grade GS-5, United
States Department of the Interior (DOI), National Park Service (NPS), Grand Canyon
National Park, Grand Canyon, AZ. He has been in his position since April 2016 and has
worked for the Agency since 2011. Mr. Erikson is aware that Complainant is African
American from visual observation of him.

**David Kane** (Caucasian) witness, is Chief of Safety, Health and Wellness; grade GS-14,
United States Department of the Interior (DOI), National Park Service (NPS), Grand
Canyon National Park, Grand Canyon, AZ. He has been in his position since August,
2016, and has worked for the Agency since 2008. Mr. Kane is aware of Complainant
being African American from visual observation of him.

## Summary

> **Whether the complainant was subjected to harassment and discriminated
> against on the basis of race (African American) when:**
>
> 1. **He was not given a performance appraisal during his entire tenure at
>    GRCA (Grand Canyon National Park).**

## Management Testimony

**Mr. Drapeaux** states that Complainant was not provided with a performance work plan
prior to the period November 9, 2019 to December 19, 2019. According to Mr.
Drapeaux, former Superintendent Lehnertz wanted to fire Complainant during his
probationary period. He states that she utilized words in describing Complainant that led
him to believe that she was basing her feelings toward him on his race rather than
performance. Mr. Drapeaux states that he did not want to prepare a performance work
plan for Complainant because he believed that Ms. Lehnertz would want material placed
in it that could be used to justify his termination. He states that he himself had filed
several complaints against Ms. Lehnertz. Mr. Drapeaux states that Ms. Lehnertz was
subsequently suspended, and voluntarily resigned from her position last Spring.

Mr. Drapeaux states that Complainant has since requested a performance work plan
and/or appraisal from him both in writing and verbally. He states that he has
attempted to meet with Complainant on multiple occasions to design his performance

5

responsibilities in the Park during the same period.  Mr. Drapeaux states that he advised Complainant to seek different dates, plan and request well in advance to ensure proper discussion and planning for his time out of the Park.  Both of these types of training are readily available to safety professionals throughout any given year and making better planning choices makes the best sense giving the responsibilities of the Park's Safety Manager role.  Mr. Drapeaux states that he denied both trainings based on Park priorities and Park immediate needs.

5. **In May of 2018, he began submitting appointment letters of which are required by OSHA, to the Superintendent for signature, and they were never signed.**

**Management Testimony**

**Mr. Drapeaux** states that he is not aware of what an appointment letter is nor its purpose. He states that he is unaware of Complainant submitting and appointment letters to the Superintendent or of her not signing them.

6. **On June 15, 2018, and four (4) days following, the Superintendent excluded him from uranium readings, and other exposure information, while providing the information to a non NPS employee (Caucasian, and an Intermountain Region employee (Caucasian) with less experience.**

**Management Testimony**

**Mr. Drapeaux** states that he is not an expert or knowledgeable of what a "uranium reading" is.  He states that he is unaware of Complainant being involved in uranium readings or exposure information.  Mr. Drapeaux states that he has no knowledge of Complainant on June 15, 2018, being excluded from uranium readings and other exposure information.

7. **His budget request for the Safety Department was denied on multiple occasions; however, all other safety programs run by Caucasian managers are afforded their own budget.**

**Management Testimony**

**Mr. Drapeaux** states that Complainant is Park Safety Manager, which encompasses one other authorized position for him to hire.  He does not have the title of Director.  He states that Safety is a responsibility of all employees and supervisors.  According to Mr. Drapeaux, the Park teaches Operational Leadership to employees.  He states that the Safety Manager has responsibilities specific to his job description and is identified as an integral part of the Employee Safety, Health and Wellness Committee.

Mr. Drapeaux states that due to insufficient budget allocations, a decision by the park senior leadership team, prior to the complainant's arrival at the park, determined that safety related purchases were the responsibility of the divisions.  The responsibility of the

**In the Matter of Elston L. Stephenson**
**Complaint Number: NPS-18-0460**
**Agency: United States Department of Interior**
**National Park Service**

## STATEMENT OF WOODY SMECK
## RESPONSIBLE MANAGEMENT OFFICIAL

My name is Woody Smeck. My job title is Superintendent; grade GS-0025-15, National Park Service, Sequoia and Kings Canyon National Parks, Three Rivers, CA. I have been in my position since April 2013. I have worked for the Agency since July 1991. My telephone number during the day is 559-565-3101.


I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and United States Department of Interior policy and National Park Service policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the Untied States Department of Interior and National Park Service. I must provide a statement for the investigative report, which is true, and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulation as well as those of the United States Department of Interior and National Park Service. The Complainant and the appropriate Departmental officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear the statement that follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

**Background**

Q.   What is your race?

A.   White

Q.   What is your job title?

IInitials  *WS*

# EXHIBIT I



United States Department of the Interior
OFFICE OF THE SECRETARY
Washington, DC 20240

## OFFICE OF CIVIL RIGHTS

| | |
|---|---|
| Elston L. Stephenson, )<br>Complainant, )<br>)<br>v.                         )<br>)<br>David Bernhardt, )<br>Acting Secretary, )<br>U. S. Department of the Interior, )<br>Agency.                   ) | Agency Case No.: DOI- NPS-18-0460 |

## AGENCY DECISION ON COMPLIANCE-BREACH OF SETTLEMENT AGREEMENT ALLEGATION

### I. INTRODUCTION

Elston L. Stephenson, Complainant, is employed as a Safety, Health and Wellness Manager, GS-0018-13, by the United States Department of the Interior (DOI), National Park Service (NPS), at the Grand Canyon National Park, in Grand Canyon, AZ. On September 13, 2018, and September 18, 2018, the Agency and Complainant executed a Settlement Agreement (SA) resolving the above-numbered EEO Complaint. The SA became effective on September 25, 2018. (Attachment 1).

In a letter received in the Departmental Office of Civil Rights (OCR) on October 31, 2018, Complainant alleged that the Agency breached the Settlement Agreement in the instant case, specifically Paragraph 19. Complaint requested that his EEO Complaint be reinstated for further processing from the point at which processing ceased. (Attachment 2).

An Acknowledgment Letter was issued to Complainant by OCR on December 3, 2018, confirming receipt of Complainant's Breach of Settlement Agreement Allegation. (Attachment 3). Also on December 3, 2018, OCR issued a Notice of Agency Non-Compliance Allegation to Rick Frost, Deputy Regional Director, Inter-Mountain Region, NPS (the authorized representative who signed the SA on behalf of the Agency), requesting a Response and any supporting documentation. (Attachment 4).

Management's Response to Notice of Agency Non-Compliance Allegation was received in OCR on December 18, 2018. (Attachment 5). The record also includes an e-mail, dated October 25, 2018,



● Page 2

from Rick Frost to Complainant, accompanied by a copy of a signature page from the COOP, with an a signature and approval date of October 23, 2018. **(Attachment 6)**.

On December 22, 2018, OCR Employees were furloughed due to a Partial Government Shutdown, which lasted until January 25, 2019. OCR Employees returned to duty on January 28, 2019, the first workday following termination of the furlough.

The Agency is taking final action on this Alleged Breach of Settlement Claim by issuing this Decision in accordance with the Equal Employment Opportunity Commission's (Commission, EEOC) regulation at 29 C.F.R.§ 1614.504. The following analysis and findings represent the final decision of the Agency.

## II. ANALYSIS METHODOLOGY

The EEOC's regulation, at 29 C.F.R. § 1614.504, provides that if the complainant believes that the agency failed to comply with the terms of a settlement agreement, the complainant should notify the director of the Equal Employment Opportunity Office, in writing, of the alleged noncompliance with the settlement agreement, within thirty (30) days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of the settlement agreement be specifically implemented or, alternately, that the complaint be reinstated for further processing from the point at which processing ceased. The agency shall resolve the matter and respond to the complainant, in writing. If the agency has not responded to the complainant, in writing, or the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or the final decision.

Additionally, 29 C.F.R. § 1614.504(a) provides that any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties.

The Commission has held that a settlement agreement constitutes a contract between the employee and the Agency, to which ordinary rules of contract construction apply. *See Herrington v. Dep't of Def.*, EEOC Request No. 05960032 (December 9, 1996). The Commission has further held that it is the intent of the parties as expressed in the contract, not some unexpressed intention, that controls the contract's construction. *Eggleston v. Dep't of Veterans Affairs*, EEOC Request No. 05900795 (August 23, 1990). In ascertaining the intent of the parties with regard to the terms of a settlement agreement, the Commission has generally relied on the *Plain Meaning Rule*. See *Hyon O v. U.S. Postal Serv.*, EEOC Request No. 05910787 (December 2, 1991). This rule states that if the writing appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature. See *Montgomery Elevator Co. v. Building Eng'g Servs. Co.*, 730 F.2d 377 (5th Cir. 1984).

● Page 3

Additionally, the Commission has stated that it is "not generally concerned with the adequacy or fairness of the consideration in a settlement agreement, as long as some legal detriment is incurred as part of the bargain." See *Terracina v. Dep't of Health & Human Services*, EEOC Request No. 05910888 (March 11, 1992). When, however, one of the contracting parties incurs no legal detriment, the settlement agreement will be set aside for lack of consideration. See *Morita v. Dep't of the Air Force*, EEOC Request No. 05960450 (Dec. 12, 1997).

Finally, the EEOC's Regulation at 29 C.F.R. § 1614.504 (c) provides that allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints under 29 C.F.R. §1614.106 or 29 C.F.R. §1614.204, as appropriate, rather than under this section.

## III. DISCUSSION AND ANALYSIS

Complainant submitted a letter, received in OCR on October 31, 2018, alleging as follows:

1. The Department of the Interior (Agency) has violated-is in Non-Compliance with Clause 19 of the Mediation Settlement Agreement.
2. Per Clause 19, "The Agency agrees that the [Grand Canyon National Park (GRCA)] Superintendent will designate as an essential position the Safety, Health, and Wellness Manager in the Continuity of Operations Plan [COOP] no later than September 30, 2018."
3. Agency failed to do this by the September 30, 2018 deadline. As of this writing, Agency has still failed to comply with Clause 19.
4. Further, Agency attempted to fraudulently knowingly and wittingly dupe the Complainant into believing that it had complied with Clause 19 with portrayals, when it had not.
5. The text of the COOP document makes no mention of the Safety Health and Wellness Manager designated as essential position. Nor is it treated equally to other positions in the document (e.g. Public Information Officer, Liaison, Logistics Section Chief, etc.). Although "Safety" is inserted 3 times in the document, this does not constitute "designating" the Safety Health and Wellness Manager as "essential."
6. Most importantly, the document is never signed by the GRCA Superintendent-a requirement for the document to be in full effect.
7. The document is 130 pages. Please receive the Page 4 Review and Approval (scanned October 1, 2018) with the Superintendent's required signature notably missing.
8. Please receive Page 6 of the Table of Contents with the Safety Health and Wellness Manager position notably missing.
9. Please note that there is no document designating the Safety Health and Wellness Manager as "essential" because none was ever produced by Agency. (Attachment 2).

The Agency responded to Complainant's allegation as follows:

1. Pursuant to the agreement, the Superintendent's office at Grand Canyon National Park directed its chief ranger to update the COOP plan to reflect this part of the agreement.

• Page 4

2. On pages 11 and 12 of the updated plan there are three references to the park safety
   officer being part of the Continuity of Operations Incident Management Team (IMT).
3. The COOP document states that the park has identified key personnel that will be
   required to provide direction and technical expertise for the reinstatement of critical
   and normal business functions.
4. In the eyes of the agency key personnel are all essential positions in an IMT.
5. The document goes on to list "The positions that will be staffed when fully activated."
   Among those key positions is the park safety officer.
6. It is the intention of the agency that the park safety officer is the park Safety, Health
   and Wellness Manager.
7. The safety officer is identified in three places in the document as a key person on the
   COOP IMT team:
8. The position is part of a list of key personnel: it is located on an organizational chart of
   key personnel; and it is listed in Figure 2 on page 12 as one of the key personnel.  I
   have attached the relevant pages of the plan with this letter.
9. The plan was signed by both Deputy Superintendents at Grand Canyon on September
   28, 2018.
10. The superintendent was not in the park at that time.  Due to the absence of the
    superintendent from the office for an extended period of time, one of the acting deputy
    superintendents, Brian Drapeaux, signed the document as acting superintendent on Oct.
    23, 2018.  I have attached that signature page to this letter as well. **(Attachment 5)**.

In determining whether the Agency breached the Settlement Agreement, we must first determine
whether the Settlement Agreement is governed by the aforementioned plain meaning rule. See
*Hyon O v. U.S. Postal Serv.*, EEOC Request No. 05910787 (December 2, 1991).  As indicated in
the Analysis Methodology Section (II) of this Decision, the plain meaning rule states that if the
writing appears to be plain and unambiguous on its face, its meaning must be determined from
the four corners of the instrument without resort to extrinsic evidence of any nature.  See
*Montgomery Elevator Co. v. Building Eng'g Servs. Co.*, 730 F.2d 377 (5th Cir. 1984).

In reviewing the Settlement Agreement (**Attachment 1**), I discovered the following four (4)
provisions pertinent to this matter:

1. **Effective Date.** This Settlement Agreement shall become effective as of the date the
   Agreement is signed by all parties and after expiration of the revocation period as outlined in
   Paragraph 6 of this Agreement.[1]

2. **Effect of Signatures.** The signatures affixed to this Settlement Agreement establish that
   Complainant and the Department of the Interior (a) have read this entire document,
   (b) have knowingly, voluntarily, and in good faith entered into this Settlement Agreement, (c) have
   not been induced by or through fraud, misrepresentation, duress, threat, or coercion, (d) fully

---

[1] Paragraph 6 permits Complainant to revoke the SA, "no later than seven (7) days following the date on which
he signs this Settlement Agreement"

● **Page 5**

understand all terms and conditions described in this Settlement Agreement, (e) agree with all terms and conditions described in this Settlement Agreement, and (f) agree to satisfy and perform, in good faith, the terms and conditions described in this Settlement Agreement.

15. **Process Related to Allegations of Agency Non-Compliance.** Complainant and the Agency enter into this Settlement Agreement consistent with and guided by the authority contained in 29 C.F.R. §§ 1614.504 and 1614.603, and agree that the terms of this Settlement Agreement shall bind Complainant, the Agency, their respective employees, officials, agents, representatives, successors, and assigns.  If Complainant believes that the Agency has failed to comply with the terms of this Settlement Agreement, he shall, in accordance with 29 C.F.R. § 1614.504(a), provide written notice to the Department's Director of the Office of Civil Rights, U.S. Department of the Interior, of the alleged noncompliance within thirty (30) days of the date on which he knew or should have known of the alleged noncompliance. Complainant may request (a) that the terms of the Settlement Agreement be specifically implemented, or (b) that the Complaint be reinstated for further processing from the point at which processing ceased.  Complainant agrees that if he elects to reinstate the Complaint from the point at which processing ceased, he shall return to the Agency, within thirty (30) days of reinstatement of the Complaint, all benefits and consideration which he received pursuant to the terms and conditions of this Settlement Agreement.

19. **The Agency agrees** that the Superintendent will designate as an essential position the Safety, Health and Wellness Manager in the Continuity of Operations Plan (COOP) no later than September 30, 2018.

I find that the Settlement Agreement, signed by the Agency on September 13, 2018, and Complainant on September 18, 2018, is clear and unambiguous, and subject to the application of the plain meaning rule.  Since the Settlement Agreement is plain and unambiguous on its face, its meaning must be determined from the four corners of the Settlement Agreement without resort to extrinsic evidence of any nature.  I will determine the parties' intention from the Settlement Agreement alone.

Meanwhile, in the Settlement Agreement, Complainant and the Agency agreed, among other terms, to the four (4) aforementioned Terms and Conditions.  Those aforementioned Terms and Conditions clearly demonstrate the clear and unambiguous nature of the Settlement Agreement.

Following a thorough review of the record in this matter, I find the following:

     A.   Pursuant to Paragraphs 1 and 6 of the instant Settlement Agreement, it became effective September 25, 2018, following expiration of a seven (7)-day revocation period after the date Complainant signed the SA (September 18, 2018).

     B.   Paragraph 15 required Complainant to submit to the Agency, written notification of noncompliance within 30 days of the date on which Complainant knew or should have known of the alleged noncompliance.

     C.   Complainant complied with Paragraph 15, and timely submitted to the Departmental Office of Civil Rights, Complainant's Notice of Agency Noncompliance with the SA.

● Page 6

D. Paragraph 19 required the Superintendent, Grand Canyon National Park (GRCA) to designate, as an essential position the Safety, Health and Wellness Manager in the Continuity of Operations Plan (COOP) no later than September 30, 2018.

E. The Agency failed to timely comply with Paragraph 19 of the SA by September 30, 2018 as follows:

   1. While the Agency agreed to designate Complainant's position Safety, Health and Wellness Manager, as "essential" in the COOP, the Superintendent, Grand Canyon National Park failed to do so, and provided no evidence of such inclusion.

   2. The Agency's use of the term *Safety Officer* in three (3) locations of the COOP did not constuitute designation of Complainant's position, Safety, Health and Wellness Manager as "essential" in the COOP.

   3. The Agency's submission of a signature page (*Review and Approval*) from the COOP to Complainant as proof of compliance with Paragraph 19 can best be described as bad faith based on the following:

      a. The *Review and Approval* page contained purported signatures of the Chief Ranger (*9/21/18*); Deputy Superintendent Operations (*9/28/18*); and Deputy Superintendent Business (*9/28/18*), recommending the COOP for approval by the Superintendent, GRCA.

      b. The *Review and Approval page* in question lacked the signature of the Superintendent, GRCA.

   4. Following Complainant's expression of displeasure with the lack of compliance to Management,  the Agency produced a second *Review and Approval* page containing the signature of the Deputy Superintendent Business, supposedly approving the COOP on behalf of the Superintendent, GRCA, on October 23, 2018.

   5. The supposed approval by the Deputy Superintendent Business, who recommended approval on September 28, 2018, is highly questionable, since he initially recommended approval, then subsequently approved the COOP.

   6. Management's Response to Complainant's Noncompliance Allegation included the statement, "In the eyes of the agency key personnel are all essential positions in an IMT."  This statement ignores the fact that the Agency agreed to  to *designate, as an essential position the Safety, Health and Wellness Manager  in the Continuity of Operations Plan (COOP) no later than September 30, 2018.*

   7. Management's claim, *It is the intention of the agency that the park safety officer is the park Safety, Health and Wellness Manager* does not absolve the Agency from its obligligation to comply with Paragraph 19 of the SA.

● Page 7

## IV. CONCLUSION

After analyzing the entire record and applying the aforementioned legal standards, we find that the Agency failed to comply with the Settlement Agreement, specifically Paragraph 19, as alleged in Complainant's Allegation of Agency Non-Compliance. The Agency is ordered to process Complainant's EEO Complaint in accordance with 29 C.F.R. Part 1614, from the point processing ceased.

The Agency shall acknowledge to Complainant within thirty (30) calendar days of the date this decision was issued, that the complaint in question has been reinstated and is being processed. Complainant must return to the Agency, within thirty (30) calendar days of reinstatement of his complaint, all benefits and consideration which he received pursuant to the terms and conditions of the Settlement Agreement. The Agency shall submit to OCR a Compliance Report within thirty (30) days of the issuance of this Decision, confirming compliance with this Decision.

This is the United States Department of the Interior's Final Decision on Compliance, and the final action in this matter.  If the Complainant is dissatisfied with this action, he has the following appeal rights.

### APPEAL RIGHTS TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

29 C.F.R. §1614.402(a) provides that an appeal of the agency's final decision to the Equal Employment Opportunity Commission (EEOC) must be filed by an appellant within thirty (30) days of receipt of an agency's or Administrative Judge's dismissal, final action, or decision.  If the appellant is represented by an attorney of record, the 30-day time limit shall begin to run from the date of receipt by the attorney of the notice of dismissal, final action, or final decision without a hearing. All such appeals must be filed with the EEOC (Commission) at the following address:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 77960
> Washington, D.C. 20013

As an alternative to mailing, appeals may be hand-delivered to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> 131 M Street, N.E., Fifth Floor
> Washington, D.C. 20507

As a further alternative, appeals that are 10 pages or less may be sent by facsimile fax to:  (202) 663-7022. The appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC.

● Page 8

Complainant shall furnish a copy of the appeal to the agency at the same time it is filed with the Commission at the address below:

> U.S. Department of the Interior
> Office of Civil Rights
> Tanisha M. Edmonds, Esq., Acting Director
> 1849 C Street, N.W., Suite 4353
> Washington, D.C. 20240

In or attached to the appeal to the Commission, the Appellant must certify the date and method by which service was made to the opposing party. The Appellant should use EEOC Form 573, Notice of Appeal/Petition (copy enclosed).

If the appeal is not filed within the thirty (30)-calendar day time limit, the appeal may be dismissed by the EEOC. However, the EEOC may, at its discretion, extend the time limits and accept the appeal based upon a written statement that there was no actual notification of the time limit, or that a timely Notice of Appeal could not be filed, due to extenuating circumstances.

Any statement or brief in support of the appeal must be submitted to the EEOC within 30-calendar days of filing of the Notice of Appeal. The EEOC, Office of Federal Operations, accepts statements or briefs in support of appeals by facsimile transmittal, provided that they are not more than ten (10) pages long. Any statement or brief in opposition to the appeal must be submitted to the EEOC and served on the Appellant (or the attorney of record, if represented by an attorney) within 30-calendar days of receipt of the statement or brief supporting the appeal, or if no statement or brief supporting the appeal has been filed, within sixty (60) days of receipt of the appeal.

It is the responsibility of the U.S. Department of the Interior to submit the entire complaint file to the EEOC, Office of Federal Operations, within 30-calendar days of initial notification that an appeal has been filed.

## CIVIL ACTIONS

In lieu of an appeal to the Commission, you may file a civil action in an appropriate United States District Court within <u>90 calendar days</u> of receipt of the final decision.

If you file an appeal with the Commission, and you are not satisfied with the Commission's decision, you may file a civil action in a United States District Court within <u>90 calendar days</u> of receipt of the Commission's final decision.

You may also file a civil action any time after <u>180 calendar days</u> from the date of filing an appeal with the Commission, if there has been no final decision by the Commission. If you decide to file a civil action and are unable to afford Counsel, the Civil Rights Act gives the Court discretionary authority to appoint Counsel without payment of fees or costs by you. The granting or denial of your request is

within the sole discretion of the Court. Your request and the civil action must be filed within 90 days of the date the final decision is received.

If you file a civil action involving this complaint, you must specifically name the Acting Secretary of the Department of the Interior, David Bernhardt, as Defendant. Failure to do so may result in the loss of any judicial redress to which you may be entitled.

It is important to note that 29 C.F.R. §1614.409 states, "Filing of a civil action under §1614.408 or §1614.409 shall terminate Commission's processing of the appeal. If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing."

Tanisha M. Edmonds, Esq.
Acting Director
Office of Civil Rights

March 20, 2019
Date

Attachments:

1. Settlement Agreement Signed September 13, 2018 (Agency), and September 18, 2018 (Complainant)
2. Complainant's Letter Alleging Breach of Settlement Agreement, Received October 31, 2018
3. Acknowledgment Letter Issued to Complainant by OCR, December 3, 2018
4. Notice of Agency Non-Compliance Allegation, Dated December 3, 2018. to Agency Management Official
5. Management's Response to Notice of Agency Non-Compliance Allegation, Received in OCR December 18, 2018
6. E-mail from Rick Frost to Complainant, Dated October 25, 2018, and Copy of Signed Review And Approval Page of COOP

Enclosure: EEOC Appeal Form

cc:
Complainant: Elston L. Stephenson, 41551 Ventana Drive, Palmdale, CA 93551; Certified Mail Number (9414 7266 9904 2969 6702 75)

Rose Blankenship, EEO Officer, National Park Service (Inter-Office Mail)

# EXHIBIT X-11

**Due Deference Notification - GRCA Opening US Mail/Federal Court Documents, Notification to US District Court, DOJ, OSC**

Stephenson, Elston L <elston_stephenson@nps.gov>
Tue 9/29/2020 4:37 AM

To: dwbernhardt@ios.gov <dwbernhardt@ios.gov>; Greenblatt, Mark L <mark_greenblatt@doioig.gov>
Cc: Keable, Edward T <edward_keable@nps.gov>; Burnette, Chris C <chris_burnette@nps.gov>; Rowe, Louis R <Louis_Rowe@nps.gov>

Mr. Secretary,

Sir, Good Morning.

On September 19, 2020 I was informed by the GRCA Deputy Superintendent, Operations that on at least one occasion someone had deliberately opened my US Mail.

As You know, I have a federal case in US District Court, Arizona against GRCA Deputy Superintendent Brian Drapeaux.

On at least one occasion these were Court documents clearly addressed to me, clearly sent by the Court.

Sir, respectfully, as You know; these are several 18USC felonies---both with respect to the US Mail, and interfering with federal court proceedings/obstruction of justice.

I have notified the Court, the Justice Department directly, and the Justice Department through the Office of Special Counsel.

Thank You, Mr. Secretary.


Very Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

Re: Due Deference Notification - GRCA Opening US Mail/Federal Court Documents, Notification to US District Court, DOJ, OSC

Stephenson, Elston L <elston_stephenson@nps.gov>
Tue 9/29/2020 5:29 AM
**To:** dwbernhardt@ios.gov <dwbernhardt@ios.gov>; Greenblatt, Mark L <mark_greenblatt@doioig.gov>
**Cc:** Keable, Edward T <edward_keable@nps.gov>; Burnette, Chris C <chris_burnette@nps.gov>; Rowe, Louis R <Louis_Rowe@nps.gov>

Mr. Secretary,

Correction Sir; the date was September 16, 2020.

Thank You, Mr. Secretary.


With Apologies,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

---

**From:** Stephenson, Elston L
**Sent:** Tuesday, September 29, 2020 4:37 AM
**To:** dwbernhardt@ios.gov <dwbernhardt@ios.gov>; Greenblatt, Mark L <mark_greenblatt@doioig.gov>
**Cc:** Keable, Edward T <edward_keable@nps.gov>; Burnette, Chris C <chris_burnette@nps.gov>; Rowe, Louis R <Louis_Rowe@nps.gov>
**Subject:** Due Deference Notification - GRCA Opening US Mail/Federal Court Documents, Notification to US District Court, DOJ, OSC

Mr. Secretary,

Sir, Good Morning.

On September 19, 2020 I was informed by the GRCA Deputy Superintendent, Operations that on at least one occasion someone had deliberately opened my US Mail.

As You know, I have a federal case in US District Court, Arizona against GRCA Deputy Superintendent Brian Drapeaux.

On at least one occasion these were Court documents clearly addressed to me, clearly sent by the Court.

Sir, respectfully, as You know; these are several 18USC felonies---both with respect to the US Mail, and interfering with federal court proceedings/obstruction of justice.

I have notified the Court, the Justice Department directly, and the Justice Department through the Office of Special Counsel.

Thank You, Mr. Secretary.


Very Sincerely,

Elston

Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727











# EXHIBIT X-31

Elston L Stephenson (Plaintiff)
Case 3:19-cv-08268-DLR
P.O. Box 129
Grand Canyon, AZ 86023
June 2, 2020

U.S. District Court Clerk's Office
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington Street, SPC 1
Phoenix, AZ 85003-2118

Dear Court,

Please receive and consider this request for STIPULATION FOR EXTENSION OF TIME TO RECEIVE

NOTICE AND COURT DOCUMENTS (Second Request) in the case of STEPHENSON V DRAPEAUX due

to COVID-19 pandemic disrupting Grand Canyon National Park mailroom delivery.

Thank You



Sincerely,

Elston L Stephenson



STIPULATION FOR EXTENSION

        Your Honor, respectfully, Plaintiff seeks a 90-day Extension in this case in order to

appropriately secure Notice of the Court's ruling in several filings before this Court and any other

Court documents in accordance with Rule 5 of the *Federal Rules of Civil Procedure*. And time to

answer/reply while in a continually developing COVID-19 posture.

        Your Honor, the COVID-19 pandemic impacts such as 'lock downs', restricted hours, park closure, and

other protocols disrupted the U.S. mail service at Grand Canyon National Park. Additionally, the mail clerk

being 'vulnerable' along with COVID-19 related restrictions hampered Plaintiff's ability to collect the Court's documents. After the clerk retired, the new mail clerk notified Plaintiff that several Court documents mailed to Plaintiff were 'returned to sender'. Prior to the COVID-19 pandemic, Plaintiff filed 1 Reply and 2 Motions; but never received the Court's rulings/decisions, Defendant's Reply, or other documents which may have been sent by the Court.

Respectfully, Plaintiff asks that the Courts decisions listed below be re-sent to Plaintiff:

MOTION FOR INJUCTION OF PROTECTION AGAINST RETALIATION, dated March 8, 2020

REPLY to U.S. Attorney's REPLY to Plaintiff's RESPONSE TO MOTION TO DISMISS, dated February 22, 2020

MOTION FOR PRESERVATION ORDER, dated January 25, 2019 [2020].  Front page to each attached.

As the Court may itself be experiencing, COVID-19 response measures are in flux and make a shorter Extension timeline tenuous and likely subject to disruption.

Your Honor, in the interest of justice, and consistent with due process and Rule 5 of the *Federal Rules of Civil Procedure*, I respectfully ask that the Court extends any deadlines 90 days so that Plaintiff may receive the Court's documents and reliably respond to them in this COVID-19 environment.

Thank You, Your Honor.


Respectfully Submitted,



Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727

# EXHIBIT X-22



PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
MAILING SERVICES

ARIZONA MOTOR VEHICLE DIVISION
POST OFFICE BOX 2100
PHOENIX, AZ 85001-2100
**RETURN SERVICE REQUESTED**

1987

ELSTON STEPHENSON
PO BOX 129
GRAND CANYON AZ 860230129

245   HA07IP1   86023

**RETURN SERVICE REQUESTED**

# ADOT

## Motor Vehicle Division

40-5140  R12/13

## azdot.gov

ELSTON STEPHENSON
PO BOX 129
GRAND CANYON AZ 860230129

1987

To protect your personal identity you must destroy your temporary or expired permit, driver license, or State ID Card.

Examine your card carefully to verify that all information is correct. For any issues with your card, please contact MVD:
Website: azdot.gov/contactmvd
Phone: 602.255.0072
Hearing/Speech Impaired TDD:
    Phoenix: 602.712.3222
    Elsewhere: 800.324.5425

20164A20138192050701

Arizona is required to clearly state on all non-federal compliant credentials "Not for Federal Identification." THESE CREDENTIALS WILL CONTINUE TO BE ACCEPTED FOR FEDERAL USE INCLUDING AIRPORTS UNTIL 10/1/2021.

Federal compliant credentials will have a gold circle marker with a star outline indicator and will continue to be accepted after 10/1/2021.

Remove card and place in your wallet.

⟶

## Save time with MVD online services

# SERVICE ARIZONA

Visit **ServiceArizona.com** for:
• Vehicle registration renewals
• Driver license motor vehicle records
• Duplicate driver licenses, IDs and more





**511**
Arizona Travel Info
az511.gov

Traffic and road information



Emissions testing information

myazcar.com

**PULL ASIDE STAY ALIVE**

Dust storm driving tips

PullAsideStayAlive.org



04.06.20

# EXHIBIT J



Stephenson, Elston <elston_stephenson@nps.gov>

## Follow-Up Grand Canyon Nat Park Citation 1363108

**Stephenson, Elston** <elston_stephenson@nps.gov>                    Thu, Jul 11, 2019 at 8:17 AM
To: "Barnett, Zachary - OSHA" <barnett.zachary@dol.gov>

Zach,

Good Morning & Belated Happy 4th!

Would it be possible to forward the Employer Grand Canyon National Park 'response' to Citation 1363108.

Although I made recommendations; I was not included in 'the GRCA/IMR/NPS huddle' for the final 1903.19 response (Abatement Certification, Documentation, or Plans).

As both the Complainant and the GRCA Safety Officer, would it be possible to forward GRCA's response to Citation 1363108.

Thank You.


Sincerely,

Swede
Elston L Stephenson, OHST
Safety Health & Wellness Manager
Tort Claims Officer
Grand Canyon National Park
928-255-8727



Stephenson, Elston <elston_stephenson@nps.gov>

## [EXTERNAL] Employer response to Grand Canyon

Barnett, Zachary - OSHA <Barnett.Zachary@dol.gov>                    Mon, Jul 15, 2019 at 1:36 PM
To: "Stephenson, Elston (elston_stephenson@nps.gov)" <elston_stephenson@nps.gov>

Hi Swede,

This is the only response information I have from the Grand Canyon regarding the Notices issued.

Z

📄 **Grand Canyon employer response.pdf**
    707K



IN REPLY REFER TO
10.C (8211)

**JUN 19 2019**

United States Department of the Interior

NATIONAL PARK SERVICE
GRAND CANYON NATIONAL PARK
P.O. BOX 129
GRAND CANYON, AZ 86023



T. Zachary Barnett, Area Director
U.S. Department of Labor
Occupational Safety and Health Administration
230 N 1st Avenue
Suite 202
Phoenix AZ 85003

Re: Inspection Number 1363108

Dear Mr. Barnett,

During an inspection on November 28, 2018, your staff identified three corrective actions that required Grand Canyon National Park (GRCA) to address. This letter also notifies you that the Park posted the Notice in prominent places throughout our buildings, including the park museum collection building

This letter serves as our abatement certification that Notice 1 Items 2 & 3. On Friday June 14, 2019 GRCA provided training to 39 staff members who have roles associated with preservation of museum collections and exhibits but also included park leadership, supervisors, and emergency first responders. This training included HAZCOM, HAZMAT, Safe Walking, Working Surfaces and Emergency Egress and additional Supervisor's Additional Training covered Accident Reporting, NPS Safety Management Information System and the Worker's Compensation Program

Grand Canyon National Park is planning to provide similar training to all park personnel within the next year and commits to continuing training into the future. This will include 4 to 5 more mandatory trainings before December 31st, 2019 to reach all employees. Attached is the Certification of Corrective Action Worksheet.

If you have any questions please feel free to contact me directly, or Brian Drapeaux at 928-638-7903.

Sincerely,

*Woody Smeck*

Woody Smeck
Acting Superintendent

RECEIVED
JUN 21 2019
OSHA-PHOENIX

*[handwritten margin notes:]* Designed to deflect & deli: berately falsified Notice1 Item2. Knowing to deflat & defraud Notice1 Item2. It never happened. Violation 18USC §1001 Violation 18USC §1031

**CERTIFICATION OF CORRECTIVE ACTION WORKSHEET -- FEDERAL AGENCIES**

**Inspection Number: 1363108**
Agency Name: National Park Service, dba Grand Canyon National Park
Inspection Site: 2C Albright Ave, Grand Canyon, AZ 86023
Issuance Date: 05/22/2019

Employer Instruction: List the specific method of correction for each item on the enclosed notices that does not read "Corrected During Inspection" and return to: **U.S. Department of Labor -- Occupational Safety and Health Administration, 230 N 1st Avenue, Suite 202, Phoenix, AZ 85003.** Failure to submit a timely certification of corrective action may result in a notification to your agency DASHO.

Notice Number ____1____ and Item Number __2__ was corrected on __6/14/19__
By (Method of Abatement): _Training for HAZCOM, HAZMAT, safe walking, working surfaces_ _NPS aging management, improved maintenance program_

Notice Number ____1____ and Item Number __3__ was corrected on __6/14/19__
By (Method of Abatement): _Training for HAZCOM, HAZMAT, safe walking surfaces and_ _NPS safety management information system and the welder compensation program_

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

I certify that the information contained in this document is accurate and that the affected employees and their representatives have been informed of the abatement.

_Wendy Smith_ _(signature)_
**Signature**

__6.19.19__
**Date**

_Acting Superintendent_
**Title**

**RECEIVED**

NOTE: 29 USC 666(g) whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment of not more than 6 months or both

OSHA PHOENIX

POSTING: A copy of completed Corrective Action Worksheet should be posted for employee review.

_[Handwritten marginal note, right side, rotated:]_ Designed to defraud + Deliberately + Deliberately falsified + defraud falsified document. Notice 1, Item 2 Violation 18USC § 1001 Violation 18 USC § 1031. If never happened.

**U.S. Department of Labor**
Occupational Safety and Health Administration
230 N 1st Avenue
Suite 202
Phoenix, AZ 85003



# Notice of Unsafe or Unhealthful Working Conditions

**To:**
National Park Service, dba Grand Canyon National
Park
PO Box 129
Grand Canyon, AZ 86023

**Inspection Site:**
2C Albright Ave
Grand Canyon, AZ 86023

**Inspection Number:** 1363108
**Inspection Date(s):** 11/28/2018 -
**Issuance Date:** 05/22/2019

*The violation(s) described in this Notice is (are) alleged to have occurred on or about the day(s) the inspection was made unless otherwise indicated within the description given below*

This Notice of Unsafe and Unhealthful Working Conditions (Notice) describes violations of the Occupational Safety and Health Act of 1970, the Executive Order 12196, and 29 CFR 1960, Basic Program Elements for Federal Employee Occupational Safety and Health Programs and Related Matters. You must abate the violations referred to in this Notice by the dates listed unless, within 15 working days (excluding weekends and Federal holidays) from your receipt of this Notice you request an Informal Conference with the US Department of Labor OSHA Area Office at the address shown above. Please refer to the enclosed publication "Federal Employer Rights and Responsibilities Following an OSHA Inspection" which outlines the appeals procedure for this Notice and which should be read in conjunction with this form. If you have any questions please contact this office at 602-514-7250

Posting – The law requires that a copy of this Notice be posted immediately in a prominent place at or near the location of the violation(s) cited herein, or, if it is not practicable because the nature of the employer's operations, where it will be readily observable by all affected employees. This Notice must remain posted until the violation(s) cited herein has (have) been abated, or for 3 working days (excluding weekends and Federal holidays), whichever is longer.

Notification of Corrective Action – For each violation which you do not appeal, you must provide abatement certification to the Area Director of the OSHA office issuing the Notice and identified above. This abatement certification is to be provided by letter within 10 calendar days after each abatement date. Abatement certification includes the date and method of abatement. If the Notice indicates that the violation was corrected

during the inspection, no abatement certification is required for that item. The abatement certification letter must be posted at the location where the violation appeared and the corrective action took place or employees must otherwise be effectively informed about abatement activities. A template abatement certification letter is enclosed with this Notice. In addition, where the Notice indicates that abatement documentation is required, evidence of the purchase or repair of equipment, photographs or video, receipts, training records, etc., verifying that abatement has occurred is required to be provided to the Area Director.

**Program Responsibilities** - Section 19(a)(1) of the OSH Act requires the head of each Federal agency to comply with applicable occupational safety and health standards. The intent of this section and Executive Order 12196 is implemented through 29 CFR 1960.8(b). If you are cited for violations of applicable safety and health standards, you have also violated the program element 29 CFR 1960.8(b), which stipulates:

*"The head of each agency shall comply with the Occupational Safety and Health Administration standards applicable to the agency."*

**Informal Conference** – An informal conference is not required. However, if you wish to have such a conference you may request one with the Area Director within 15 working days after receipt of this Notice. As soon as the time, date, and place of the informal conference have been determined please complete the enclosed "Notice to Employees" and post it where the Notice is posted. During such an informal conference you may present any evidence or views you believe would support an adjustment to the Notice. In addition, bring to the conference any and all supporting documentation of existing conditions as well as any abatement steps taken thus far.

If you are considering a request for an informal conference to discuss any issues related to the Notice, you must take care to schedule it early enough to allow time to appeal after the informal conference should you decide to do so. Please keep in mind that a written letter of intent to appeal must be submitted by the Agency's National OSH Manager to the OSHA Area Director within 15 business days of your receipt of the OSHA Notice to request that OSHA's Regional Administrator review the case.

**Inspection Activity Data** – You should be aware that OSHA publishes information on its inspection and notice activity on the Internet under the provisions of the Electronic Freedom of Information Act. The information related to these alleged violations will be posted when our system indicates that you have received this notice. You are encouraged to review the information concerning your establishment at www.OSHA.gov. If you have any dispute with the accuracy of the information displayed, please contact this office.

**U.S. Department of Labor**
Occupational Safety and Health Administration



# NOTICE TO EMPLOYEES

An informal conference has been scheduled with the Occupational Safety and Health

Administration (OSHA) to discuss the Notice of Unsafe or Unhealthful Working Conditions

(Notice) issued on 05/22/2019. The conference will be held by telephone or at the OSHA office

located at 230 N 1st Avenue, Suite 202, Phoenix, AZ 85003 on _____ at

_____. Employees and/or representatives of employees have a right to attend an

informal conference.

## CERTIFICATION OF CORRECTIVE ACTION WORKSHEET – FEDERAL AGENCIES

**Inspection Number: 1363108**
Agency Name: National Park Service, dba Grand Canyon National Park
Inspection Site: 2C Albright Ave, Grand Canyon, AZ 86023
Issuance Date: 05/22/2019

**Employer Instruction:** List the specific method of correction for each item on the enclosed notices that does not read "Corrected During Inspection" and return to: **U.S. Department of Labor – Occupational Safety and Health Administration, 230 N 1st Avenue, Suite 202, Phoenix, AZ 85003.** Failure to submit a timely certification of corrective action may result in a notification to your agency DASHO.

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Notice Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

I certify that the information contained in this document is accurate and that the affected employees and their representatives have been informed of the abatement.

_____                    _____

**Signature**                                                         **Date**

_____

**Title**

NOTE: 29 USC 666(g) whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment of not more than 6 months or both

POSTING: A copy of completed Corrective Action Worksheet should be posted for employee review.

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 1363108
Inspection Date(s): 11/28/2018 -
Issuance Date: 05/22/2019



## Notice of Unsafe and Unhealthful Working Conditions

**Company Name:** National Park Service, dba Grand Canyon National Park
**Inspection Site:** 2C Albright Ave, Grand Canyon, AZ 86023

---

Notice 1  Item 1      Type of Violation: **Serious**

29 CFR 1960.25(c):  The Agency did not inspect annually, all areas in each workplace, including office operations:

a) MUSEUM COLLECTIONS BUILDING AND Throughout the Entire Park: Annual inspections for the identification of safety and health hazards were not conducted since 2014. Employees were routinely exposed to the potential chemical and physical hazards associated with ingestion and inhalation when handling uranium core samples; and biological specimens and historical artifacts coated with preservatives to prevent deterioration.

### ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date by which Violation must be Abated:      07/10/2019

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1363108
**Inspection Date(s):** 11/28/2018 –
**Issuance Date:** 05/22/2019



## Notice of Unsafe and Unhealthful Working Conditions

**Company Name:** National Park Service, dba Grand Canyon National Park
**Inspection Site:** 2C Albright Ave, Grand Canyon, AZ 86023

---

Notice 1   Item 2      Type of Violation: **Serious**

29 CFR 1960.55(a): The Agency did not provide safety and health training for supervisory employees:

a)      Museum Collection Building and throughout the Park: Supervisors and employees in the
Museum Collection Building and other areas throughout the park were responsible for the collection,
storage, and preservation of physical artifacts and relevant materials associated with the Grand Canyon
including its geology, vegetation, habitation, and cultural history. The supervisor oversaw employees
working with uranium core samples, biological specimens, and historical artifacts coated with
preservatives to prevent deterioration while performing inventory and display/presentation set up, and
when those materials were used for research purposes. Employees had potential exposure to chemical
hazards such as uranium core samples, radon, cellulose nitrate film, and biological specimens preserved
with arsenic, cyanide of mercury, naphthalene, 1,4-dichlorobenzene and other chemicals, as well as
physical hazards such as slips, trips, falls, struck by hazards, and heat exposure. Despite the numerous
potential exposures, supervisors did not receive safety and health training from the Agency.

Date by which Violation must be Abated:      06/18/2019

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1363108
**Inspection Date(s):** 11/28/2018 -
**Issuance Date:** 05/22/2019



### Notice of Unsafe and Unhealthful Working Conditions

**Company Name:** National Park Service, dba Grand Canyon National Park
**Inspection Site:** 2C Albright Ave, Grand Canyon, AZ 86023

---

Notice 1  Item 3      Type of Violation: **Serious**

29 CFR 1960.59(a): The Agency did not provide appropriate safety and health training for employees:

a) MUSEUM COLLECTIONS BUILDING and throughout the Park:  Employees in the Museum
Collection Building and other areas throughout the park were responsible for the collection, storage,
and preservation of physical artifacts and relevant materials associated with the Grand Canyon
including its geology, vegetation, habitation, and cultural history. Employees worked with uranium core
samples, biological specimens, and historical artifacts coated with preservatives to prevent
deterioration while performing inventory and display/presentation set up, and when those materials
were used for research purposes. Employees had potential exposure to chemical hazards such as
uranium core samples, radon, cellulose nitrate film, and biological specimens preserved with arsenic,
cyanide of mercury, naphthalene, 1,4-dichlorobenzene and other chemicals, as well as physical hazards
such as slips, trips, falls, struck by hazards, and heat exposure.  Despite the numerous potential
exposures, employees did not receive safety and health training from the Agency.

Date by which Violation must be Abated:     06/18/2019

Zachary Barnett
Area Director

# Federal Employer Rights and Responsibilities Following an OSHA Inspection-1996

## After an Inspection

An inspection of your workplace was conducted in accordance with the Occupational Safety and Health Act of 1970, Executive Order 12196, and 29 CFR Part 1960, Basic Program Elements for Federal Employee Occupational Safety and Health Programs and Related Matters. The compliance safety and health officer (CSHO) who conducted the inspection has found conditions that are in violation of the Act, Executive Order 12196, or 29 CFR Part 1960, and you have been issued a Notice of Unsafe or Unhealthful Working Conditions, OSHA-2H Form (OSHA Notice) that explains in detail the exact nature of the alleged violation(s).

This pamphlet contains important information regarding your rights and responsibilities under the Act, Executive Order 12196, and 29 CFR Part 1960. For each apparent violation found during the inspection, the compliance officer discussed the following with you:

* The nature of the violation,
* Possible abatement measures you may take to correct the violative condition, and
* Possible abatement dates you may be required to meet.

## Types of Violations

* **WILLFUL:** A willful violation is defined as a violation in which the employer either knowingly failed to comply with a legal requirement (purposeful disregard) or acted with plain indifference to employee safety.
* **SERIOUS:** A serious violation exists when the workplace hazard could cause an accident or illness that would most likely result in death or serious physical harm, unless the employer did not know or could not have known of the violation.
* **REPEATED:** A Federal agency may be cited for a repeated violation if the agency has been cited previously for the same or a substantially similar condition and, for a serious violation, OSHA's regionwide (see last page) inspection history for the agency lists a previous OSHA Notice issued within the past five years; or, for an other-than-serious violation, the establishment being inspected received a previous OSHA Notice issued within the past five years.
* **OTHER-THAN-SERIOUS:** A violation that has a direct relationship to job safety and health, but is not serious in nature, is classified as "other-than-serious."

## Posting Requirements

When you receive an OSHA Notice, you must post it (or a copy of it) at or near the place where each violation occurred to make employees aware of the hazards to which they may be exposed. The OSHA Notice must remain posted for 3 working days or until the hazard is abated, whichever is longer. (Saturdays, Sundays and Federal holidays are not counted as working days).

## Employer Options

As an employer who has been cited, you may:

- Correct the condition by the date set in the OSHA Notice and/or,
- Request an Informal Conference within 15 working days from the time you received the OSHA Notice with the OSHA Area Director to discuss the violations and/or the abatement dates.

## How to Comply

For violations cited in the OSHA Notice, you must promptly notify the OSHA Area Director by letter that you have taken the appropriate corrective action within the time set forth in the OSHA Notice. The notification you send the Area Director is generally referred to as a LETTER OF CORRECTIVE ACTION. It must explain the specific action taken with regard to the violation and state the date each corrective action was taken.

If you have abatement questions after the inspection, they should be discussed with the Area Director in the informal conference.

When the OSHA Notice permits an extended period of time for abatement, you must insure that employees are adequately protected during this time. If this is the case, you must provide OSHA with a periodic progress report on your actions taken in the interim.

### Informal Conference

You may request an informal conference with the OSHA Area Director to discuss the violations. You may use this opportunity to do any of the following:

- Obtain a better explanation for the violations cited.
- Obtain a more complete understanding of the specific standards that apply.
- Discuss ways to correct violations.
- Discuss problems concerning the abatement dates.
- Discuss problems concerning employee safety practices.
- Resolve disputed violations.
- Obtain answers to any other questions you may have.

You are encouraged to take advantage of the opportunity to have an informal conference if you foresee any difficulties in complying with any part of the OSHA Notice. Employee representatives have the right to participate in any informal conference or negotiations between the Area Director or Regional Administrator and the employer.

If you agree that the violations do exist, but you have a valid reason for wishing to extend the abatement date(s), you may discuss this with the Area Director during the informal conference. The Area Director may issue an amended OSHA Notice that changes the abatement date prior to the expiration of the 15 working day period.

Every effort will be made to resolve the issues at an informal conference. If, however, an issue is not resolved by the Area Director, a summary of the discussion together with the agency's position on the

unresolved issues shall be forwarded to the Federal Agency Program Officer (FAPO) within 5 working days of the informal conference.

- The FAPO/Regional Administrator will confer with the appropriate Regional agency official before making a decision on the unresolved issues.
- If the FAPO/Regional Administrator, in consultation with the Area Director, decides that the item in question should remain unchanged on the OSHA Notice, the appropriate agency officials shall be advised.
- If there is still an unresolved issue after the Regional review, the agency may send a letter of appeal to OSHA's Office of Federal Agency Programs (OFAP).
- OFAP will review the disputed issues and discuss these with top agency officials, as appropriate, to obtain resolution. The decision at the National Office level, in consultation with the Regional Administrator, FAPO, and Area Director, is final.
- Under the OSHA Act, Executive Order 12196 and 29 CFR Part 1960, Federal agencies do not have the right to contest the OSHA Notice.

## Petition for Modification of Abatement (PMA)

Abatement dates are assigned on the basis of the best information available at the time the OSHA Notice is issued. When you are unable to meet an abatement date because of uncontrollable events or other circumstances, you may file a Petition for Modification of Abatement (PMA) with the OSHA Area Director.

The petition must be in writing and must be submitted no later than one working day after the abatement date. To show clearly that you have made a good-faith effort to comply, the PMA must include all of the following information before it can be considered:

- Steps you have taken in an effort to achieve compliance and dates they were taken;
- Additional time you need to comply;
- Why you need the additional time;
- Interim steps you are taking to safeguard your employees against the cited hazard(s) until the abatement; and
- A certification that the petition has been posted, the date of posting and, when appropriate, a statement that the petition has been furnished to an authorized representative of the affected employees. The petition must remain posted for 10 working days, during which employees may file an objection.
- A PMA may be granted or objected to by the OSHA Area Director. If a PMA is granted, a monitoring inspection may be conducted to ensure that conditions are as they have been described and that adequate progress toward abatement has been made.

When agreement to extend the abatement date cannot be reached at the Area Office, the agency may bring unresolved issues to the Regional Administrator/FAPO for resolution with his counterpart in the agency. Issues not resolved at the regional level shall be forwarded to the Director, OFAP, for resolution with agency headquarters in consultation with the Regional Administrator, the FAPO, and the Area Director.

Further information on PMAs may be obtained from any OSHA Area/District office.

## Alternate Standards

Agency heads may apply for approval of an alternate standard where deemed necessary and, after consulting with employees or their representatives, including appropriate safety and health committees, notify the Secretary of Labor and request approval of such standards. The Secretary will not approve alternate standards unless it provides affected employees equivalent or greater protection.

The agency head must provide the Secretary with the following:

- A statement of why the agency cannot comply with the OSHA standard or wants to adopt an alternate standard;
- A description of the alternate standard;
- An explanation of how the alternate standard provides equivalent or greater protection for the affected employees;
- A description of interim protective measures afforded employees until a decision is rendered by the Secretary of Labor; and
- A summary of written comments, if any, from interested employees, employee representatives, and occupational safety and health committees.

Employees and other interested groups are encouraged to participate in the alternate standard process.

## Employee Courses of Action

Employees or their authorized representatives may object to any or all of the abatement dates set for violations if they believe them to be unreasonable. A written notice of their objections must be filed with the OSHA Area Director within 15 working days after the employer receives the OSHA Notice.

The filing of an employee objection does not suspend the employer's obligation to abate the hazard(s).

Employees also have the right to object to a PMA. Such objections must be in writing and must be sent to the Area Office within 10 days of service or posting.

## Follow-up Inspection and Failure to Abate

If you receive a Notice of Unsafe or Unhealthful Working Conditions, a followup inspection may be conducted to verify that you have done the following:

- Posted the OSHA Notice as required,
- Corrected the violations as required in the OSHA Notice, and/or
- Adequately protected employees and made appropriate progress in correcting the hazards during multi-step or lengthy abatement periods.
- Any new violations discovered during a followup inspection will be cited, as well as any hazards which have not been abated by the abatement date so specified on the OSHA Notice. The latter violations will be cited in the form of a Failure to Abate Notice.

## Employer Discrimination

Executive Order 12196 and 29 CFR Part 1960.46 prohibit Federal agencies from discharging or otherwise discriminating against an employee who has exercised any right under these laws, including the right to make safety and health complaints or to request an OSHA inspection. In addition, Federal employees may have protection for such activity under the Whistleblower Protection Act of 1989.

Complaints from employees who believe they have been discriminated against will be investigated by the Office of Special Counsel except in those agencies not covered by the Whistleblower Act. Agencies exempted from the Whistleblower Act are:

- A government corporation, such as the Tennessee Valley Authority;
- the Central Intelligence Agency, Defense Intelligence Agency, National Security Agency, or certain other intelligence agencies excluded by the President;
- the General Accounting Office;
- the U.S. Postal Service or Postal Rate Commission;
- the Federal Bureau of Investigation; and,
- Federal prisoners.

If the Federal employee's agency is exempted from the Whistleblower Act, the alleged reprisal is forwarded to the agency's Designated Agency Safety and Health Official (DASHO).

There is no time limit for filing a complaint with the Office of Special Counsel. To obtain further information on this matter, employees may contact OSHA and/or the Office of Special Counsel.

## Providing False Information

All information reported to OSHA by employers and employees must be accurate and truthful.

## Additional Information

For further information and assistance, please contact your OSHA Area Director.

## Related Publications

A single free copy of the following materials can be obtained from the OSHA Publications Office, 200 Constitution Avenue, N.W., Room N3101, Washington, D.C. 20210, (202) 219-4667

- Chemical Hazard Communication (OSHA 3084)
- How to Prepare For Workplace Emergencies (OSHA 3088)
- Job Hazard Analysis (OSHA 3071)
- 29 CFR Part 1960, Basic Program Elements for Federal Employee Occupational Safety and Health Programs and Related Matters

# EXHIBIT X-16

1   MICHAEL BAILEY
    United States Attorney
2   District of Arizona
    LAURENCE G. TINSLEY, JR.
3   Assistant U.S. Attorney
    Arizona State Bar No. 012581
4   Two Renaissance Square
    40 North Central Ave., Suite 1800
5   Phoenix, Arizona  85004-4408
    Telephone:  602-514-7500
6   Facsimile:  602-514-7760
    Email:  Laurence.Tinsley@usdoj.gov
7

8   *Attorneys for United States of America*

9             IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF ARIZONA
10

11

12   Elston Stephenson,                         **CV-19-08268-PCT-DLR**

13              Plaintiff,

                                                **INTERVENOR UNITED STATES'**
14                                              **MOTION TO DISMISS**
        vs.                                     **PURSUANT TO RULES 12(b)(1) and**
15                                              **12(b)(6)**
     Brian Drapeaux,
16

17              Defendant.

18

19        The United States moves to dismiss Plaintiff's complaint.[1]  Plaintiff has filed a claim

20   for injunction against harassment, in which he appears to allege Title VII claims of a hostile

21   work environment arising from "stalking" by Drapeaux, his supervisor, and/or tortious

22   conduct by Drapeaux under the Federal Tort Claims Act (FTCA).   Plaintiff's own

23   pleadings admit that his work dispute allegations are related to claims he has pending

24   before the Equal Employment Opportunity Commission (EEOC).

25

26   _____

27   [1] Counsel for the United States has requested authority to continue to represent Defendant
28   Drapeaux but has not yet received it; however, the arguments asserted in the United States'
     motion apply equally to Drapeaux's interests and positions.

1    The Court should dismiss for lack of subject matter jurisdiction and failure to state
2    a claim because the Federal statutes prohibiting discrimination in Federal employment
3    provide the exclusive remedy for claims of discrimination brought by Federal employees.
4    Under the Title VII statutes, Federal employees are required to either exhaust their
5    administrative remedies or provide timely notice to the EEOC prior to filing suit.  Here,
6    Plaintiff has not alleged either that he properly exhausted his claims or provided notice to
7    the EEOC of his employment discrimination claims.

8    Further, to the extent Plaintiff's allegations can be construed as a tort claim, the
9    Court should dismiss for lack of subject matter jurisdiction. The FTCA, 28 U.S.C. §
10   1346(b), provides a cause of action against the Federal government for persons injured by
11   the tortious activity of a Federal employee acting within the scope of his office or
12   employment. Plaintiff has not satisfied the jurisdictional prerequisite to a civil lawsuit
13   under the FTCA since he never submitted an administrative tort claim with the National
14   Park Service.

15   **I.    Introduction.**

16   Plaintiff filed a Petition for an Injunction against Harassment in a Flagstaff Justice
17   Court against his supervisor, Brian Drapeaux, Deputy Superintendent, Business
18   Operations.  *See* Drapeaux Declaration, attached as Exhibit C, at ¶ 1. Plaintiff alleges that
19   his Supervisor "stalked him."  Plaintiff brought this action after he learned that Drapeaux
20   had allegedly driven onto Plaintiff's street in a neighborhood in a Grand Canyon National
21   Park village to check on whether or not Plaintiff was misusing a government owned vehicle
22   (GOV).  Plaintiff alleges that he has an EEOC claim, alleging "Plaintiff has open formal
23   EEOC complaint against Defendant which is likely to find [sic] in Plaintiff's favor." Dkt.
24   1, at 8.[2]

25   _____
     [2] In connection with these claims, Plaintiff filed an internal complaint with the U.S.
26   Department of Interior, pursuant to Personnel Bulletin 18-01 (Exhibit A).   Internal
     complaints pursuant to the Bulletin in Exhibit A can be filed when an employee claims to
27   be subjected to harassment based on certain protected classification. These often precede
28   EEOC complaints.  The Department found no merit to his Personnel Bulletin complaint.

1    Defendant Drapeaux investigated Plaintiff because he had been directed by his own

2    Supervisor to confirm that Plaintiff was not using the GOV during the time Plaintiff had

3    been suspended and off duty.  Exhibit C, at ¶ 2.  Plaintiff had a history of often using the

4    GOV without checking it out under proper protocols, and taking unapproved leaves of

5    absences, setting his own work hours and schedule outside his mandated work hours

6    without pre-authorization, and often using the GOV during these time frames.  *Id*.  Plaintiff

7    would frequently take the GOV off Park land without permission, to run errands to cities

8    miles away.  *Id*.

9    Drapeaux also learned that Plaintiff treated the GOV as if it were his own personal

10    car, in violation of NPS policy.  *Id*. at ¶ 3.  He personally saw the GOV at a coffee shop

11    parking lot an hour away from the Grand Canyon and contacted Plaintiff inside the shop.

12    *Id*.  Plaintiff claimed to be working, though his duties had ended that day.  *Id*.  Drapeaux

13    determined there was no valid business reason for the GOV to be there.  *Id*.

14    The NPS determined that Plaintiff was not accountable for his time and would take

15    unapproved leave and drive the GOV to various destinations both inside and outside the

16    Park without alerting anyone of the trips he was taking or their purposes.  *Id*. at ¶ 4.  For

17    instance, Plaintiff often used the GOV when he had no legitimate business reasons,

18    including taking it home overnight and driving to destinations outside the Park when he

19    was not on authorized travel.  *Id*.

20    Investigation of his failure to follow NPS leave procedures and being absent without

21    leave (AWOL) led to the Park issuing Plaintiff discipline in the form of a three day

22    suspension.  *See* Exhibit B, Approval of Proposed Suspension, dated July 10, 2019.

23    Drapeaux thus exercised legitimate managerial oversight over Plaintiff when

24    Drapeaux checked the whereabouts of the GOV, both during and after the discipline that

25    Plaintiff received. Plaintiff now characterizes that oversight as "stalking."

26    Plaintiff also alleged in his Petition that NPS management interfered with First Aid

27    classes he taught, when his supervisor limited his use of equipment for the classes and

28

- 3 -

1  when managers attended the classes as part of routine oversight of its employees' work

2  related activities, such as Plaintiff's.

3      **II.**    **Standard of review.**

4       A motion to dismiss under 12(b)(1), F.R.C.P., tests the subject matter jurisdiction

5  of the Court. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir.2003).

6  A Rule 12(b)(1) motion can either attack the sufficiency of the pleadings to establish

7  federal jurisdiction, or challenge the substance of the jurisdictional allegations despite the

8  formal sufficiency of the complaint. *Thornhill Publ'g Co., Inc. v. Gen'l Tel. & Elecs.*

9  *Corp.*, 594 F.2d 730, 733 (9th Cir.1979). "A court lacks subject matter jurisdiction over a

10  claim against the United States if it has not consented to be sued on that claim." *Consejo*

11  *de Desarrollo Economico de Mexicali, A.C. v. U.S.,* 482 F.3d 1157, 1173 (9th Cir.2007).

12  "Federal courts are courts of limited jurisdiction…It is to be presumed that a cause lies

13  outside this limited jurisdiction and the burden of establishing the contrary rests upon the

14  party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375,

15  377 (1994) (citations omitted).

16       Further, under Rule 12(b)(6), a district court must dismiss the complaint if it fails to

17  state a claim upon which relief can be granted. A court should grant dismissal pursuant to

18  Rule 12(b)(6) where there is either a "lack of cognizable legal theory" or "the absence of

19  sufficient facts under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

20  F.2d 696, 699 (9th Cir.1990). That standard "requires more than labels and conclusions,

21  and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*

22  *v. Twombly,* 550 U.S. 544, 555 (2007). Further, Rule 8 "requires a 'showing,' rather than

23  a blanket assertion, of entitlement to relief. Without some factual allegation in the

24  complaint, it is hard to see how a claimant could satisfy the requirement of providing not

25  only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

26  *Id.* at 556, n. 3. Further, a complaint does not suffice if it tenders "naked assertion[s]"

27  devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

28  *quoting Twombly*, 550 U.S. at 557.

1

2

3
### III.    Plaintiff's claim of work-related harassment should be dismissed.

4
Plaintiff appears to seek relief for a claim of hostile work environment.  He alleges

5
that he has suffered workplace harassment by Defendant Drapeaux by alleging that

6
Drapeaux came into his neighborhood and was stalking him.  Plaintiff alleges this

7
harassment is related to his pending EEOC claims. Dkt 1 at 8.  However, to establish a

8
*prima facie* claim of hostile work environment, a plaintiff must show that (1) he was

9
subjected to verbal or physical conduct of a racial, national origin, sexual, disability, or

10
age-based nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently

11
severe or pervasive to alter the conditions of employment and create an abusive work

12
environment. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir.2004);

13
*see also Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995). A hostile work

14
environment exists only "[w]hen the workplace is permeated with discriminatory

15
intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the

16
conditions of the victim's employment and create an abusive working environment."

17
*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (quotations and citations omitted). The

18
courts consistently apply this demanding hostile work environment standard "to ensure that

19
Title VII does not become a general civility code," and to "filter out complaints attacking

20
the ordinary tribulations of the workplace." *Forager v. City of Boca Raton*, 524 U.S. 775,

21
788 (1998). *See also* https://www.eeoc.gov/eeoc/index.cfm (EEOC only enforces federal

22
laws that make it illegal to discriminate against an employee because of the person's race,

23
color, religion, sex, national origin, age, disability, genetic information, prior participation

24
in an employment discrimination investigation or lawsuit, or prior complaint of

25
discrimination).

26
Plaintiff's complaints about what occurred at work after he was disciplined and

27
suspended do not rise to the level of a hostile work environment as a matter of law.

28

1    Plaintiff's claims merely involve Drapeaux's legitimate oversight in checking on Plaintiff's

2    use of the GOV. Plaintiff had misused the vehicle and received discipline for the misuse,

3    and Drapeaux was following up to ensure that Plaintiff was not violating the terms of his

4    discipline.

5         Though he attempts to relate this to his EEOC claims, Plaintiff's harassment claims

6    appear to have no legitimate relationship to discrimination.  His request for a restraining

7    order does not allege that any of defendant's actions were based on any protected trait.  His

8    vague allegations are thus insufficient to state an actionable hostile work environment

9    claim.  *Kortan v. California Youth Authority*, 217 F.3d 1104, 1107, 1111 (9th Cir.2000);

10    *Vasquez*, 349 F.3d at 642 (finding no race-based hostile work environment where plaintiff

11    alleged supervisory coworker told plaintiff two racial comments, yelled at plaintiff, made

12    negative remarks about him to others, and made false complaints about plaintiff); *Capristo*

13    *v. Brennan*, No. C-15-1071 EMC, 2015 WL 4396268, at *5 (N.D. Cal. July 17, 2015)

14    (dismissing a hostile work environment claim in which the alleged misconduct was one

15    incident of yelling by a supervisor and plaintiff made no allegations that the verbal

16    harassment was based on plaintiff's race or national origin).

17         Rather, Plaintiff improperly seeks injunctive relief for allegedly irritating or

18    harassing acts such as Drapeaux coming near his home while he was suspended.  Even if

19    Plaintiff could properly allege a Title VII violation involving a hostile work environment

20    tantamount to discrimination, no applicable waiver of sovereign immunity permits him to

21    obtain a restraining order against his supervisor for alleged employment discrimination

22    through state court civil procedural rules as Plaintiff has attempted with his filing for

23    injunctive relief.  *See Lau v. Wong,* 2013 WL 2181655 at *1, *6 (plaintiff's FTCA and

24    Title VII claims were barred, dismissing the plaintiff's request for a restraining order

25    against her supervisor based on allegations that supervisor ordered her into his office for

26    unclear reasons, berated her, acted in a belligerent and abusive manner, followed her

27    around the office, and threw a "reprimand letter" in the direction of her "vaginal area").

28

1  Plaintiff's claims are thus precluded by Title VII, and should be dismissed for lack of
2  subject matter jurisdiction.

3       Title VII is the exclusive judicial remedy for claims of race, national origin, religion,
4  or sex discrimination in federal employment and expressly limits a plaintiff's remedies to
5  those enumerated in the statute. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976);
6  42 U.S.C. § 2000e-16, 42 U.S.C. § 2000e-5(f)-(k); *Boyd v. USPS*, 752 F.2d 410, 413-14
7  (9th Cir.1985); 42 U.S.C. § 2000e-16, 42 U.S.C. § 2000e-5(f)-(k). Where a federal
8  employee asserts a claim under Title VII, that statute is exclusive of any other remedy
9  against both the federal government and the individual Federal employee alleged to have
10 participated in the discrimination. *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916-17 (9th
11 Cir.1981). Accordingly, Plaintiff's action should be dismissed.

12      A.    *Plaintiff's employment discrimination claim is also subject to dismissal for*
13             *failure to exhaust administrative remedies.*

14      Even if Plaintiff's allegations were legally viable as a Title VII claim, his
15 harassment action must be dismissed because Title VII requires that the federal employee
16 either exhaust her administrative remedies, or provide notice to the EEOC, as a statutory
17 precondition to filing suit. Where a plaintiff has not substantially complied with
18 administrative exhaustion requirements, the federal district court does not have subject
19 matter jurisdiction to hear a Title VII claim. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th
20 Cir.2003); s*ee also Brown, supra*, 425 U.S. at 832-33 (Title VII); *Lyons v. England*, 307
21 F.3d 1092, 1103 (9th Cir.2002). In this matter, Plaintiff both alleged that he has a
22 contemporaneous and related EEOC claim against Drapeaux, and also brought a potential
23 precursor action to this claim. *See* n.1, *supra*.

24      A federal employee seeking to pursue an individual complaint of discrimination
25 under Title VII must initiate contact with an EEO counselor within 45 days of the allegedly
26 discriminatory matter. 29 C.F.R. § 1614.105(a). If the matter is not resolved through
27 counseling, the EEO counselor must inform the complainant of the right to file a formal
28 complaint. 29 C.F.R. §§ 1614.105(b)(1), (c), (d), 1614.106(b). Once a formal EEO

1 | complaint has been filed, the Agency has 180 days from the filing date to investigate the
2 | issues raised in the complaint.  Only after 180 days have lapsed or the Agency has issued
3 | a final agency decision, whichever is earlier, may the employee pursue a claim in federal
4 | district court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.107(b).  Given that he has failed
5 | to follow this enumerated process, Plaintiff thus cannot obtain a restraining order against
6 | his supervisor for alleged employment discrimination through state civil procedural rules.[3]

7 | Since Plaintiff has failed to exhaust these administrative remedies, the Court has no
8 | subject matter jurisdiction.

9 | **IV.    Plaintiff's tort claim should be dismissed for lack of subject matter**
10 | **jurisdiction.**

11 | To the extent Plaintiff's request for a restraining order arises from alleged tortious
12 | conduct, Drapeaux enjoys absolute immunity from suit for common law torts committed
13 | within the scope of his Federal employment and should be dismissed. "Absent a waiver,
14 | sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v.*
15 | *Meyer*, 510 U.S. 471, 475 (1994).  A waiver of sovereign immunity must be "unequivocally
16 | expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Under the FTCA,
17 | the United States has waived its immunity from suit for certain torts and in expressly
18 | prescribed circumstances. 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA provides a cause
19 | of action against the federal government for "persons injured by the tortious activity of an
20 | employee of the United States where the employee was 'acting within the scope of his

---

21
22 | [3] Finally, under Title VII, the only proper defendant to any claims brought by a Federal
employee is the head of the agency or department. 42 U.S.C. § 2000e-16(c). *See e.g.*
23 | *Johnston v. Home*, 875 F.2d 1415, 1419-20 (9th Cir.1989); *White, supra*, 652 F.2d at 916,
n.4 (Title VII); The Ninth Circuit has "consistently held that Title VII does not provide a
24 | cause of action for damages against supervisors or fellow employees." *Holly D. v.*
25 | *California Institute of Technology*, 339 F.3d 1158, 1179 (9th Cir.2003); *Hodge v. Dalton*,
107 F.3d 705, 707 (9th Cir.1997) ("The doctrine of sovereign immunity applies to federal
26 | agencies and federal officials acting within their official capacities.").  Thus the only proper
defendant in the Title VII claim would be the Secretary of the Interior, David Bernhardt.
27 | Defendant Drapeaux should be dismissed.
28

- 8

1  office or employment…'" *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) (quoting

2  28 U.S.C.§ 1346(b)).

3        The FTCA provides a limited waiver of sovereign immunity. 28 U.S.C § 2675(a).

4  A district court has no subject matter jurisdiction over an FTCA claim unless the plaintiff

5  has first presented a claim to the appropriate agency, and either (1) the claim was "finally

6  denied" in writing, or (2) six months have passed since the claim was submitted. 28 U.S.C.

7  § 2675(a). The claim requirement is jurisdictional in nature and cannot be waived. *McNeil*

8  *v. U.S.,* 508 U.S. 106, 11-12 (1993); *Burns v. U.S.*, 764 F.2d 722, 723 (9th Cir.1985). The

9  plaintiff in an action seeking relief under the FTCA has the burden of pleading and proving

10  that she complied with the FTCA's administrative claim presentment requirement. *See*

11  *Bruce v. U.S.,* 621 F.2d 914, 918 (8th Cir.1980). Because plaintiff cannot show that he

12  exhausted administrative remedies for his potential tort claim, the Court lacks subject

13  matter jurisdiction.

14        Further, the Federal Employees Liability Reform and Tort Compensation Act of

15  1988 provides that the FTCA is the exclusive remedy for tortious acts and omissions

16  committed by Federal employees acting within the scope of their employment, and

17  precludes other civil actions that arise out of such acts or omissions. *See* 28 U.S.C. §

18  2679(b)(1).

19                                    **Conclusion**

20        As discussed above, no applicable waiver of sovereign immunity permits a

21  restraining order against Plaintiff's supervisor. As the court stated in *Andrejko. v. Sanders*,

22  638 F.Supp. 449, 452 (M.D.1986):

23        Clearly there is a federal interest here.  One can easily imagine the disruption that
24        might occur in federal work places if federal employees were allowed to lodge and
           maintain state tort claims against any superior with whom they had an axe to grind.
25        The resultant wave of litigation might well impair the ability of the various federal
           agencies to function efficiently.
26
27  *See also Lau, supra,* at *6 ("to allow [plaintiff's] claims to proceed now would be to allow

28  her to 'circumvent the EEOC's investigatory and conciliatory role, as well as deprive the

- 9 -

1  charged party of notice of the charge.")  Plaintiff should not be allowed to violate this

2  public policy, or be allowed to avoid exhausting his claims, whether under Title VII or the

3  FTCA.

4          Accordingly, the entire action should be dismissed.

5          RESPECTFULLY SUBMITTED this 14th day of November 2019.

                                    MICHAEL BAILEY
                                    United States Attorney
                                    District of Arizona

                                    s/Laurence G. Tinsley, Jr.
                                    Laurence G. Tinsley, Jr.
                                    Assistant U.S. Attorney

1

2 **CERTIFICATE OF SERVICE**

3

4      I hereby certify that on November 14, 2019, I electronically transmitted the attached

5 document to the Clerk's Office using the CM/ECF System for filing and served a copy, via

6 first-class mail, postage prepaid, of the document to the following recipient who is not a

7 CM/ECF registrant:

8
Elston LeMans Stephenson
9 P.O. Box 129
Grand Canyon, AZ 86023
10 *Plaintiff*

11 *s/Irene Millsaps*
U.S. Attorney's Office

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11